IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THE STATE OF OHIO, | |
| and | |
| THE UNITED STATES OF AMERICA, | |
| Plaintiffs, | |
| v. | Civil Case No.  23-cv-517 |
| | Hon. John R. Adams |
| NORFOLK SOUTHERN RAILWAY COMPANY, | |
| and | |
| NORFOLK SOUTHERN CORPORATION, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF
MOTION TO STRIKE CERTAIN AFFIRMATIVE DEFENSES**

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................1

II.    STANDARD OF REVIEW ..........................................................................1

III.   ARGUMENT ..................................................................................................2

   A.  Three of Defendants' CERCLA-related affirmative defenses should be stricken because they fail to state a claim on which relief can be granted. .........................................................2

     1.  Defendants' seventh affirmative defense ("Ineffective Costs") should be stricken because there is no requirement that removal actions be cost effective. ...............................3

     2.  Defendants' eighth affirmative defense ("De Micromis") should be stricken because the de micromis exemption does not apply in this case....................................................5

     3.  Defendants' twelfth affirmative defense ("Failure to Mitigate") should be stricken because the United States has no duty to mitigate damages. ...................................6

   B.  Defendants' fourteenth affirmative defense ("Limitation of Damages") should be stricken because it relies on Ohio law that is inapplicable to the claims in this case.............................7

   C.  Defendants' preclusion-related affirmative defenses should be stricken because there is no set of facts on which the Defendants can show they are entitled to relief...................................7

     1.  Defendants' fifteenth affirmative defense should be stricken because the FRSA does not preclude the United States' claims under CERCLA and the CWA......................................10

     2.  Defendants' sixteenth affirmative defense should be stricken because the ICCTA does not preclude the United States' claims under CERCLA or the CWA. ................................12

     3.  Defendants' seventeenth affirmative defense should be stricken because the HMTA does not preclude the United States' claims under CERCLA or the CWA. ........................14

IV.   CONCLUSION..............................................................................................15

i

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ass'n of Am. R.Rs. v. S. Coast Air Quality Mgmt. Dist.*,
  622 F.3d 1094 (9th Cir. 2010) ........................................................................ 13, 14

*Browder v. United States*,
  312 U.S. 335 (1941) ................................................................................................ 8

*Brown & Williamson Tobacco Corp v. United States*,
  201 F.2d 819 (6th Cir. 1953) .................................................................................. 1

*Conley v. Gibson*,
  355 U.S. 41 (1957) .................................................................................................. 2

*CSX Transp., Inc. v. Easterwood*,
  507 U.S. 658 (1993) .............................................................................................. 10

*Fla. E. Coast Ry. Co. v. City of West Palm Beach*,
  226 F.3d 1324 (11th Cir. 2001) ............................................................................ 13

*Herrera v. Churchill McGee, LLC*,
  680 F.3d 539 (6th Cir. 2012) .................................................................................. 2

*In re Keithley Instruments, Inc.*,
  599 F. Supp. 2d 908 (N.D. Ohio 2009) .................................................................. 1

*Kelley v. Thomas Solvent Co.*,
  714 F. Supp. 1439 (W.D. Mich. 1989) .................................................................... 6

*Massachusetts v. Blackstone Valley Elec. Co.*,
  867 F. Supp. 78 (D. Mass. 1994) ............................................................................ 5

*Operating Eng'rs Local 324 Health Care Plan v. G&W Const. Co.*,
  783 F.3d 1045 (6th Cir. 2015) ................................................................................ 1

*POM Wonderful LLC v. Coca-Cola Co.*,
  573 U.S. 102 (2014) .......................................................................................... 8, 11

*United States v. Am. Cyanamid Co.*,
  786 F. Supp. 152 (D.R.I. 1992) .............................................................................. 4

*United States v. Chrysler Corp.*,
  168 F. Supp. 2d 754 (N.D. Ohio 2001) .................................................................. 4

*United States v. Dico*,
  266 F.3d 864 (8th Cir. 2001) .................................................................................. 4

*United States v. Hardage*,
  982 F.2d 1436 (10th Cir. 1992) ......................................................................... 3, 4

*United States v. Iron Mountain Mines, Inc.*,
  812 F. Supp. 1528 (E.D. Cal. 1992) ....................................................................... 6

*United States v. Kramer*,
  757 F. Supp. 397 (D.N.J. 1991) .............................................................................. 6

*United States v. Marisol, Inc.*,
  725 F. Supp. 833 (M.D. Pa. 1989) ......................................................................... 6

