# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| THE STATE OF OHIO, ex rel. DAVE YOST, OHIO ATTORNEY GENERAL, <br><br> and <br><br> THE UNITED STATES OF AMERICA, <br><br><div align="center">Plaintiffs,</div><br> v. <br><br> NORFOLK SOUTHERN RAILWAY COMPANY and NORFOLK SOUTHERN CORPORATION, <br><br><div align="center">Defendants/Third-Party Plaintiffs,</div><br> v. <br><br> OXY VINYLS LP, GATX CORPORATION, GENERAL AMERICAN MARKS COMPANY, TRINITY INDUSTRIES LEASING COMPANY, SMBC RAIL SERVICES LLC, DOW CHEMICAL INCORPORATED, and UNION TANK CAR COMPANY, <br><br><div align="center">Third-Party Defendants.</div> | Civil Action Nos. 4:23CV517<br>4:23CV675 <br><br> Hon. John R. Adams |

## DEFENDANTS' OPPOSITION TO THE UNITED STATES' MOTION TO STRIKE CERTAIN AFFIRMATIVE DEFENSES

# TABLE OF CONTENTS

Page

INTRODUCTION ...........................................................................................................................1

LEGAL STANDARD......................................................................................................................1

ARGUMENT...................................................................................................................................2

    A.    The Court Should Exercise Its Discretion to Deny the United States' Motion In Full ...................................................................................................................................2

    B.    Norfolk Southern's CERCLA-Related Affirmative Defenses Cannot be Struck at This Stage..............................................................................................................................3

        1.    Norfolk Southern's seventh affirmative defense should not be struck because the United States seeks remedial and removal costs ......................3

        2.    Norfolk Southern's twelfth affirmative defense should not be struck because the National Contingency Plan permits recovery on a response action only to the appropriate extent, requiring the government to mitigate its own damages ..............................................................................................5

    C.    Norfolk Southern's Preclusion-Related Affirmative Defenses Are Valid and Adequately Pled .................................................................................................................6

CONCLUSION..............................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. 150 Acres of Land*,
204 F.3d 698 (6th Cir. 2000) ................................................................................................5

*United States v. Am. Cyanamid Co.*,
786 F. Supp. 152 (D.R.I. 1992)..............................................................................................4

*Massachusetts v. Blackstone Valley Elec. Co.*,
867 F. Supp. 78 (D. Mass. 1994) ..........................................................................................5

*Brown & Williamson Tobacco Corp. v. United States*,
201 F.2d 819 (6th Cir. 1953) .................................................................................................2

*Chiancone v. City of Akron*,
2011 WL 4436587 (N.D. Ohio Sept. 23, 2011).....................................................................1

*United States v. Chrysler Corp.*,
168 F. Supp. 2d 754 (N.D. Ohio 2001)................................................................................4, 5

*CSX Transp., Inc. v. Easterwood*,
507 U.S. 658 (1993)................................................................................................................8

*United States v. Dico, Inc.*,
266 F.3d 864 (8th Cir. 2001) .................................................................................................5

*Frisby v. Keith D. Weiner & Assocs. Co., LPA*,
669 F. Supp. 2d 863 (N.D. Ohio 2009)................................................................................2, 3

*United States v. Hardage*,
982 F.2d 1436 (10th Cir. 1992) .............................................................................................4

*Jeeper's of Auburn, Inc. v. KWJB Enter., LLC*,
2011 WL 1899195 (E.D. Mich. Mar. 16, 2011) ....................................................................2

*Kelley v. Thomas Solvent Co.*,
714 F. Supp. 1439 (W.D. Mich. 1989) ..................................................................................6

*Lawrence v. Chabot*,
182 F. App'x 442 (6th Cir. 2006) .......................................................................................1, 6

*Operating Eng'rs Loc. 324 Health Care Plan v. G&W Constr. Co.*,
    783 F.3d 1045 (6th Cir. 2015) ........................................................................ *passim*

*POM Wonderful LLC v. Coca-Cola Co.*,
    573 U.S. 102 (2014) ........................................................................................... 7, 8

*United States v. Pretty Prods., Inc.*,
    780 F. Supp. 1488 (S.D. Ohio 1991) .................................................................... 6

*United States v. St. Mary's Ry. W., LLC*,
    989 F. Supp. 2d 1357 (S.D. Ga. 2013) .................................................................. 9

**Statutes**

33 U.S.C. § 1251 ....................................................................................................... 7

42 U.S.C. § 9601 ....................................................................................................... 7

42 U.S.C. § 9605 ..................................................................................................... 4, 6

