IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THE STATE OF OHIO,<br><br>and<br><br>THE UNITED STATES OF AMERICA,<br><br>Plaintiffs,<br><br>v.<br><br>NORFOLK SOUTHERN RAILWAY COMPANY,<br><br>and<br><br>NORFOLK SOUTHERN CORPORATION,<br><br>Defendants. | Civil Case No. 23-cv-517<br>Hon. John R. Adams |

**UNITED STATES' REPLY IN SUPPORT OF ITS MOTION
TO STRIKE CERTAIN AFFIRMATIVE DEFENSES**

There is no set of facts on which Defendants could prevail on certain of its affirmative defenses. *See* ECF No. 34-1. The United States heard this Court at the Case Management Conference when it made clear to the parties that it wanted targeted discovery. *See e.g.*, Tr. at 10 ("I always try to narrow down the issues, find out how the discovery should proceed… in an efficient way, and so it's not so wide-ranging that it takes, again, in this instance in particular, years…"). If this Court strikes these seven affirmative defenses upon which Norfolk Southern cannot prevail, the parties can focus on the meaningful claims and defenses and avoid the time and expense of litigating frivolous claims masquerading as defenses. No discovery is needed for the Court to determine that these defenses fail to state a claim on which relief can be granted.

Accordingly, the United States's Motion to Strike Certain Affirmative Defenses should be granted, and Defendants' seventh, eighth, twelfth, fourteenth, fifteenth, sixteenth, and seventeenth affirmative defenses should be dismissed.

## ARGUMENT

### I. Defendants Do Not Dispute That Their Eighth And Fourteenth Affirmative Defenses Fail To State A Claim Upon Which Relief May Be Granted.

Defendants' response is completely silent in response to the United States' arguments in its Motion regarding Defendants' eighth (de micromis costs) and fourteenth (limitation of damages and apportionment of liability under Ohio law) affirmative defenses. In their response brief, Defendants do not even mention these defenses. Defendants effectively concede that these Affirmative Defenses do not state a claim upon which relief may be granted and the Defenses should be stricken.

### II. Defendants Fail To Show That The United States Had A Duty To Comply With Requirements For A Remedial Action In The Removal Action Taking Place At The Derailment Site, Thus The Court Should Strike Defendants' Seventh Affirmative Defense (Ineffective Costs).

As the United States demonstrated in its opening brief, the clean-up in East Palestine is a removal action, and, unlike when selecting a remedial action, there is no corresponding requirement for cost effectiveness in a removal action. Defendants' seventh affirmative defense states, "Defendants are not liable for any response costs incurred by Plaintiff, if any, for removal or remedial actions that were not and are not "cost-effective" pursuant to CERCLA Section 121, 42 U.S.C. § 9621." ECF No. 28, Affirmative Defenses ¶ 8. This defense is a red herring that Defendants support by calling out a few specific provisions of the Amended Complaint.

First, Defendants look to Paragraph 154, which is a general allegation citing statutory language from Section 107 of CERCLA (42 U.S.C. § 9607 (a)). It is entirely appropriate for the

2

United States to cite statutory language while explaining the background of a statute that serves as one of the foundations for Defendants' liability in this case. And the cited paragraph does nothing to support Defendants' argument because the statute does not impose a cost-effectiveness requirement, and the Defendants' attempt to impose such a requirement for this on-going removal action has no basis in law.

Additionally, Defendants focus on the United States's request for injunctive relief in Paragraph C and D of the prayer for relief to support their argument. Paragraph C relates to future response costs, while Paragraph D relates to natural resource damages. Each of these paragraphs asks the Court to enter a declaratory judgment against Defendants as to liability to prevent relitigating that issue in the future. That is because liability is an issue that this Court should resolve in this case. *See Kelley v. E.I. DuPont de Nemours & Co.*, 17 F.3d 836, 844 (6th Cir. 1994) ("In providing for the recovery of response costs, Congress included language to ensure that a responsible party's liability, once established, would not have to be relitigated.").

Further, in an attempt to save its inapplicable defense, Defendants mischaracterize dicta in *United States v. 150 Acres of Land*, 204 F.3d 698, 710 (6th Cir. 2000). *See* ECF No. 54, p. 5. Defendants rely on *150 Acres of Land* to say that the "United States may not recover for removal actions that unnecessarily 'raised the costs significantly.'" *See* ECF No. 54, p. 5.  But the Sixth Circuit does not say that; instead, the Sixth Circuit recognized there was "no evidence in the record that removing the empty drums [from the site] raised the costs significantly." *150 Acres of Land*, 204 F.3d at 710. But the court's observation does not mean the United States cannot recover for removal actions that unnecessarily raise costs significantly. *See id*. Instead, the Sixth Circuit's analysis was limited to whether the United States' decision to remove empty drums was not

3

inconsistent with the NCP, noting that the NCP is very permissive. *Id*. Defendants' argument reads into CERCLA a requirement that simply is not there.[1]