*United States v. St. Mary's Ry. W., LLC*,
  989 F. Supp. 2d 1357 (S.D. Ga. 20213) ............................................................... 13

*Velsicol Chem. Corp. v. Enenco, Inc.*,
  9 F.3d 524 (6th Cir. 1993) ...................................................................................7
*Williams v. Provident Inv. Counsel, Inc.*,
  279 F. Supp. 2d 894 (N.D. Ohio 2003) ...............................................................1

## Statutes

33 U.S.C. §1251 ....................................................................................................9
33 U.S.C. § 1321 ...................................................................................................8
33 U.S.C. § 1362 ...................................................................................................9
42 U.S.C. § 9601 ...............................................................................................3, 9
42 U.S.C. § 9607(a) ...........................................................................2, 3, 6, 8, 15
42 U.S.C. § 9607(b) ...........................................................................................3, 8
42 U.S.C. § 9607(o) ..............................................................................................5
42 U.S.C. § 9621 ...................................................................................................4
49 U.S.C. § 5101 .................................................................................................14
49 U.S.C. § 5103 .................................................................................................14
49 U.S.C. § 5125 .................................................................................................14
49 U.S.C. § 10501 ...............................................................................................12
49 U.S.C. § 20101 ...............................................................................................11
49 U.S.C. § 20106 .........................................................................................10, 11

## Regulations

40 C.F.R. § 300.1 ..................................................................................................4
40 C.F.R. § 300.415 ..............................................................................................5

## Other Authorities

47 Fed. Reg. 31,180 (July 16, 1982) .................................................................4, 5
ICC TERMINATION ACT OF 1995, Pub. L. 104-88, 109 Stat. 803 .......................12
*East Palestine Train Derailment Site*, CERCLA Docket No. V-W-23-C-004,
  Unilateral Administrative Order for Removal Actions (Feb. 21, 2023) ....................4
*Friends of the Aquifer, City of Hauser, Ind., Hauser Lake Water Dist., Cheryl L. Rodgers, Clay
  Larkin, Kootenai Env't All., R.R. & Clearcuts* Campaign,
  No. 33966, 2001 WL 928949 (S.T.B. Aug. 10, 2001) ...........................................13
*Grafton & Upton Railroad Company—Petition for Declaratory Order*,
  No. 35779, 2014 STB LEXIS 12 (S.T.B. Jan. 27, 2014) ...................................12, 13
*United States Environmental Protection Agency – Petition for Declaratory Order*,
  No. 35803, 2014 STB LEXIS 335 (S.T.B. Dec. 30, 2014) ......................................12

## STATEMENT OF THE ISSUES

1.      Whether Defendants' seventh ("Ineffective Costs"), eighth ("De Micromis"), and twelfth ("Failure to Mitigate") affirmative defenses, which relate to the extent of Defendants' liability under CERCLA, state a claim on which relief can be granted.

2.      Whether Defendants' fourteenth affirmative defense ("Limitation of Damages"), which relates to limitation of damages and apportionment of liability under Ohio state law, states a claim on which relief can be granted.

3.      Whether Defendants' fifteenth ("Preclusion under the FRSA"), sixteenth ("Preclusion under the ICCTA"), and seventeenth ("Preclusion under the HMTA") affirmative defenses, which allege that the United States's claims in this matter are precluded, state a claim on which relief can be granted.

## SUMMARY OF THE ARGUMENT

Several of Defendants' affirmative defenses fail to state a claim on which relief can be granted. Defendants' affirmative defense of "Ineffective Costs" fails because there is no requirement for EPA to consider cost effectiveness in a removal action. Similarly, in Defendants' affirmative defense claiming a de micromis response costs exemption, Defendants have attempted to avail themselves of an exemption that is not applicable to this case as a matter of law. Additionally, Defendants cannot prove they are entitled to relief under their Failure to Mitigate defense because the United States has no duty to mitigate its damages under CERCLA. Defendants' Limitation of Damages defense is based in Ohio law that is not applicable to the United States' claims. Finally, affirmative defenses which allege preclusion based on railroad regulation also fail as a matter of law because these statutes do not preclude environmental claims under the CWA and CERCLA. Accordingly, the United States respectfully requests that

iv

the Court strike these affirmative defenses because they serve only to prolong discovery and delay resolution of this matter.