42 U.S.C. § 9607 ....................................................................................................... 5

42 U.S.C. § 9621 ....................................................................................................... 4

49 U.S.C. § 5101 ....................................................................................................... 9

49 U.S.C. § 5103 ....................................................................................................... 7

49 U.S.C. § 10501 ..................................................................................................... 7

49 U.S.C. § 20103 ..................................................................................................... 7

**Regulations**

40 C.F.R. § 300.430 ................................................................................................... 4

**Other Authorities**

*Grafton & Upton R.R. Co.—Pet. for Declaratory Order*, No. 35779, 2014 STB
    LEXIS 12 .............................................................................................................. 9

Fed. R. Civ. P. 12(f) .............................................................................................. 1, 2

## INTRODUCTION

Motions to strike Pleadings under Rule 12(f) are "viewed with disfavor and are not frequently granted." *Operating Eng'rs Loc. 324 Health Care Plan v. G&W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015). The United States' Motion to Strike asks this Court to prematurely adjudicate the merits of affirmative defenses set forth by Norfolk Southern Railway Company and Norfolk Southern Corporation (collectively, "Norfolk Southern") before any discovery has taken place. Moreover, the United States will achieve no benefit if it succeeds in its Motion: it identifies no discovery that would be avoided or efficiencies gained if the Court were to grant the Motion, particularly when the same affirmative defenses are being asserted against the Ohio Complaint that has been consolidated with the United States' Complaint. The Court should exercise its discretion to deny this "drastic" remedy. *See Chiancone v. City of Akron*, 2011 WL 4436587, at *2 (N.D. Ohio Sept. 23, 2011) ("Motions to strike under Rule 12(f) are addressed to the sound discretion of the trial court, but are generally disfavored" because "[s]triking pleadings is considered a drastic remedy to be used sparingly….").

Moreover, contrary to the United States' assertions, Norfolk Southern's affirmative defenses are valid because they give the government fair notice of the nature of the defense and may be relevant to the claims at issue. No more is required. Therefore, the United States' Motion to Strike should be denied.

## LEGAL STANDARD

"An affirmative defense may be pleaded in general terms and will be held to be sufficient ... as long as it gives plaintiff fair notice of the nature of the defense." *Lawrence v. Chabot*, 182 F. App'x 442, 456 (6th Cir. 2006) (quoting 5 Wright & Miller, *Federal Practice and Procedure*

- 1 -

§ 1274)). A motion to strike should only "be granted if it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense and are inferable from the pleadings." *Operating Eng'rs*, 783 F.3d at 1050 (internal quotation marks omitted). In other words, to be stricken, an affirmative defense must have "no possible relation to the controversy." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953).

<p align="center">**ARGUMENT**</p>

**A.      The Court Should Exercise Its Discretion to Deny the United States' Motion In Full**

Because striking an affirmative defense is viewed as a drastic remedy, a court's discretion to strike an affirmative defense is "broad" and "wholly discretionary." *Frisby v. Keith D. Weiner & Assocs. Co., LPA*, 669 F. Supp. 2d 863, 867 (N.D. Ohio 2009) (explaining that courts have "broad discretion [whether] to grant a motion to strike under Rule 12(f)" and "should do so only where the allegations are clearly immaterial to the controversy or prejudice the movant"). "Rule 12(f) permits the Court to act with discretion in that it may strike irrelevant and superfluous defenses or let them stand. There is absolutely no harm in letting them remain in the pleadings if, as the Plaintiff contends, they are inapplicable." *Jeeper's of Auburn, Inc. v. KWJB Enter., LLC*, 2011 WL 1899195, at *2 (E.D. Mich. Mar. 16, 2011) (quoting *ConocoPhillips Co. v. Shaffer*, 2005 WL 2280393, at *2 (N.D. Ohio Sept. 19, 2005)).

Here, the United States fails to provide anything other than conclusory statements about how its motion benefits this litigation. *See, e.g.*, Mot. 7, 15. The government merely asserts without specificity that striking certain affirmative defenses could "streamline this case and avoid wasting time and resources on irrelevant discovery," Mot. 15, but the United States does

<p align="center">- 2 -</p>

not explain how striking any of the affirmative defenses would streamline discovery here, particularly given that the defenses are also asserted in response to the Ohio's complaint, which is consolidated for discovery purposes with the United States' complaint. Nor does the United States demonstrate that these defenses are "clearly immaterial" to the claims at issue; rather, the defenses directly relate to the claims and thus are material and relevant. *Frisby*, 669 F. Supp. 2d at 867. Given the United States' failure to specify any efficiencies that would be achieved if the Court were to grant this drastic remedy, this Court should deny the United States' motion in full.