Outside of this misleading argument, Defendants attempt to recharacterize their affirmative defense as a challenge to costs that are inconsistent with the NCP. ECF No. 54, p. 5. In doing so, the Defendants present an argument that runs contrary to the clear wording of the seventh affirmative defense that says nothing about the NCP. *See* ECF No. 28, Affirmative Defenses ¶ 8. For this reason, if Defendants genuinely intend to address costs of response actions that were inconsistent with the NCP, this defense should be dismissed as insufficient to place the United States on notice as to the claims against it. *See Williams v. Provident Inv. Couns., Inc.*, 279 F. Supp. 2d 894, 906 (N.D. Ohio 2003) (stating that an affirmative defense must be adequately pleaded according to Federal Rules of Civil Procedure 8 and 9). For these reasons, the Court should strike Defendants' sixth affirmative defense as it is insufficient as a matter of law.

### III. Defendants Concede That The United States Has No Duty to Mitigate And Thus Their Twelfth Affirmative Defense Fails To State A Claim Upon Which Relief May Be Granted.

The Court should strike Defendants' twelfth affirmative defense because, as Defendants admit in their response, the United States has no duty to mitigate its damages. *See* ECF No. 54, p. 5. Specifically, the Defendants concede that "the United States is correct that CERCLA does not impose a specific duty to mitigate…." *Id*. In its response, Defendants point to the NCP to bolster its argument against the Court striking this defense. *Id*. at 6. The United States is entitled to recover all of its response costs not inconsistent with the NCP, if the decision to incur the challenged costs

---

[1] Defendants' argument also misstates the standard on a cost recovery action stating that the Government can only recover costs that are consistent with the NCP. *See* ECF No. 54, p. 5. The standard on a cost recovery claim is that the United States may recover "all costs of removal or remedial action… not inconsistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(A).

4

was not arbitrary and capricious. 42 U.S.C. § 9607(a)(4)(A); *United States v. R.W. Meyer, Inc.*, 889 F.2d 1497, 1508 (6th Cir. 1989). However, nowhere in the defense does it mention the NCP let alone whether costs or removal actions are not inconsistent with the NCP. *See* ECF No. 28, Affirmative Defenses ¶ 13 ("Plaintiff failed to exercise reasonable care and diligence to avoid loss and to minimize its damages, if any, and this failure to mitigate damages alone caused, contributed to, or aggravated any damages or injuries to Plaintiff, if any, and therefore precludes or reduces any recovery against Defendants."). Therefore, if the twelfth affirmative defense is to be construed as a challenge to costs of response actions that are inconsistent with the NCP, it is insufficiently plead and due to be dismissed for that reason. *See Williams*, 279 F. Supp. 2d at 906.

Defendants also attempt to support their defense by imposing a non-existent standard (the "appropriate extent") and arguing that is proof that the United States must mitigate its "damages." In support of this argument, Defendants point to 42 U.S.C. § 9605(a)(3). This statutory provision relates to the development of the NCP and states that the NCP "shall include at a minimum: … (3) methods and criteria for determining the appropriate extent of removal, remedy, and other measures authorized by this chapter." 42 U.S.C. § 9605(a)(3). This requirement to develop the NCP is irrelevant to the issue at hand, which is response costs incurred pursuant to the NCP. It does not impose a limitation on the United States' ability to recover costs so long as those costs of removal or remedial action are not inconsistent with the NCP. *See* 42 U.S.C. 9607(a)(4)(A). In the end, the Court should strike Defendants' twelfth affirmative defense to prevent the United States from unnecessary discovery on what is at best a duplicative affirmative defense.

    **IV.**    **The Court Should Strike Defendants' Preclusion Based Affirmative Defenses Because CERCLA And The CWA Aim to Protect the Environment.**

Defendants' fifteenth, sixteenth, and seventeenth affirmative defenses allege that the United States's claims brought under CERCLA and the CWA are precluded by the jurisdiction of

5

the Federal Rail Safety Act (FRSA), the Interstate Commerce Commission Termination Act (ICCTA), and the Hazardous Materials Transport Act (HMTA). *See* ECF No. 28, Affirmative Defenses ¶¶ 15-17. The main crux of Defendants' argument is "that important elements of the purpose and scope of CERCLA and the CWA do not complement the purpose and scope of the FRSA, ICCTA, and HMTA." ECF No. 54, p. 7. Its only real argument in support of this conclusion is that the FRSA, ICCTA, and HTMA create their own comprehensive statutory scheme related to rail transport. *Id*. at 7-8. The United States does not dispute that the FRSA, ICCTA, and HMTA regulate railroads; it does dispute that this fact renders the statutes non-complementary.