## I.     INTRODUCTION

The United States moves to strike seven of Defendants Norfolk Southern Railway Company's and Norfolk Southern Corporation's ("Norfolk Southern" or "Defendants") 18 affirmative defenses under Rule 12(f). These defenses are legally insufficient: there is no set of facts that would allow Norfolk Southern to prevail. Striking the defenses now will streamline this case, allowing the parties to focus on the matters truly in dispute and hastening the ultimate resolution.[1]

## II.     STANDARD OF REVIEW

Rule 12(f) of the Federal Rules of Civil Procedure states that the Court may strike an insufficient defense from a pleading. The Sixth Circuit has stated that a motion to strike an affirmative defense should be granted if it appears to a certainty that a plaintiff would succeed despite any statement of the facts which could be proved in support of the affirmative defense and are inferable from the pleadings. *Operating Eng'rs Local 324 Health Care Plan v. G&W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015). While courts disfavor motions to strike that "serve only to cause delay," *Williams v. Provident Inv. Counsel, Inc.*, 279 F. Supp. 2d 894, 905 (N.D. Ohio 2003), courts have "liberal discretion" to strike filings when they deem it appropriate to do so. *In re Keithley Instruments, Inc.*, 599 F. Supp. 2d 908, 911 (N.D. Ohio 2009). It is appropriate to grant a motion to strike when the pleading to be stricken bears no relation to the controversy at hand. *Brown & Williamson Tobacco Corp v. United States*, 201 F.2d 819, 820 (6th Cir. 1953).

Courts have developed a three-part test to determine when an affirmative defense should survive a motion to strike. *See e.g.*, *Williams*, 279 F. Supp. 2d at 906. First, the matter must be

---

[1] The United States believes that many of Norfolk Southern's other defenses are also unavailing and will address them at a later date. We file this motion now on those that are clearly legally insufficient and that would potentially result in unnecessary and time-consuming discovery.

properly pleaded as an affirmative defense. *Id*. Second, the affirmative defense must be adequately pleaded according to Federal Rule of Civil Procedure 8 and 9.[2] *Id*. Third, the affirmative defense must state a claim on which relief could be granted such that it would survive a 12(b)(6) challenge –if it is impossible for defendants to prove a set of facts in support of the affirmative defense that would defeat the complaint, the matter must be stricken as legally insufficient. *Id*.

## III. ARGUMENT

The Court should strike seven of Defendants' affirmative defenses because those defenses do not meet the three-part test for affirmative defenses and striking them at this stage of the litigation would serve to streamline discovery and expedite resolution of this matter.

Subsection A below discusses certain affirmative defenses related to CERCLA response costs. Subsection B discusses claimed defenses under Ohio law. Subsection C discusses claims of preclusion under federal railway regulation.

### A. Three of Defendants' CERCLA-related affirmative defenses should be stricken because they fail to state a claim on which relief can be granted.

Under Section 107(a)(4)(A) of CERCLA, liable parties must pay "all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(A). "The only way a responsible party can escape liability for the government's costs incurred at a particular site is to demonstrate that the government's response actions-*i.e.*, removal or remedial actions-underlying the costs, are

---

[2] The Sixth Circuit has not decided whether the *Twombly* and *Iqbal* heightened pleading standard applies to affirmative defenses. *See Herrera v. Churchill McGee, LLC*, 680 F.3d 539, 547 n.6 (6th Cir. 2012) ("We ... have no occasion to address, and express no view regarding, the impact of [*Twombly* and *Iqbal*] on affirmative defenses."). Rule 8 of the Federal Rules of Civil Procedure requires a "short and plain statement" of each claim. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), abrogated by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

inconsistent with the [National Contingency Plan]." *United States v. Hardage*, 982 F.2d 1436, 1443 (10th Cir. 1992).

CERCLA Section 107(a) provides that liability shall attach "[n]otwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section." 42 U.S.C. § 9607(a). Subsection (b) exempts from liability those who can show by a preponderance of the evidence that the release of hazardous substances was caused solely by:

(1) an act of God;

(2) an act of war;

(3) an act or omission of a third party…

(4) any combination of the foregoing paragraphs.

42 U.S.C. § 9607(b). Therefore, the only affirmative defenses available under CERCLA are those which allege an act of God, an act of war, an act of a third party, or some combination of the three.

1. <u>Defendants' seventh affirmative defense ("Ineffective Costs") should be stricken because there is no requirement that removal actions be cost effective.</u>

Defendants allege that in their seventh affirmative defense that they are not liable for response costs for removal or remedial actions that were not "cost-effective" under CERCLA Section 121. ECF No. 28, Affirmative Defenses, ¶ 8.