> **B.      Norfolk Southern's CERCLA-Related Affirmative Defenses Cannot be Struck at This Stage**

If the Court does not deny the Motion as a threshold matter and instead exercises its discretion to review the affirmative defenses individually, the Motion should still be denied. Norfolk Southern has adequately pleaded its seventh (no cost recovery for ineffective costs) and twelfth (failure to mitigate) affirmative defenses, as set forth below. Because the United States cannot demonstrate "to a certainty" that these defenses are inapplicable, the Motion should be denied as to the seventh and twelfth affirmative defenses on this basis. *Operating Eng'rs*, 783 F.3d at 1050.

> *1.      Norfolk Southern's seventh affirmative defense should not be struck because the United States seeks remedial and removal costs*

The United States claims that Norfolk Southern's seventh affirmative defense should be struck because the "clean-up in East Palestine is a removal action, not a remedial action," and removal actions are not required to be cost-effective. Mot. 4. But the United States does not, in its Complaint, plead that the costs of the East Palestine response actions are solely removal costs. Indeed, the United States seeks to hold Norfolk Southern "liable for all costs of removal *or*

- 3 -

*remedial* action incurred by the United States Government." Am. Compl. ¶ 154 (emphasis added). Similarly, in its claims for relief, the United States asks the Court to find Norfolk Southern "liable for *all* of the United States' CERCLA response costs that are not inconsistent with the National Contingency Plan [NCP]," and further requests all costs associated with "any" further action, including natural resource damages. *Id.* ¶¶ C-D (emphasis added).

As pleaded, these requests seek to hold Norfolk Southern responsible for *all* of the government's costs, whether relating to a removal action, remedial action, or natural resources restoration (an aspect of damages plainly unrelated to removal). Nowhere does the government affirmatively plead that it does not seek remedial costs—to the contrary, it seeks *all* of its costs. And there is no question, and the United States agrees, that CERCLA and the NCP require remedial actions to be cost-effective, *see* 42 U.S.C. §§ 9621(a), 9605(a)(7); 40 C.F.R. § 300.430(f)(1)(ii)(D), and that the United States can only recover cost-effective expenditures in a remedial action, *see, e.g.*, *United States v. Chrysler Corp.*, 168 F. Supp. 2d 754, 765 (N.D. Ohio 2001). For this reason, the United States' motion fails as to this defense.

Nevertheless, ignoring the plain language of its own pleading, the United States argues that cost-effectiveness is irrelevant because the response action at issue is a removal action. Mot. 4. But this argument fails even if one were to turn a blind eye to the inherent inconsistency in the United States' position because the one Sixth Circuit case and the four out-of-circuit cases cited by the United States in its brief do not provide legal support to strike the affirmative defense. Rather, each of these cases merely confirms that remedial costs *are* required to be cost-effective. None addresses a motion to strike an affirmative defense based on cost-effectiveness as a matter of law. *See United States v. Am. Cyanamid Co.*, 786 F. Supp. 152, 158 (D.R.I. 1992); *United*

- 4 -

*States v. Hardage*, 982 F.2d 1436, 1442 (10th Cir. 1992); *Massachusetts v. Blackstone Valley Elec. Co.*, 867 F. Supp. 78, 80-81 (D. Mass. 1994); *Chrysler Corp.*, 168 F. Supp. 2d at 765; *United States v. Dico, Inc.*, 266 F.3d 864, 878-79 (8th Cir. 2001).

Moreover, as the Sixth Circuit has held, the United States may not recover for removal actions that unnecessarily "raised the costs significantly." *United States v. 150 Acres of Land*, 204 F.3d 698, 710 (6th Cir. 2000). Indeed, the government may only recover costs that are consistent with the NCP. 42 U.S.C. § 9607(a)(2)(A). And if an ineffective cost significantly raised costs of the response, it "cannot be said to *advance* or *promote* the goals of the NCP," and consequently cannot be recovered—even in a removal action. *Id.* The United States cannot demonstrate "to a certainty" on the pleadings alone that its response costs, including its removal costs, were appropriate. *Operating Eng'rs*, 783 F.3d at 1050. Rather, whether the government's removal costs were sufficiently appropriate can be determined only through discovery.

The Motion should be denied as to Norfolk Southern's seventh affirmative defense.