While Defendants claim to rely on *POM Wonderful LLC v. Coca Cola Co.*, 573 U.S. 102 (2014), which they agree supplies the framework to analyze this preclusion question, Defendants do not apply the *POM Wonderful* framework. Rather, Defendants conclude that because the "FRSA, ICCTA, and HMTA offer their own specialized regulatory framework to address issues related to railway safety, transportation by railroads, and hazardous materials transportation" and the "purposes of the CWA and CERCLA are protection of the Nation's waters and the cleanup of hazardous waste, respectively" that the statutes are not complementary. *See* ECF No. 54, pp. 7-8. But it was the *distinctiveness* of the regulatory schemes that was one of the factors that the Supreme Court relied on in *POM Wonderful* to find that the Lanham Act and the Federal Food, Drug, and Cosmetic Act were complementary statutes. *POM Wonderful*, 573 U.S. at 115.

Defendants also ignore many of the other factors that the Supreme Court relied on in finding that the Lanham Act and the FDCA were complementary. *See POM Wonderful*, 573 U.S. at 113-16. First, neither statute expressly precluded the other, despite having detailed pre-emption provisions. *Id*. at 113. The same is true of the FRSA, ICCTA, and the HMTA as compared against

6

the CWA and CERCLA. *See* ECF No. 34-1, pp. 11, 13, 14 (discussing the preemption provisions in the FRSA, ICCTA, and HMTA, respectively).

Second, the Supreme Court considered that while the FDCA and the Lanham Act both touched on food and beverage labeling, they both have their own unique purposes and protected different interests. *Id*. at 115. The same can be said for the FRSA, ICCTA, and HMTA and the CWA and CERCLA. Though they overlap in the event of a train derailment that spills hazardous materials, they have their own unique purposes. The FRSA, HMTA, and ICCTA are concerned with rail safety and safe transport of hazardous substances, while CWA and CERCLA are concerned with environmental protection and cleanup. *See* 49 U.S.C. § 5103, 10501, 20103; 33 U.S.C. § 1251; and 42 U.S.C. § 9601.

Third, the Supreme Court was persuaded by the complementary but distinct enforcement mechanisms in which enforcement of the statutes was left to distinct parties with their own unique knowledge of the subject matter of the statutes. *Id*. at 115-6. This is also true of the CWA and CERCLA, under which enforcement is delegated to EPA, and the FRSA, ICCTA, and HMTA, which are delegated to other entities with the expertise to enforce those statutes. *See* ECF No. 34-1, pp. 11-12, 15 (discussing the agencies tasked with enforcement of each statute).

Finally, the Court made clear that finding that the FDCA preempted the Lanham Act would lead to a result that Congress did not intend. *Id*. at 116. The same is true here. Congress could not have intended that the railroads would effectively have blanket immunity to the CWA and CERCLA solely because of their occupation. *See* ECF No. 34-1, p. 9. This conclusion is bolstered by the text of CERCLA and the CWA which makes clear that it was intended to apply to contamination from rail cars based on the definition of facility and the references to common

7

carriers in CERCLA and the definition of point source in the CWA. 42 U.S.C. § 9601(9), (18), (20)(B), (20)(C), and 9656(b); 33 U.S.C. § 1362(14).

As discussed in the United States's opening brief, the *POM Wonderful* framework compels a finding that the FRSA, ICCTA, and HMTA do not preclude the United States's enforcement of the CWA and CERCLA. These statutes are complementary, and the Court should "take advantage of synergies among multiple methods of regulation," by finding that the CWA and CERCLA are not precluded by the FRSA, ICCTA, and HMTA and strike Defendants' fifteenth, sixteenth, and seventeenth affirmative defenses. *See Pom Wonderful*, 573 U.S. at 116.

## CONCLUSION

Defendants' seventh, eighth, twelfth, fourteenth, fifteenth, sixteenth, and seventeenth affirmative defenses fail to state a claim on which relief can be granted. Striking them now will streamline this case and avoid wasting time and resources on irrelevant discovery. Accordingly, the United States requests that the Court grant its Motion to Strike.

Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

*s/ Traci N. Cunningham*
TRACI N. CUNNINGHAM (MO: 71515)
LAUREN D. GRADY (IL: 6315393)
MATTHEW C. INDRISANO (VA: 66617)
Trial Attorneys
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
Traci.Cunningham@usdoj.gov
Lauren.Grady@usdoj.gov
Matthew.Indrisano@usdoj.gov
Phone: (202) 514-2794/1398
Fax: (202) 616-6584

MICHELLE M. BAEPPLER
First Assistant United States Attorney
Northern District of Ohio

BRENDAN F. BARKER (IL: 6299039)
ELIZABETH A. DEUCHER (OH: 0095542)
Assistant United States Attorneys
Northern District of Ohio
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113
Phone: (216) 622-3795/3712
Fax: (216) 522-2404
Brendan.Barker@usdoj.gov
Elizabeth.Deucher@usdoj.gov

Of counsel:
NICOLE WOOD
NAEHA DIXIT
TASIA KASTANEK
US EPA Region 5
Office of Regional Counsel