In addressing contamination, CERCLA provides for two types of response actions: removal actions and remedial actions. A removal action includes actions taken in response to a release or threat of release, often in response to emergencies. *See* 42 U.S.C. § 9601(23). A remedial action includes actions consistent with permanent remedy taken instead of or in addition to removal actions. 42 U.S.C. § 9601(24).

CERCLA Section 121 does provide that when selecting a remedial action EPA must consider costs and choose a permanent remedy that is cost effective. 42 U.S.C. § 9621. However, cost effectiveness is a criterion for the EPA only in a *remedial* action when choosing a permanent remedy for a site among competing alternatives. *United States v. Am. Cyanamid Co*., 786 F. Supp. 152, 162 (D.R.I. 1992). In such an instance, the National Contingency Plan ("NCP")[3] directs EPA to choose a cost-effective remedial action. *Id*.

The clean-up in East Palestine is a *removal* action, not a remedial action. *East Palestine Train Derailment Site*, CERCLA Docket No. V-W-23-C-004, Unilateral Administrative Order for Removal Actions (Feb. 21, 2023), attached hereto as Exhibit A. There is no corresponding requirement that costs incurred in a removal action be cost effective. *See Hardage*, 982 F.2d at 1443; *United States v. Chrysler Corp.*, 168 F. Supp. 2d 754, 764–65 (N.D. Ohio 2001). Courts have found that there is a "conclusive presumption that all costs incurred by the government that are *not* inconsistent with the NCP are, in fact, reasonable costs." *United States v. Dico*, 266 F.3d 864, 879 (8th Cir. 2001) (emphasis in original).

Under the NCP, the government's timely response to emergencies takes precedence over cost savings. "[O]nce the agency determines that an immediate removal is necessary, the [NCP] vests in the lead agency the authority to take whatever action the lead agency deems necessary to abate the emergency. In an emergency, it is not possible to require detailed cost evaluation because of the critical need to act as rapidly as possible." 47 Fed. Reg. 31,180, 31,181-82 (July 16, 1982). This is especially so in cases like this one, where EPA has determined that there is an imminent and substantial endangerment to human health and the environment. In fact, the NCP requires that

---

[3] The NCP provides the organizational structure and procedures for preparing for and responding to discharges of oil and releases of hazardous substances, pollutants, and contaminants. 40 C.F.R. § 300.1.

4

once EPA determines that a removal action is appropriate, actions shall begin as soon as possible to abate, prevent, minimize, stabilize, mitigate, or eliminate the threat to public health or welfare. 40 C.F.R. § 300.415(b)(3). In contrast, "the less imminent the threat, the greater the time available for the evaluation process." 47 Fed. Reg. 31,180, 31,181 (July 16, 1982). As a result, the NCP may require that remedial actions be preceded by certain tests or evaluations not required of removal actions. *Massachusetts v. Blackstone Valley Elec. Co.*, 867 F. Supp. 78, 81 (D. Mass. 1994). Because defendants' affirmative defense relies on requirements inapplicable to the removal action here, the defense should be stricken.

2. Defendants' eighth affirmative defense ("De Micromis") should be stricken because the de micromis exemption does not apply in this case.

Defendants allege in their eighth affirmative defense that they are not liable for response costs that are de micromis as defined in CERCLA Section 107(o). ECF No. 28, Affirmative Defenses, ¶ 9.

CERCLA Section 107(o) provides an exemption to CERCLA liability—known as the "de micromis" exemption—in some very limited situations, none of which are applicable to this case. The de micromis exemption is only available where:

- The relevant facility is on the National Priorities List;

- The defendant's liability is based solely on paragraphs (3) or (4) of CERCLA 107(a) (liability as to persons who arranged for disposal or treatment of hazardous substances, or who transported hazardous substances for disposal or treatment);

- The total amount of material that the person arranged or transported for disposal or treatment is less than 110 gallons or 200 pounds; and

- all or part of the disposal, treatment, or transport concerned occurred before April 1, 2001.

42 U.S.C. § 9607(o).

There is no way that Defendants could show they are entitled to this exemption. First, the Site of the derailment is not on the National Priorities List. Second, the United States has alleged that Defendants are liable under paragraphs (1) and (2) of section 107 as owners and/or operators of a facility. *See* ECF No. 22 ¶¶ 209, 210. The United States has not alleged that Defendants are liable under paragraphs (3) or (4) (as an arranger or transporter), as required by Section 107(o). Third, there is simply no way that the Defendants can prove that all or part of the disposal, treatment, or transport occurred before April 1, 2001, nearly 22 years before the date of the derailment.