> 2. *Norfolk Southern's twelfth affirmative defense should not be struck because the NCP permits recovery on a response action only to the appropriate extent, requiring the government to mitigate its own damages*

The Motion should be denied with respect to the twelfth affirmative defense (failure to mitigate damages) because the NCP does not permit the United States to hold Norfolk Southern responsible if the United States itself failed to minimize damages incurred in the response to the derailment. Although the United States is correct that CERCLA does not impose a specific duty to mitigate, *see* Mot. 6, that does not permit the government to execute *any* response and then hold a party responsible for the resulting costs.

Rather, as explained above, CERCLA requires the government's response to be "consistent with the national contingency plan." *United States v. Pretty Prods., Inc.*, 780 F. Supp. 1488, 1502 (S.D. Ohio 1991); *see also Kelley v. Thomas Solvent Co.*, 714 F. Supp. 1439 (W.D. Mich. 1989). Consistency with the NCP requires, among other things, that actions be limited to "the appropriate extent of removal, remedy, and other measures." 42 U.S.C. § 9605(a)(3). The government's response action is thus inconsistent with the NCP if it goes beyond the "appropriate extent" (*i.e.*, by increasing the extent of removal, remedy, or other measures by a failure to mitigate its own damages). *Id.*

The merits of the twelfth affirmative defense cannot be adjudicated on the pleadings. Rather, Norfolk Southern must take discovery to determine whether the government's response costs were appropriate and consistent with the NCP. The motion to strike Norfolk Southern's twelfth affirmative defense should be denied.

### C. Norfolk Southern's Preclusion-Related Affirmative Defenses Are Valid and Adequately Pled

The United States does not seriously challenge the fact that Norfolk Southern has adequately pled its fifteenth, sixteenth, and seventeenth affirmative defenses (collectively, the "Preclusion Defenses"), which "give[] plaintiff fair notice of the nature of the defense." *Lawrence*, 182 F. App'x at 456. Indeed, Norfolk Southern's Answer puts the United States on notice of its affirmative defenses that portions of the United States' claims are subject to preclusion by virtue of the Federal Railway Safety Act (FRSA), Interstate Commerce Commission Termination Act (ICCTA), and Hazardous Materials Transportation Act (HMTA).

Rather, the United States argues that "it would create a result which Congress surely did not intend" if CERCLA and the CWA were precluded by the FRSA, HMTA, or ICCTA because

the statutes are complementary. Mot. 8-15. This argument lacks legal basis. Indeed, both parties agree that *POM Wonderful* provides the framework to analyze preclusion here, and that case held that "[w]hen two statutes complement each other, it would show disregard for the congressional design to hold that Congress nonetheless intended one federal statute to preclude the operation of the other." *See POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 115 (2014). Applying *POM Wonderful* to this case, it is clear that important elements of the purpose and scope of CERCLA and the CWA do *not* complement the purpose and scope of the FRSA, ICCTA, and HMTA. *See id.*

In particular, certain of the allegations supporting the United States' claims are related to Norfolk Southern's railroad operations, a topic that is unrelated to the CWA and CERCLA's purposes but is at the core of the FRSA, ICCTA, and HTMA. The purposes of the CWA and CERCLA are protection of the Nation's waters and the cleanup of hazardous waste, respectively. *See* 33 U.S.C. § 1251; 42 U.S.C. § 9601. But certain of the United States' allegations have no relation to those purposes. *E.g.*, Am. Compl. ¶¶ 26 (discussing Norfolk Southern's "spending to repair, service, and maintain locomotives and freight cars, perform train inspections, and pay engine crews and train crews"), 28 (discussing Norfolk Southern's "train inspections, use of defective equipment detectors, train movement, braking, and positive train control"), E (asking the Court to "[o]rder Defendants to take such actions as may be necessary to ensure safe transport of oil and hazardous materials, hazardous substances, pollutants, and contaminants"). In contrast, these allegations related squarely to the purposes of the FRSA, ICCTA, and HMTA, which govern the federal railways, transportation by railroads, and the transportation of hazardous materials respectively, all of which are the subject of these allegations. 49 U.S.C.

§§ 5103, 10501, 20103. The United States' claims, to the extent based on allegations and facts that are at the core of transportation by railroads, may be precluded by the FRSA, ICCTA, and HMTA. That is all that is required for the affirmative defenses to remain.