3. <u>Defendants' twelfth affirmative defense ("Failure to Mitigate") should be stricken because the United States has no duty to mitigate damages.</u>

Defendants allege in their twelfth affirmative defense that the United States failed to exercise reasonable care to avoid loss and mitigate its damages, which aggravated its damages or injuries. ECF No. 28, Affirmative Defenses, ¶ 13. Defendants allege that this precludes or reduces recovery. *Id.*

CERCLA Section 107 provides that all costs incurred by the United States may be recovered unless they are inconsistent with the National Contingency Plan (NCP). 42 U.S.C. § 9607(a)(4)(A). Multiple courts have recognized that there is no duty on the United States Government to mitigate its damages or response costs. *See e.g., United States v. Iron Mountain Mines, Inc.*, 812 F. Supp. 1528, 1542–43 (E.D. Cal. 1992); *United States v. Kramer*, 757 F. Supp. 397, 420 (D.N.J. 1991); *Kelley v. Thomas Solvent Co.*, 714 F. Supp. 1439, 1451 (W.D. Mich. 1989); *United States v. Marisol, Inc.*, 725 F. Supp. 833 (M.D. Pa. 1989).

***

6

In sum, Defendants' seventh, eighth, and twelfth affirmative defenses all fail to state a claim on which relief can be granted because there is no set of facts on which the Defendants can show that they are entitled to relief. Accordingly, the United States respectfully requests that the Court strike these defenses because they serve only to prolong discovery, increase litigation expenses, delay resolution of this case, and waste judicial resources.

**B. Defendants' fourteenth affirmative defense ("Limitation of Damages") should be stricken because it relies on Ohio law that is inapplicable to the claims in this case.**

Defendants' fourteenth affirmative defense states, "Defendants are entitled to all applicable limitation of damages and apportionment of liability to unnamed parties available under Ohio Revised Code Sections 2307.22, 2307.23 and 2307.28." ECF No. 28, Affirmative Defenses, ¶ 15.

The Court should strike this defense because it bears no possible relation to the controversy at hand. The United States' claims in this action are based on two federal statutes, the Clean Water Act and CERCLA. On the contrary, the Ohio state statutes cited to by Defendants in this affirmative defense relate to Ohio state law on joint and several tort liability, percentages of tortious conduct attributable to a party, and joint and several liability not based on tort. These statutes provide no defense to a federal enforcement action. *See, e.g.*, *Velsicol Chem. Corp. v. Enenco, Inc.*, 9 F.3d 524, 530 (6th Cir. 1993) (CERCLA defenses limited to those stated in Section 107(b)).

**C. Defendants' preclusion-related affirmative defenses should be stricken because there is no set of facts on which the Defendants can show they are entitled to relief.**

Defendants' fifteenth, sixteenth, and seventeenth affirmative defenses rest on the premise that the jurisdiction of the Federal Rail Safety Act (FRSA), the Interstate Commerce Commission Termination Act (ICCTA), and the Hazardous Materials Transport Act (HMTA) precludes the United States from bringing claims under the CWA and CERCLA. Here, the affirmative defenses

fail as a matter of law because none of these statutes preclude the United States' claims under the CWA and CERCLA.

The Supreme Court has been clear that the most powerful consideration in statutory interpretation is the plain language of the statute. *Browder v. United States*, 312 U.S. 335, 338 (1941). Where the plain language is not clear, an analysis of congressional intent is appropriate. In *POM Wonderful LLC v. Coca-Cola Co.*, the Supreme Court performed a preclusion analysis of two federal statutes, taking into consideration Congressional intent. 573 U.S. 102, 111–13 (2014). Under the framework of *POM Wonderful*, a court will first look to whether one statute contains an express preclusion over the other. *See id.* at 113. Where some claims are expressly preempted, a court should conclude that Congress did not intend to preclude claims from other sources. *See id.* at 114. Next, a court will look at the complementary scopes, purposes, and enforcement mechanisms of the two statutes. *See id.* at 115. Finally, a court considers whether preclusion would leave commercial interests and the public with less protection in the relevant industry compared to other industries, an effect that Congress was unlikely to have intended. *See id.* at 116.