Because of the comprehensive statutory schemes provided by FRSA, ICCTA, and HMTA, application of the Preclusion Defenses in this case would not lead to a result that Congress "likely did not intend." *See POM Wonderful*, 573 U.S. at 116. The FRSA, ICCTA, and HMTA offer their own specialized regulatory framework to address issues related to railway safety, transportation by railroads, and hazardous materials transportation. Norfolk Southern does not contend that the FRSA, ICCTA, and HMTA would provide a complete defense to the claims asserted in the Complaint, nor could it at this stage in the litigation. Rather, limiting the United States' claims, where premised in part on core transportation regulations, based on preclusion by FRSA, ICCTA, and HMTA would ensure that a regulatory body with expertise in railroad transportation regulation and safety continues to enforce the applicable laws with uniformity.

Accordingly, Norfolk Southern notes that certain of the United States' allegations appear to be directly within the purpose, scope, and designated powers of the FRSA, ICCTA, and HMTA. Discovery will be necessary to determine the extent to which these claims are, in fact, premised on alleged violations of core transportation regulations. For example, at least some of the United States' claims regarding the derailment appear solely related to railroad safety, the regulation of which the FRSA delegates to the Secretary of Transportation. *See CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 662 (1993). The United States' prayer for relief explicitly asks the Court to "[o]rder Defendants to take such actions as may be necessary to ensure safe

transport of oil and hazardous materials." Am. Compl. ¶ E. The Surface Transportation Board and courts have found preclusion where "the federal environmental laws are being used to regulate rail operations." *Grafton & Upton R.R. Co.—Pet. for Declaratory Order*, No. 35779, 2014 STB LEXIS 12, at *15 (S.T.B. Jan. 27, 2014) (citing *Ass'n of Am. R.Rs. v. S. Coast Air Quality Mgmt. Dist*., 622 F.3d 1094, 1098 (9th Cir. 2010)).[1] The United States' prayer for relief is an attempt to do just that.

Similarly, many of the United States' allegations concerning the train derailment and the materials transported by Norfolk Southern relate to rail operations, the subject of ICCTA. *See, e.g.*, Am. Compl. ¶¶ 38-39, 42, 63-64. And portions of the United States' claims are also directly related to "protect[ing] against the risks to life, property, and the environment that are inherent in the transportation of hazardous material in intrastate, interstate, and foreign commerce," the core stated purpose of the HMTA. 49 U.S.C. § 5101; Mot. 14; *see also* Am. Compl. ¶ E.

The Preclusion Defenses will ultimately turn on facts that have yet to be uncovered in discovery, which may show that the FRSA, ICCTA, and HMTA address specific elements of the United States' claims to a core degree and thus preclude contrary enforcement via CERCLA and/or the CWA. Therefore, it is not "certain[] that plaintiffs [will] succeed despite any state of the facts which could be proved in support of the defense and are inferable from the pleadings." *Operating Eng'rs*, 783 F.3d at 1050. The United States' motion should be denied as to the Preclusion Defenses.

---

[1] The United States' reliance on *St. Mary's Railway* fails. Unlike this case, *St. Mary's Railway* addressed alleged unauthorized discharges into wetlands that occurred during the construction of tracks, not during the railroad's core transportation-related operations. *See United States v. St. Mary's Ry. W., LLC*, 989 F. Supp. 2d 1357, 1359 (S.D. Ga. 2013).

**CONCLUSION**

For the foregoing reasons, the United States' Motion to Strike Norfolk Southern's

Affirmative Defenses should be denied in its entirety.

Date: August 7, 2023                    Respectfully submitted,


By: /s/ *Davina Pujari*
Davina Pujari (admitted *pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Tel.: (628) 235-1136
Fax: (628) 235-1001
Davina.Pujari@wilmerhale.com

Edward O'Callaghan (admitted *pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel.: (202) 663-6956
Fax: (202) 663-6363
Edward.O'Callaghan@wilmerhale.com

Claire Guehenno (admitted *pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 295-6524
Fax: (212) 230-8888
Claire.Guehenno@wilmerhale.com

Christopher A. Rheinheimer (admitted *pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Tel.: (628) 235-1000
Fax: (628) 235-1001
Chris.Rheinheimer@wilmerhale.com

Louis L. McMahon (0067378)
MCMAHON DEGULIS LLP
812 Huron Road, Suite 650
Cleveland, OH 44115
Tel.: (216) 367-1407
lmcmahon@mdllp.net

*Counsel for Defendants and Third-Party Plaintiffs*

- 11 -

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2023, I caused a copy of the foregoing to be filed with the Clerk of the Court using the Court's CM/ECF electronic filing system, which will provide electronic notice to all counsel of record.

 /s/ Davina Pujari
Davina Pujari (admitted *pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Tel.: (628) 235-1136
Fax: (628) 235-1001
Davina.Pujari@wilmerhale.com

*Counsel for Defendants and Third-Party Plaintiffs*

- 12 -