The plain language of CERCLA and the CWA shows that Defendants' preemption defenses fail. Congress provided specific enumerated defenses to liability under both CERCLA and the CWA. *See*, e.g., 42 U.S.C. § 9607(b) and 33 U.S.C. § 1321(c)(4).  In the absence of one of those defenses, CERCLA liability attaches to any person that owned or operated a facility that disposed of hazardous substances, "[n]otwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection [107](b)." 42 U.S.C. § 9607(a). In the same way, anyone who discharges oil, hazardous substances, or pollutants into waters of the United States can be held liable under Sections 301 or 311 of the CWA. Simply put, the statutes cited in

the Defendants' affirmative defenses do not erode the strict liability standard Congress crafted for either CERCLA or the CWA.

In addition, language in CERCLA and the CWA makes clear that contamination from rail cars is covered by those statutes. The definitions of "facility" and "onshore facility" in CERCLA specifically include "rolling stock"[4] 42 U.S.C. § 9601(9), (18). Likewise, the definition of "point source" (from which pollutants may be discharged) in the CWA specifically includes "rolling stock." 33 U.S.C. § 1362(14). Defendants' preclusion arguments would have the court slice into the text of the CWA and CERCLA to remove language clearly covering environmental contamination caused by rail operations.

Moreover, if the United States' claims under CERCLA and the CWA were precluded by the FRSA, the HMTA, or the ICCTA, it would create a result which Congress surely did not intend. The purpose of the CWA is to prevent, reduce, and eliminate pollution in the nation's water in order to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. §1251 et seq. (1972). Similarly, CERCLA's purpose is to clean up uncontrolled or abandoned hazardous-waste sites as well as accidents, spills, and other emergency releases of pollutants and contaminants into the environment and hold those who contributed to the releases responsible. 42 U.S.C. § 9601 (1980). These purposes cannot be achieved if railroads or other transporters of hazardous materials are permitted to pollute at will and wield the FRSA, HMTA, or ICCTA as a shield to protect them from any environmental liability. This would create a scheme in which a polluter's liability under environmental statutes would depend more on its occupation than its culpability. A railroad or a hazardous materials transporter could walk away from an

---

[4] Black's Law Dictionary defines "rolling stock" as: movable property, such as locomotives and rail cars, owned by a railroad. (11th ed. 2019)

environmental disaster with no liability where a polluter in another industry might owe millions of dollars in response costs and penalties. And, finding that the FRSA, HMTA, or ICCTA precludes claims under the CWA and CERCLA would mean that any time a freight train carrying hazardous materials derails and pollutes the nation's air, land, and water, the taxpayers would foot the cleanup bill. Certainly, Congress did not intend that by passing the FRSA, HMTA, and ICCTA the taxpayers would effectively indemnify the railroads or other transporters of hazardous materials for environmental contamination.

Here, this Court can and should apply the same analysis that the Supreme Court did in *POM Wonderful* to find that the FRSA, HMTA, and ICCTA, which all relate to rail, rail transportation, and transportation of hazardous materials, have no possible relation, much less a preclusive effect, on the United States's claims arising under federal environmental statutes.

1. Defendants' fifteenth affirmative defense should be stricken because the FRSA does not preclude the United States' claims under CERCLA and the CWA.

The FRSA was enacted in 1970 to give broad regulatory authority over railroad safety, and railroads generally, to the Secretary of Transportation, who assigns regulatory and enforcement responsibility to the Federal Railroad Administration. The FRSA gives the Secretary of Transportation "broad powers to 'prescribe appropriate rules, regulations, orders, and standards for all areas of railroad safety….'" *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 662 (1993)).

The FRSA contains a preemption provision which provides that "[l]aws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable." 49 U.S.C. § 20106(a)(1). It further clarifies that a "State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the

10

Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement." 49 U.S.C. § 20106(a)(2). The FRSA further contains a savings clause which applies to state law causes of action: the FRSA does not preempt state-law claims "seeking damages for personal injury, death, or property damage" alleging that a party either (1) failed to comply with a federal standard of care established by a regulation, (2) failed to comply with its own rule "created pursuant to a regulation or order" issued by the Secretary of Transportation, or (3) "failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2)." 49 U.S.C. § 20106(b)(1).

Applying the *POM Wonderful* analysis, the FRSA does not preclude the United States's claims under the CWA and CERCLA. First, nothing in the FRSA expressly preempts any federal law or any environmental law or regulation. Similarly, nothing in the CWA or CERCLA limits their applicability to railroads. In fact, Congress's inclusion of the FRSA's preemption provision applicable only to State laws, regulations and orders related to rail safety and security implies that Congress did not intend to preclude causes brought under federal statutes. *See POM Wonderful*, 573 U.S. at 113.

Second, FRSA, CWA, and CERCLA are complementary statutes. The FRSA is plainly a statute applicable only to railroads, with a purpose of promoting "safety in every area of railroad operations and reduc[ing] railroad-related accidents and incidents." 49 U.S.C. § 20101. On the contrary, CERCLA and the CWA are environmental statutes aimed at protecting the environment. While application of these two statutes can and does occasionally overlap, as here, that is far from evidencing a Congressional intent that the FRSA preclude application of environmental statutes when a railroad causes or contributes to environmental contamination. Enforcement of the FRSA is largely committed to the Federal Railroad Administration, which has expertise in regulating

11

railroads and rail safety, whereas EPA has expertise in environmental matters, such as cleaning up hazardous waste sites and protecting waterways, utilizing its enforcement authorities under the CWA and CERCLA.

>   2. Defendants' sixteenth affirmative defense should be stricken because the ICCTA does not preclude the United States' claims under CERCLA or the CWA.

Enacted in 1995, the ICCTA's stated purpose was to "reform economic regulation of transportation." ICC TERMINATION ACT OF 1995, Pub. L. 104-88, 109 Stat. 803. Generally regarded as a deregulatory and consolidative legislative enactment, the ICCTA abolished the Interstate Commerce Commission, long responsible for the regulation of the railroads, and instead established the Surface Transportation Board, vesting it with exclusive jurisdiction over all causes of action arising under the ICCTA.

The ICCTA and its regulations, including the regulation of rates and employee relations, are enforced by the Surface Transportation Board. 49 U.S.C. § 10501. The ICCTA "expressly provides that the jurisdiction of the [Surface Transportation] Board over 'transportation by rail carriers is 'exclusive.'" *United States Environmental Protection Agency – Petition for Declaratory Order*, No. 35803, 2014 STB LEXIS 335, at *15 (S.T.B. Dec. 30, 2014) (quoting 49 U.S.C. § 10501(b)). "Section 10501(b) expressly provides that "the remedies provided under [49 U.S.C. §§ 10101-11908] with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." *Id*.

However, "the [Surface Transportation] Board and the courts have concluded that federal environmental statutes such as the Clean Air Act, the Clean Water Act (CWA), and the Safe Drinking Water Act are outside the scope of § 10501(b) preemption, unless the federal environmental laws are being used to regulate rail operations or being applied in a discriminatory manner against railroads." *Grafton & Upton Railroad Company—Petition for Declaratory Order*,

No. 35779, 2014 STB LEXIS 12, at *15 (S.T.B. Jan. 27, 2014) (citing *Ass'n of Am. R.Rs. v. S. Coast Air Quality Mgmt. Dist.*, 622 F.3d 1094, 1098 (9th Cir. 2010)). Indeed, "the Board has noted that 'nothing in [§] 10501(b) is intended to interfere with the role of state and local agencies in implementing Federal environmental statutes such as . . . the Clean Water Act.'" *United States v. St. Mary's Ry. W., LLC*, 989 F. Supp. 2d 1357, 1362 (S.D. Ga. 20213) (quoting *Friends of the Aquifer, City of Hauser, Ind., Hauser Lake Water Dist., Cheryl L. Rodgers, Clay Larkin, Kootenai Env't All., R.R. & Clearcuts Campaign*, No. 33966, 2001 WL 928949, at *4 (S.T.B. Aug. 10, 2001)).

In *St. Mary's Railway*, the court held that "§10501(b)(2) does not override the EPA's jurisdiction to enforce the CWA against Defendants." *St. Mary's Ry. W., LLC*, 989 F. Supp. 2d. at 1360. Citing the Eleventh Circuit, the court stated that "the preemption provision displaces only those laws that have the effect of managing or governing rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation." *St. Mary's Ry. West, LLC*, 989 F. Supp. 2d. at 1360 (quoting *Fla. E. Coast Ry. Co. v. City of West Palm Beach*, 226 F.3d 1324, 1331 (11th Cir. 2001) (internal quotation marks omitted). That court held that "[the] CWA's scheme for environmental protection is in no way a direct regulation on Defendants' activities" and therefore was not preempted by the ICCTA. *St. Mary's Ry. W., LLC*, 989 F. Supp. 2d. at 1361.

Both the judgment of the Surface Transportation Board and the analysis laid out by the Supreme Court in *POM Wonderful* compel finding that the ICCTA does not preclude the United States's claims under the CWA and CERCLA. Here again, the ICCTA does not contain an express preemption provision that covers federal environmental claims under the CWA or CERCLA. As stated above, nothing in the CWA or CERCLA limits its applicability to railroads. In fact,

notwithstanding the Surface Transportation Board's exclusive jurisdiction for actions arising under the ICCTA, courts have found that "[i]f an apparent conflict exists between ICCTA and a federal law, then the courts must strive to harmonize the two laws, giving effect to both laws if possible." *Ass'n. of Am. R.Rs. v. S. Coast Air Quality Mgmt. Dist.*, 622 F.3d 1094, 1098 (9th Cir. 2010) . Additionally, the ICCTA, CWA, and CERCLA are again complementary statutes. These statutes serve different purposes and have different scopes. They are subject to enforcement by two different agencies, both with expertise at enforcing its assigned statutes.

> 3. Defendants' seventeenth affirmative defense should be stricken because the HMTA does not preclude the United States' claims under CERCLA or the CWA.

The HMTA, passed in 1975, granted the Secretary of Transportation the authority to impose requirements related to the transportation of hazardous materials. Its purpose is "to protect against the risks to life, property, and the environment that are inherent in the transportation of hazardous material in intrastate, interstate, and foreign commerce." 49 U.S.C. § 5101. The HMTA empowered the Secretary of Transportation to designate as hazardous material any "particular quantity or form" of a material that "may pose an unreasonable risk to health and safety or property." *Id*. at § 5103.

The HMTA preemption provisions only explicitly preempt "the law, regulation, order, or other requirement of a *State*, political subdivision of a *State*, or *Indian tribe*" which relates to a specific set of "subjects" and that is not "substantively the same as a provision of this chapter, a regulation prescribed under this chapter." 49 U.S.C. § 5125(b) (emphasis added).

The HMTA does not contain an express preemption of any federal law or any environmental law or regulation. Similarly, nothing in the CWA or CERCLA limits their applicability to transporters of hazardous materials. In fact, one basis for liability under CERCLA

is as a transporter of hazardous substances for disposal or treatment. 42 U.S.C. § 9607(a)(4). As with the FRSA, Congress considered preemption when writing the HMTA. By limiting the pre-emption under the HMTA to States, political subdivisions of States, and Indian tribes, it is implicit that Congress did not intend for the HMTA to pre-empt other federal laws.

Secondly, the HMTA, CWA, and CERCLA are complementary statues which each have their own purpose and scope. While the HMTA ensures that railroads transport hazardous materials in a safe manner, the CWA and CERCLA protect against environmental harms. The HMTA is enforced by agencies that have expertise in safe transportation. However, those agencies lack the same expertise that EPA has with respect to environmental harm, cleanup, and remediation.

***

For the reasons laid out herein, the Court should find that the FRSA, the ICCTA, and the HMTA do not preclude the United States's claims under the CWA and CERCLA. Recognizing that CERCLA and the CWA are not precluded in this matter allows the citizens of East Palestine and the surrounding area to benefit from the synergistic effects of a comprehensive statutory scheme that ensures that they are made as whole as possible after this tragedy.

## IV.   CONCLUSION

Defendants' seventh, eighth, twelfth, fourteenth, fifteenth, sixteenth, and seventeenth affirmative defenses fail to state a claim on which relief can be granted. Striking them now will streamline this case and avoid wasting time and resources on irrelevant discovery. Accordingly, the United States respectfully requests that the Court grant this motion to strike.

Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

*s/ Lauren D. Grady*
LAUREN D. GRADY (IL: 6315393)
MATTHEW C. INDRISANO (VA: 66617)
TRACI N. CUNNINGHAM (MO: 71515)
Trial Attorneys
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
Lauren.Grady@usdoj.gov
Matthew.Indrisano@usdoj.gov
Traci.Cunningham@usdoj.gov

REBECCA C. LUTZKO
First Assistant United States Attorney
Northern District of Ohio

BRENDAN F. BARKER (IL: 6299039)
ELIZABETH A. DEUCHER (OH: 0095542)
Assistant United States Attorneys
Northern District of Ohio
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113
Phone: (216) 622-3795/3712
Fax: (216) 522-2404
Brendan.Barker@usdoj.gov
Elizabeth.Deucher@usdoj.gov

Of counsel:

NICOLE WOOD
NAEHA DIXIT
TASIA KASTANEK
JOLIE MCLAUGHLIN
US EPA Region 5, Office of Regional Counsel