**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |
|---|---|
| THE STATE OF OHIO, ex rel. DAVE YOST, OHIO ATTORNEY GENERAL, <br><br> and <br><br> THE UNITED STATES OF AMERICA, <br><br>                             Plaintiffs, <br>    v. <br><br> NORFOLK SOUTHERN CORPORATION and NORFOLK SOUTHERN RAILWAY COMPANY, <br><br>                         Defendants/ <br>                        Third-Party Plaintiffs, <br><br>     v. <br><br> OXYVINYLS LP, GATX CORPORATION, GENERAL AMERICAN MARKS COMPANY, TRINITY INDUSTRIES LEASING COMPANY, SMBC RAIL SERVICES LLC, DOW CHEMICAL INCORPORATED, and UNION TANK CAR COMPANY, <br><br>                         Third-Party <br>                        Defendants. | Civil Action No. 4:23CV517 <br><br>                 4:23CV675 <br><br> Hon. John R. Adams |

**NORFOLK SOUTHERN RAILWAY COMPANY AND NORFOLK SOUTHERN CORPORATION'S OPPOSITION TO THIRD-PARTY DEFENDANT OXYVINYLS LP'S MOTION TO DISMISS THE THIRD-PARTY COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

THE ALLEGATIONS OF THE THIRD-PARTY COMPLAINT ................................ 2

    A.    The February 3, 2023 Derailment Of Train 32N .................................. 2

    B.    OxyVinyls Did Not Comply With Federal Regulations ........................ 2

    C.    Derailment Response ............................................................................ 4

STANDARD OF REVIEW ....................................................................................... 5

ARGUMENT ............................................................................................................ 5

I.      Norfolk Southern's CERCLA Claims Are Legally Viable And Sufficiently Pled............ 5

    A.    Norfolk Southern May Proceed Under Both Sections 107(a) and 113(f)............... 5

    B.    Norfolk Southern Sufficiently Alleged Owner And Operator Liability Under CERCLA ................................................................................... 7

    C.    Norfolk Southern Sufficiently Alleged That Its Costs Are Recoverable.............. 11

    D.    Norfolk Southern Is Entitled To Declaratory Relief Under CERCLA ................ 13

II.     Norfolk Southern's Negligence Claims Are Legally Viable And Sufficiently Pled ........ 13

    A.    Norfolk Southern's Negligence Claims Are Not Preempted By CERCLA ......... 13

    B.    Norfolk Southern's Negligence Claims Are Not Preempted By The HMTA................................................................................................. 14

    C.    Norfolk Southern Adequately Pled Negligence................................... 15

III.    Contribution Is A Viable Cause Of Action In These Circumstances ............................. 19

    A.    The Contribution Claims Are Not Preempted By CERCLA ............... 19

    B.    The Contribution Claims Are Ripe ..................................................... 20

CONCLUSION......................................................................................................... 20

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*American Premier Underwriters, Inc. v. General Electric Co.*,
    14 F.4th 560 (6th Cir. 2021) ...........................................................................7, 9

*Ameritrust Co. N.A. v. Lamson & Sessions Co.*,
    1992 WL 738774 (N.D. Ohio May 21, 1992)...........................................13

*APL Co. Pte. Ltd. v. Kemira Water Sols., Inc.*,
    890 F. Supp. 2d 360 (S.D.N.Y. 2012).......................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................12

*Brott Mardis & Co. v. Camp*,
    768 N.E.2d 1191 (Ohio Ct. App. 2001).....................................................16

*Continental Casualty Co. v. Equity Indus. Maple Heights, LLC*,
    2016 WL 2927847 (N.D. Ohio May 19, 2016)............................................5

*Correnti v. City of Cleveland*,
    2022 WL 17176823 (N.D. Ohio Nov. 21, 2022) .........................................5

*CSX Transportation, Inc. v. Columbus Downtown Development Corp.*,
    307 F. Supp. 3d 719 (S.D. Ohio 2018) ......................................................20

*GenCorp, Inc. v. Olin Corp.*,
    390 F.3d 433 (6th Cir. 2004) ...........................................................8, 9, 13

*Goodyear Tire & Rubber Co. v. Brocker Inc.*,
    1999 WL 476078 (Ohio Ct. App. June 30, 1999).....................................20

*Hardwick v. 3M Co.*,
    2019 WL 4757134 (S.D. Ohio Sept. 30, 2019) .........................................16

*Hobart Corp. v. Waste Management of Ohio, Inc.*,
    758 F.3d 757 (6th Cir. 2014) .......................................................................6

*In re East Palestine Train Derailment*,
    No. 4:23-cv-242 (N.D. Ohio 2023), ECF No. 76-1 ..................................15

*In re National Prescription Opiate Litigation*,
    440 F. Supp. 3d 773 (N.D. Ohio 2020)......................................................16

*Leibreich v. A.J. Refrigeration, Inc.*,
    617 N.E.2d 1068 (Ohio 1993) ...............................................................18, 19

*MAWA Inc. v. Univar USA, Inc.*,
    2016 U.S. Dist. LEXIS 65848 (E.D. Pa. May 19, 2016) ..........................14

*McGregor v. Indus. Excess Landfill, Inc.*,
    856 F.2d 39 (6th Cir. 1988) ....................................................................12

*MetroHealth Medical Center v. Hoffmann-LaRoche, Inc.*,
    685 N.E.2d 529 (Ohio 1997) ..................................................................20

*MRP Properties LLC v. United States*,
    308 F. Supp. 3d 916 (E.D. Mich. 2018)..................................................8, 9

*New Market Acquisitions, Ltd. v. Powerhouse Gym*,
    154 F. Supp. 2d 1213 (S.D. Ohio 2001) ................................................20

*Parchman v. SLM Corp.*,
    896 F.3d 728 (6th Cir. 2018) ..................................................................20

*Parrish v. JCI Jones Chemicals, Inc.*,
    2019 WL 1410880 (D. Haw. Mar. 27, 2019).........................................14

*Regional Airport Authority of Louisville v. LFG, LLC*,
    460 F.3d 697 (6th Cir. 2006) ..................................................................12

*Roth v. Norfalco LLC*,
    651 F.3d 367 (3d Cir. 2011)....................................................................14

*Taylor v. Webster*,
    231 N.E.2d 870 (Ohio 1967) ..................................................................16

*Tipton v. CSX Transportation Inc.*,
    2016 WL 11501426 (E.D. Tenn. July 7, 2016) .....................................14

*TRW Inc. v. Andrews*,
    534 U.S. 19 (2001)..................................................................................11

*United States v. Atlantic Research Corp.*,
    551 U.S. 128 (2007)........................................................................5, 6, 11

*United States v. Bestfoods*,
    524 U.S. 51 (1998)....................................................................................8

*United States v. M/V Santa Clara I*,
    887 F. Supp. 825 (D.S.C. 1995)..............................................................10

*United States v. Township of Brighton,*
    153 F.3d 307 (6th Cir. 1998) ...................................................................7, 9

*Whittaker Corp. v. United States,*
    825 F.3d 1002 (9th Cir. 2016) ...................................................................6

## STATUTES, RULES, AND REGULATIONS

42 U.S.C.

    § 9601 ...........................................................................................7, 9, 10

    § 9607 ...............................................................................................7, 10

    § 9613 ......................................................................................................5

    § 9707 ......................................................................................................7

29 C.F.R.

    § 1910.1200(g) .........................................................................................8

49 C.F.R.

    § 171.1 ...................................................................................................17

    § 172.24 .............................................................................................8, 15

    § 172.508 ...........................................................................................3, 8

    § 172.602 ................................................................................................3

    § 173.22 .............................................................................................8, 15

    § 173.31 .........................................................................................3, 8, 15

    § 179.3 ....................................................................................................3

    § 179.5 ..................................................................................................15

    § 179.6 ....................................................................................................3

    § 179.15 ................................................................................................15

    § 179.100-13 .........................................................................................15

    § 180.507 ..............................................................................................17

    § 180.517 ..............................................................................................17

Fed R. Civ. P.

8(a)(2) ................................................................................................................5

12(b)(6) ....................................................................................................5, 9, 16

14(a) ...........................................................................................................19, 20

14...............................................................................................................19, 20

## OTHER AUTHORITIES

6 Wright & Miller, Federal Practice and Procedure § 1452 ..........................6

*Handbook for Vent and Burn Method of Field Product Removal*, U.S. Dep't of
 Transp. (May 1994),
 https://railroads.dot.gov/sites/fra.dot.gov/files/fra_net/16432/1994_HANDBO
 OK%20FOR%20VENT%20AND%20BURN%20METHOD%20OF%20FIEL
 D%20PRODUCT.PDF .............................................................................19

## STATEMENT OF THE ISSUES AND SUMMARY OF THE ARGUMENT

**ISSUE**: Did Defendants and Third-Party Plaintiffs Norfolk Southern Railway Company and Norfolk Southern Corporation (together, "Norfolk Southern") adequately allege claims against Third-Party Defendant OxyVinyls LP ("OxyVinyls"), as a shipper and owner of railcars carrying hazardous substances, for cost recovery and contribution under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and for negligence and contribution under Ohio law?

**SUMMARY OF THE ARGUMENT:** OxyVinyls' arguments are meritless and the motion to dismiss should be denied.

*First*, Norfolk Southern's CERCLA claims against OxyVinyls are legally supported and sufficiently pled. Norfolk Southern may proceed under both Sections 107(a) and 113(f) of CERCLA, because it seeks (1) contribution for its potential liability to the United States and the State of Ohio *and* (2) its own response costs, including those incurred before the EPA's Unilateral Administrative Order ("UAO") was issued. Norfolk Southern properly alleged OxyVinyls' liability under CERCLA because OxyVinyls, as an owner and shipper, had control over its tank cars; Norfolk Southern, as the common carrier, was not solely responsible for OxyVinyls' cars. Moreover, the costs Norfolk Southern incurred were necessary and consistent with CERCLA, and Norfolk Southern is entitled to declaratory relief.

*Second*, Norfolk Southern's negligence claims are adequately pled and not preempted under federal law. CERCLA does not preempt Norfolk Southern's state-law negligence claim against OxyVinyls; that claim seeks contribution, under a negligence theory, for OxyVinyls' share of liability for Ohio's non-CERCLA claims. Nor does the Hazardous Materials Transportation Act preempt Norfolk Southern's negligence claims;

Norfolk Southern is only seeking to hold OxyVinyls accountable for failing to comply with what the federal regulations require and does not seek to impose duties on OxyVinyls exceeding those requirements. Norfolk Southern adequately pled that OxyVinyls' negligent failure to ensure its cars were certified and safe to transport vinyl chloride and its inconsistent guidance after the derailment were a direct and proximate cause of the release of hazardous materials. The vent and burn was neither new nor independent of OxyVinyls' negligence, but rather a direct result of its negligent actions.

*Third*, Norfolk Southern has validly brought a claim for contribution that is not preempted by CERCLA and is ripe for adjudication. Norfolk Southern adequately alleged a cause of action under the federal rules and Ohio law for contribution for the non-CERCLA claims, and this cause of action is not premature.

Thus, OxyVinyls' motion to dismiss should be denied because OxyVinyls has not satisfied its burden of showing that Norfolk Southern's Third-Party Complaint fails to state a claim upon which relief can be granted.

## INTRODUCTION

Norfolk Southern Train 32N derailed on the evening of February 3, 2023 in East Palestine, Ohio after a bearing on Car 23 failed. Five tank cars containing vinyl chloride were among the cars that derailed. Third-Party Defendant OxyVinyls owns three of the tank cars that contained vinyl chloride and was the shipper for all five of them.

OxyVinyls failed to comply with federal regulations meant to ensure the tank cars it owned and shipped were certified and safe for the transportation of vinyl chloride. OxyVinyls' own tank cars had unapproved modifications and component materials incompatible with vinyl chloride transportation. Immediately after the derailment, the vinyl chloride tank cars were surrounded by pool fires (that occur where a pool of volatile liquid fuel evaporates and burns) that melted the pressure relief devices ("PRDs") on the cars. Even after the pool fires died down, the pressure and temperature inside at least two cars owned and shipped by OxyVinyls continued to increase, signaling to responders that a violent reaction may be occurring inside the tanks, and catastrophic explosions could occur without some preventive action. Representatives from OxyVinyls gave first responders inconsistent information about what might be occurring inside the cars—some of which conflicted with the federally-required Safety Data Sheet ("SDS") that OxyVinyls authored and provided to Norfolk Southern as part of the shipping process. Faced with a potential explosion from OxyVinyls' failure to ensure its tank cars were safe to transport vinyl chloride, compounded by OxyVinyls' inconsistent guidance, responders determined that the safest course of action was to vent the tank cars and perform a controlled burn of the vinyl chloride.

OxyVinyls asks this Court to place its share of responsibility solely on others, including Norfolk Southern, even though Norfolk Southern did not manufacture, load, or own the vinyl

chloride, nor did it manufacture, lease, own, or certify the vinyl chloride tank cars. OxyVinyls'
Motion should be denied.

**THE ALLEGATIONS OF THE THIRD-PARTY COMPLAINT**

**A.      The February 3, 2023 Derailment Of Train 32N**

On February 3, 2023, Train 32N, a Norfolk Southern freight train transporting hazardous
materials, derailed in East Palestine, Ohio. Third-Pty. Compl. (Dkt. 31) ¶¶ 33, 45. Thirty-eight
railcars derailed, including three tank cars owned and shipped by OxyVinyls (Cars 27, 28, and
53) and two more tank cars shipped by OxyVinyls (Cars 26 and 29). *Id.* ¶¶ 52-53. All five of
OxyVinyls' cars were carrying vinyl chloride, a flammable gas that must be stabilized for safe
transportation to prevent contact with reactive agents. *Id.* ¶¶ 61-62. Under prolonged exposure to
fire or heat, liquefied vinyl chloride turns to vapor and expands, which can cause its container to
violently rupture and explode—known as a boiling liquid expanding vapor explosion
("BLEVE"). *Id.* ¶ 64. Under exposure to heat or catalytic metals, such as aluminum, vinyl
chloride can also polymerize, a chemical reaction that turns vinyl chloride into a solid-state
polymer, which can accelerate the risk of a BLEVE by blocking the proper operation of the
PRDs. *Id.* ¶¶ 66-67. A PRD is designed to automatically relieve pressure from the tank car when
the tank's contents exceed a pressure threshold. *Id.* ¶ 57.

The SDS provided by OxyVinyls for its vinyl chloride—required under federal
regulations—warned of these very risks: "MAY MASS EXPLODE IN FIRE. EXTREMELY
FLAMMABLE GAS. CONTAINS GAS UNDER PRESSURE, MAY EXPLODE IF HEATED.
POLYMERIZATION CAN OCCUR." *Id.* ¶¶ 69, 70.

**B.      OxyVinyls Did Not Comply With Federal Regulations**

Norfolk Southern, as a common carrier, has a statutory duty to transport hazardous
materials tendered for shipment by companies such as OxyVinyls. Third-Pty. Compl. ¶¶ 19-20.

2

Norfolk Southern necessarily relies on car owners and shippers to ensure and certify that their tank cars comply with safety regulations and their hazardous materials are safely loaded. *Id.* ¶¶ 22-24. This includes ensuring proper stability and pressure of the material for transport. *Id.* ¶ 26. Car owners and shippers must also ensure that tank cars transporting hazardous materials are certified with proper and reliable safety information in case of an emergency. *Id.* ¶ 24.

Railcar owners, like OxyVinyls here (with respect to Cars 27, 28, and 53), are responsible for complying with maintenance measures for tank cars that carry hazardous materials. Third-Pty. Compl. ¶ 128. Pursuant to 49 C.F.R. § 179.3, the Association of American Railroads ("AAR") has the authority to approve the design, materials, construction, conversion, and modification of tank cars in accordance with AAR standards and regulatory specifications. *Id.* ¶¶ 109, 130. Similarly, any changes to car design or components must also be approved by the AAR. 49 C.F.R. § 179.6. In the aftermath of the derailment and vent and burn, the Federal Railroad Administration ("FRA") found discrepancies between the approved documents for the OxyVinyls-owned tank cars and the actual characteristics of the cars, including: (i) missing or incorrect information; (ii) unapproved and undocumented modifications; and (iii) unapproved and undocumented modification of component parts. *Id.* ¶ 132(c).

Shippers, like OxyVinyls here (with respect to Cars 26, 27, 28, 29, and 53), are responsible for the proper loading and labeling of tank cars, which includes federal certification of the proper packaging of the commodity being transported. *See* 49 C.F.R. §§ 173.31, 172.508. Shippers must also provide an SDS that identifies accidental release measures, stability and reactivity, and fire-fighting measures. Third-Pty. Compl. ¶ 145; 49 C.F.R. § 172.602. OxyVinyls' SDS for vinyl chloride expressly warned of the risks of polymerization, noting in twelve instances some variation of the warning that vinyl chloride may polymerize or explode if

3

exposed to "air, sunlight, excessive heat" and/or "Catalytic metals, such as copper, aluminum, and their alloys." Third-Pty. Compl. ¶ 146 (citing OxyVinyls, *Vinyl Chloride (Monomer) Safety Data Sheet* at 2, 10). Despite its own acknowledgements in the SDS, the OxyVinyls cars were fitted with protective housing covers made of aluminum (Cars 27, 28, and 29) and had aluminum in the interior surface of the manway nozzles (Cars 26 and 28), aluminum coating on the PRD springs (Cars 26 and 27), and angle valve handwheels made of aluminum (Cars 28 and 53). In addition, after the derailment, aluminum was found in exterior debris of the protective housing and housing cover (Car 29), and angle valves were covered in solidified melted aluminum (Car 29). *Id.* ¶ 147(d).

### C. Derailment Response

Shortly after the derailment, first responders arrived and began addressing pool fires. Third-Pty. Compl. ¶ 78. By midnight a Unified Command was formed, made up of local first responders and personnel from Ohio, Pennsylvania, and federal agencies. *Id.* ¶ 79. Around midnight on February 4, 2023, the pressure inside the derailed vinyl chloride cars began to rise, and flammable gas venting from the cars ignited, melting the valves and fittings. *Id.* ¶¶ 81-82. Although the pool fires surrounding the cars began to die down, the pressure in OxyVinyls' Car 28 and the temperature in OxyVinyls' Car 53 continued to increase—indicating the occurrence of internal processes—causing responders to conclude that polymerization might be occurring, risking catastrophic explosions. *Id.* ¶¶ 89-91, 93, 95. OxyVinyls' guidance to responders was inconsistent: the on-site representative "commented that the rising temperature could indicate that polymerization was occurring," while other off-scene officials stated that "there was a low probability of polymerization," despite the SDS's warnings. *Id.* ¶¶ 97-98. Given the risk of catastrophic explosions, experts, responders, and Unified Command reasonably believed that safest course was to conduct a vent and burn, the process of expelling liquid and burning off gas

4

in a controlled manner, *id.* ¶¶ 86, 95-96, which was executed effectively, without casualties or uncontrolled explosions, on February 6, 2023. *Id.* ¶¶ 97-101.

## STANDARD OF REVIEW

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the allegations of the complaint must be taken as true and construed liberally in favor of the plaintiff." *Cont'l Cas. Co. v. Equity Indus. Maple Heights, LLC*, 2016 WL 2927847, at *1 (N.D. Ohio May 19, 2016); *see also* Fed. R. Civ. P. 8(a)(2) (setting forth the liberal pleading standard, requiring merely "a short and plain statement of the claim showing that the pleader is entitled to relief"). "On a motion under Rule 12(b)(6), the Court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to or made part of the complaint may also be taken into account." *Correnti v. City of Cleveland*, 2022 WL 17176823, at *2 (N.D. Ohio Nov. 21, 2022).

## ARGUMENT

I.     **Norfolk Southern's CERCLA Claims Are Legally Viable And Sufficiently Pled**

A.     **Norfolk Southern May Proceed Under Both Sections 107(a) and 113(f)**

"[T]he remedies available in §§ 107(a) and 113(f) complement each other by providing causes of action 'to persons in different procedural circumstances.'" *United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 139 (2007) (citation omitted). Section 113(f) grants a potentially responsible party ("PRP") the right to contribution from other PRPs in the event it is found liable in a suit brought against it under Section 106 or 107(a). 42 U.S.C. § 9613(f)(1). This is a right of *contribution*, a statutory equivalent of a "'tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share.'" *Atl. Rsch.*, 551 U.S. at 138 (quoting Black's Law Dictionary 353 (8th ed. 2004)). Section 107(a), by comparison, does not concern contribution; rather, it permits a private party to recover "the costs

it has 'incurred' in cleaning up a site," without needing those costs to be a liability to a third party. *Id.* at 139 (quoting 42 U.S.C. § 9607(a)(4)(B)). Taken together, a party seeks costs it owes to others through Section 113(f), but may seek other incurred costs through Section 107(a).

Norfolk Southern's claims under both provisions are appropriate. The United States and Ohio seek reimbursement of their response costs through Section 107, so Norfolk Southern may properly seek reimbursement under Section 113 if it is found liable for those response costs. *See* First-Pty. Compl., (Dkt. 1) ¶¶ 143-145. But Norfolk Southern has also incurred its own response costs, beyond what it may owe if found liable in the underlying action. Norfolk Southern has taken actions pursuant to the EPA's UAO, including air monitoring, sampling, removal and disposal of hazardous substances, and also incurred response costs before the UAO was issued—EPA issued the UAO on February 21, 2023 (more than two weeks after the derailment), but Norfolk Southern mobilized and began incurring responses costs *immediately* after the derailment. *Id.* ¶¶ 79, 156-157, 165-168. Norfolk Southern's response costs have been and will be borne by Norfolk Southern alone. Thus, Norfolk Southern properly seeks reimbursement of its own response costs through Section 107.

OxyVinyls' cited precedent is inapposite. In *Hobart Corp. v. Waste Management of Ohio, Inc.*, 758 F.3d 757, 766-769 (6th Cir. 2014), the Court held that a party who had a claim under Section 113(f) could not instead assert *that* claim under Section 107. Here, in contrast, Norfolk Southern is not attempting to skirt Section 113; rather, Norfolk Southern seeks contribution for its potential liability to the United States and Ohio, in addition to its own response costs.[1] *See Whittaker Corp. v. United States*, 825 F.3d 1002, 1008-1010 (9th Cir. 2016) (recognizing that "a party's right to contribution [under § 113(f)] for some of its expenses at a site does not

---

[1] The Section 107 claims are properly before the Court under Federal Rule of Civil Procedure 18. *See* Wright & Miller 6 Fed. Prac. & Proc. Civ. § 1452.

necessarily mean that the party loses its right to bring a cost recovery action [under § 107] for other expenses"). Accordingly, *Hobart* does not alter Norfolk Southern's right to proceed under both provisions.

**B.  Norfolk Southern Sufficiently Alleged Owner And Operator Liability Under CERCLA**

Under Section 107(a), the "owner and operator of a vessel or facility" *see* 42 U.S.C. § 9607(a)(1), and "any person who at the time of disposal of any hazardous substance owned or operated any facility at which hazardous substances were disposed of," *see* 42 U.S.C. § 9707(a)(2), are liable for removal costs, response costs, and natural resources damages. OxyVinyls does not dispute that it owns three of the derailed vinyl chloride tank cars (Cars 27, 28, and 53), nor does it dispute that these tank cars are "rolling stock," a type of "facility" that released a hazardous substance. *See* 42 U.S.C. §§ 9601(9), (18), (20) (including "rolling stock" in definition of "facility"). Further, shippers are "operators" when they exercise "actual control" over the facility—that is, where they take affirmative acts to control the facility. *See United States v. Twp. of Brighton*, 153 F.3d 307, 315 (6th Cir. 1998) ("Once affirmative acts have been found to render someone an operator, it is no defense to liability for that operator to say it was not the actor responsible for a particular hazard."); *Am. Premier Underwriters, Inc. v. Gen. Elec. Co.*, 14 F.4th 560, 574 (6th Cir. 2021) (explaining that this Circuit's actual-control test does not "supplant the primary question of whether an entity's activities satisfy the ordinary meaning of the term operation") (citation omitted).

**1.  OxyVinyls exercised actual control over the derailed cars**

OxyVinyls disputes Norfolk Southern's allegations that it was an "operator" of the five vinyl chloride tank cars, alleging that it lacked "actual control" over the rolling stock because it

did not perform "affirmative acts." Mot. 6-7. As a preliminary matter, this is a factual dispute, and not appropriate for resolution on a motion to dismiss.

That said, OxyVinyls acknowledges the multitude of legal requirements that apply to shippers like itself—including the maintenance, packaging, loading, labeling, and shipping certification for tank cars with hazardous materials—but argues, without support, that these acts do not establish actual control as affirmative acts. Mot. 7 (citing Third-Pty. Compl. ¶¶ 97-98). To the contrary, under the controlling law, the sole responsibility for instrumental parts of hazardous material shipping oversight, approval, or operations—as OxyVinyls bore here—suffices to establish operator status and the necessary affirmative acts. *See, e.g.*, *GenCorp, Inc. v. Olin Corp.*, 390 F.3d 433, 449 (6th Cir. 2004) (holding that party that approved operation of plant and designs dealing with disposal of chemicals has control for arranger liability case); *MRP Props. LLC v. United States*, 308 F. Supp. 3d 916, 934 (E.D. Mich. 2018) (allegations that a party exercised specific control over operations related to leakage were sufficient to survive a motion to dismiss).

As Norfolk Southern alleged, shippers such as OxyVinyls must, *inter alia*, certify the proper packaging of a hazardous commodity, 49 C.F.R. §§ 173.31, 172.508, and must comply with hazardous shipping notification guidelines, 29 C.F.R. § 1910.1200(g), and hazardous shipping regulations, 49 C.F.R. §§ 173.22, 173.31. *See* Third-Pty. Compl. ¶¶ 139-153 (listing requirements). These fall within the Supreme Court's statement of "actual control" that, "for purposes of CERCLA's concern with environmental contamination, an operator must manage, direct, or conduct operations specifically related to pollution … *or decisions about compliance with environmental regulations*." *United States v. Bestfoods*, 524 U.S. 51, 66-67 (1998) (emphasis added). Here, OxyVinyls was solely responsible for the decisions related to its

shipped tank cars' compliance—to ensure workers and responders knew that the cars contained hazardous materials—and certified that it took each of these actions in shipping vinyl chloride—in a way to ensure releases did not occur. No other party, including Norfolk Southern, managed, directed, or oversaw this compliance to prevent releases.

Norfolk Southern need not show, as OxyVinyls claims, that OxyVinyls was responsible for the ultimate hazardous release to be held responsible as an operator. *Twp. of Brighton*, 153 F.3d at 315; *Am. Premier Underwriters, Inc.*, 14 F.4th at 574. Rather, this Circuit directs courts to analyze the totality of the circumstances that indicate actual control, including undertaking specific control of environmental compliance operations. *See, e.g.*, *Am. Premier Underwriters Inc.*, 14 F.4th at 575; *GenCorp, Inc.*, 390 F.3d at 449; *MRP Props. LLC*, 308 F. Supp. 3d at 934. Even under OxyVinyls' reading of the law, under the Rule 12(b)(6) standard of review, OxyVinyls cannot show that it did not take affirmative acts in connection with the actions it took to ship vinyl chloride and purport to comply with applicable regulations.

### 2. CERCLA does not limit liability to common carriers

OxyVinyls' final argument relies on CERCLA's provision defining common carriers as owners and operators, 42 U.S.C. § 9601(20)(B). It unilaterally claims that under this provision, a common carrier is the *only* "owner or operator" for purposes of CERCLA. Mot. 8. But nothing in Section 9601(20) or anywhere else in CERCLA prevents parties other than the common carrier from also being responsible as an owner or operator. Courts have recognized that there can be multiple owners and operators for purposes of Section 9601(20)(B), with one court specifically noting that a common carrier is "entitled to recover contribution from any other person who can be characterized as a potentially responsible party under 9607(a) including an owner that does

not qualify for the shipper protection of 9601(20)(B)." *United States v. M/V Santa Clara I*, 887 F. Supp. 825, 842 (D.S.C. 1995).

The plain meaning, structure, and legislative purpose of CERCLA all confirm that "owner or operator" is not limited to a single, exclusive entity. Section 107(a) of CERCLA identifies as a potentially responsible party the "owner and operator of a vessel or facility" *see* 42 U.S.C. § 9607(a)(1), and "any person who at the time of disposal of any hazardous substance owned or operated any facility at which hazardous substances were disposed of," *see id.* § 9607(a)(2). These categories clearly include OxyVinyls.

Section 9601(20)(B) conditionally carves out shippers from liability, but only under certain circumstances. It states that, "[i]n the case of a hazardous substance which has been accepted for transportation by a common or contract carrier … the term 'owner or operator' shall mean such common carrier … [and] the shipper of such hazardous substance shall not be considered to have caused or contributed to any release during such transportation which resulted solely from circumstances or conditions beyond his control." 42 U.S.C. § 9601(20)(B). Section 9601(20)(B) does not state that parties other than the common carrier are no longer responsible parties under CERCLA; it merely clarifies that "owners or operators" include carriers, not that the term excludes all others. There is nothing restrictive about the words "shall mean." Congress knows how to exclude parties when it means to do so; indeed, other provisions of CERLCA *do* exclude certain parties from liability. *See id.* § 9601(20)(D) ("The term 'owner or operator' does not include a unit of State or local government.").

The structure of Section 9601(20)(B) also demonstrates that there can be more than one responsible "owner or operator." Under Section 9601(20)(B)(ii), a "shipper" can be relieved of responsibility if the release of a hazardous material resulted "solely from circumstances beyond

his control." But if this condition is not met, the shipper remains a potentially responsible party. To construe the term "owner or operator" as being limited to a single, exclusive entity "would in practical effect render that exception entirely superfluous," *TRW Inc. v. Andrews*, 534 U.S. 19, 29 (2001), as no shipper would ever be subject to CERCLA liability.

Further, CERCLA is intended by Congress to be "a strict liability statute," such that "even parties not responsible for contamination may fall within the broad definitions of [potentially responsible parties]." *Atl. Rsch.*, 551 U.S. at 136. But this would not occur if there could only be a single "owner or operator" because other owners and operators would escape liability. It would also shift liability from the parties with the most control and responsibility for the railcars—the owners—to the common carrier which has less control and is required to accept the cars and materials for transport in reliance on the owners' and shippers' certifications.

Lastly, to the extent OxyVinyls claims protection under Section 9601(B)(ii)'s conditional exemption as a shipper, the determination of responsibility under that section, including whether the release resulted from circumstances beyond OxyVinyls' control, is a fact-dependent question that is not ripe on a motion to dismiss and must await discovery and further proceedings. *APL Co. Pte. Ltd. v. Kemira Water Sols., Inc.*, 890 F. Supp. 2d 360, 371-372 (S.D.N.Y. 2012) (denying motion to dismiss where "there is not enough evidence in the record to conclude that the release of ferrous chloride resulted 'solely from circumstances or conditions beyond [third-party defendant's] control'"). Norfolk Southern has satisfied the pleading requirements and plausibly alleged OxyVinyls' CERCLA liability.

### C.    Norfolk Southern Sufficiently Alleged That Its Costs Are Recoverable

OxyVinyls argues that Norfolk Southern failed to allege that its costs incurred prior to the UAO were "necessary and consistent." Mot. 8. Under CERCLA, plaintiffs may recover "necessary costs of response" that are consistent with the National Contingency Plan ("NCP").

*Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 703 (6th Cir. 2006). "Costs are 'necessary if incurred in response to a threat to human health or the environment," but "costs incurred at a time when the plaintiff was unaware of any threat to human health or the environment are not 'necessary.'" *Id.* at 704.

The costs alleged in the Complaint were incurred in response to a threat to human health and the environment and were consistent with the NCP. The Complaint specifically alleges that the derailment resulted in the release of multiple hazardous substances, Third-Pty. Compl. ¶¶ 48, 102-103, and drew state and federal oversight within hours, *id.* ¶ 79. It further alleges that Norfolk Southern "incurred and will incur substantial response costs related to the release of substances resulting from the derailment, pool fires, vent and burn, and firefighting efforts," and that it "has paid millions of dollars … for the comprehensive environmental response." *Id.* ¶¶ 157, 159. It details specific costs for "air monitoring and sampling, the identification and delineation of contamination, the containment and remediation of contaminated areas, the removal and disposal of hazardous substances, and additional actions needed to prevent imminent and substantial endangerment to public health or the environment." *Id.* ¶ 156.

It is irrelevant that the EPA did not issue its UAO until February 21, 2023. The Complaint easily "allows the court to draw the reasonable inference," based on "judicial experience and common sense," that Norfolk Southern's response costs before that date were necessary and consistent with the NCP. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009). The cases cited by OxyVinyls involved complaints with far less specificity than Norfolk Southern's. In *McGregor v. Indus. Excess Landfill, Inc.*, for example, the court dismissed the complaint where "plaintiffs failed" to allege "either the costs they incurred or, at minimum, the actions they took in response to the allegedly hazardous conditions." 856 F.2d 39, 43 (6th Cir. 1988). The

Third-Party Complaint, by contrast, does both, and thus states a viable claim to recover response costs incurred before and after the UAO. *See Ameritrust Co. N.A. v. Lamson & Sessions Co.*, 1992 WL 738774, at *2-3 (N.D. Ohio May 21, 1992) (refusing to dismiss complaint alleging that plaintiff hired consultant '"to evaluate thoroughly the environmental condition of the Property,' and that it 'incurred necessary response costs'" including "costs of investigation; removal, treatment, transport, and disposal of hazardous substances").

### D. Norfolk Southern Is Entitled To Declaratory Relief Under CERCLA

OxyVinyls argues that Norfolk Southern's declaratory judgment claim fails because Norfolk Southern's other CERCLA claims fail and because Norfolk Southern does not sufficiently allege future response costs. Mot. 9-10. But, as explained above, Norfolk Southern has adequately pled viable CERCLA claims and has adequately alleged particularized response costs, including future costs, related to the derailment and the UAO. Third-Pty. Compl. ¶¶ 155-157. Accordingly, Norfolk Southern has properly stated a claim for declaratory judgment. *See GenCorp, Inc.*, 390 F.3d at 451 (requiring entry of declaratory judgment in both Sections 107 and 113(f) suits whenever future response costs are alleged).

## II. Norfolk Southern's Negligence Claims Are Legally Viable And Sufficiently Pled

OxyVinyls argues that Counts 6 and 7 should be dismissed because the negligence claims are preempted, the Third-Party Complaint fails to plead sufficient facts, and intervening causes relieve OxyVinyls of liability. Each of these arguments fails.

### A. Norfolk Southern's Negligence Claims Are Not Preempted By CERCLA

OxyVinyls argues that Norfolk Southern's state-law negligence claims "do not allege distinct damages from the CERCLA costs," Mot. 12. That is wrong. The third-party negligence claim seeks contribution from OxyVinyls for its share of the potential liability to the State of Ohio for the non-CERCLA claims, such as damages under the common law claims of

13

negligence, nuisance, and trespass. OxyVinyls misquotes Norfolk Southern's prayer for relief, which in fact seeks to hold OxyVinyls liable for its "fair and equitable share of CERCLA response costs **and other costs** Norfolk Southern incurred and will incur." Third-Pty. Compl. Prayer for Relief (emphasis added). These include contribution costs from OxyVinyls on a negligence theory with respect to the *other* claims that Ohio has asserted.

### B. Norfolk Southern's Negligence Claims Are Not Preempted By The HMTA

OxyVinyls asks the Court to "dismiss Norfolk Southern's state law negligence claims against OxyVinyls *to the extent that the claims impose different requirements than what is set forth under the HMTA*." Mot. 13 (emphasis added). Norfolk's state law claims are based on alleged violations of HMTA regulations and do not seek to impose different or additional conditions. HMTA preemption is not grounds to dismiss any portion of Norfolk's Third-Party Complaint against OxyVinyls.

As OxyVinyls acknowledges, the HMTA only preempts state laws that are not based on the HMTA itself or regulations prescribed under it. Negligence allegations that mirror federal regulations, as here, are not preempted. *See Tipton v. CSX Transp. Inc.*, 2016 WL 11501426, at *15 (E.D. Tenn. July 7, 2016); *Roth v. Norfalco LLC*, 651 F.3d 367, 377 (3d Cir. 2011) (quoting H.R. Rep. No. 101-444, at 24 (1990)) (tort claims based on federal counterparts not preempted).[2]

OxyVinyls concedes that Norfolk Southern "cite[s] various federal regulations," yet states, in a single sentence and without support, that Norfolk Southern seeks to impose duties that are not the same as the requirements found under federal law. Mot. 13. It is wrong. The

---

[2] For that reason, the cases that OxyVinyls cites are inapposite. In *Parrish v. JCI Jones Chemicals, Inc.*, the plaintiffs did not even allege any violation of federal regulations. 2019 WL 1410880, at *5 (D. Haw. Mar. 27, 2019). Similarly, in *MAWA Inc. v. Univar USA, Inc.*, the court held that the claims were preempted because they imposed conditions *beyond* those required under the HMTA. 2016 U.S. Dist. LEXIS 65848 (E.D. Pa. May 19, 2016). Here, Norfolk Southern's negligence claims are not preempted because they seek to impose only duties that are within, not greater than, those regulations.

duties that Norfolk Southern alleges OxyVinyls breached are the very duties imposed by the federal regulations, and nothing more. In particular, Norfolk Southern alleged that OxyVinyls breached its duty as a car owner by failing to provide correct information on its AAR Form 4-2 certification and using materials in pressure relief devices that were not compatible with vinyl chloride—in violation of 49 C.F.R. §§ 179.5, 179.100-13, and 179.15. *See* Third-Pty. Compl. ¶¶ 147, 193. And Norfolk Southern alleged that OxyVinyls violated its duty as a shipper by, among other things, (1) certifying the cars were suitable for vinyl chloride transportation, despite unapproved changes to component parts of the tanks; (2) failing to ensure the cars met specification and packaging requirements; and (3) failing to ensure the tank car equipment was compatible with vinyl chloride. *See id.* ¶¶ 192-193, 200-208. These errors violated 49 C.F.R. §§ 173.22, 172.24, and 173.31(a). Norfolk Southern thus seeks to hold OxyVinyls to federal standards, so its claims are not preempted.[3]

### C.    Norfolk Southern Adequately Pled Negligence

#### 1.    OxyVinyls failed to ensure the five cars were safe to transport vinyl chloride, which caused the release

The Third-Party Complaint alleges that OxyVinyls' acts and omissions in connection with its duties and obligations as a tank car owner and shipper of vinyl chloride were a cause of damages. OxyVinyls argues that Norfolk Southern failed to adequately plead a cause of action for negligence because OxyVinyls' failure to update an administrative form and its inconsistent guidance regarding the risk of vinyl chloride polymerization were not but-for or proximate

---

[3] OxyVinyls erroneously argues that its HMTA preemption argument is the same as that asserted by Norfolk Southern in *In re East Palestine Train Derailment*. Mot. 13 n.6 (citing Mot. to Dismiss, 7-19, *In re East Palestine Train Derailment*, No. 4:23-cv-242 (N.D. Ohio 2023), ECF No. 76-1). Unlike here, Plaintiffs' claims there are based on alleged duties that go *beyond* the federal regulations and are therefore preempted. *See, e.g.*, Compl. ¶ 472(o), (p), *In re East Palestine Train Derailment*, No. 4:23-cv-242 (N.D. Ohio 2023), ECF No. 138 (alleging that Norfolk Southern failed to route cars carrying hazardous materials in such a way as to avoid populated areas and failed to warn those in danger of exposure to hazardous chemicals).

causes of the release of hazardous materials. Mot. 13-14. That is a factual argument, and not grounds to dismiss the Complaint under Rule 12(b)(6).

Proximate cause is "an act or failure to act that was a substantial factor in bringing about an injury and without which the injury would not have occurred." *Hardwick v. 3M Co.*, 2019 WL 4757134, at *16 (S.D. Ohio Sept. 30, 2019) (emphasis added) (citation omitted). In other words, negligence is a proximate cause of an injury if "the injury is a natural and foreseeable result of the party's act or failure to act." *Brott Mardis & Co. v. Camp*, 768 N.E.2d 1191, 1194 (Ohio Ct. App. 2001). Further, "[l]ike federal courts, Ohio courts recognize 'there can be more than one proximate cause of a particular injury.'" *In re Nat'l Prescription Opiate Litig.*, 440 F. Supp. 3d 773, 795 (N.D. Ohio 2020) (quoting *Taylor v. Webster*, 231 N.E.2d 870, 873 (Ohio 1967)).

OxyVinyls incorrectly asserts there are no allegations in the Third-Party Complaint that the tank cars were deficient, Mot. 14. On the contrary, the Complaint alleges that the cars were fitted with unapproved aluminum parts and "the flammable gas venting from the PRDs ignited, which … began to melt part or all of the [vinyl chloride] tank car[s'] liquid transfer valves and fittings." Third-Pty. Compl. ¶¶ 82, 147. According to OxyVinyls' own SDS, aluminum components made the vinyl chloride inside the cars highly vulnerable to polymerization and explosion. The SDS stated that vinyl chloride "MAY EXPLODE IF HEATED. POLYMERIZATION CAN OCCUR," and warned that "*Exposure to the following conditions … can cause explosive or violent polymerization of VCM*: … Excessive heat, … *aluminum* … Avoid elevated temperatures, oxidizing agents, … other polymerization catalysts/initiators, air and sunlight." *Id.* ¶¶ 70-71 (emphasis added). Indeed, "[t]he elevated temperature on Car 53 and sudden extended venting from Car 28 without a pool fire underneath it caused responders to

16

become concerned" "that polymerization may have blocked the PRDs on Car 28 and the other vinyl chloride tank cars." *Id.* ¶¶ 93, 95.

OxyVinyls provided inconsistent information to Norfolk Southern and first responders about possible dangerous reactions inside the cars. One OxyVinyls representative stated that polymerization "could" be occurring, while another stated that it was unlikely. Third-Pty. Compl. ¶ 97. With increased temperatures and pressures, "responders [became] concerned" "that polymerization may have blocked the PRDs on Car 28 and the other vinyl chloride tank cars." *Id.* ¶¶ 93, 95. With the conflicting guidance from OxyVinyls, Norfolk Southern and the Unified Command reasonably relied on the information provided on the federally-mandated SDS and determined that a vent and burn was the safest option. *Id.* ¶¶ 100-101.

The five vinyl chloride cars were subject to regulation and certification requirements. *See supra*, Introduction § B; *see also* 49 C.F.R. §§ 180.507, 180.517. These regulations and requirements ensure tank cars are safe, provide assurances to common carriers like Norfolk Southern that it may include the cars and contents in its trains, and provide first responders with accurate information in the event of an emergency. While OxyVinyls might like to airbrush the regulations away, regarding them as mere administrative paperwork, that would undercut the essential reason the regulations exist: the safe transportation of hazardous materials by rail. *See* 49 C.F.R. § 171.1 (HMTA authorizes the Secretary of Transportation to "establish regulations *for the safe and secure transportation of hazardous materials in commerce*") (emphasis added)).

It is reasonably foreseeable that a railcar owner or shipper who fails to comply with the regulations designed to ensure safe transportation of hazardous materials—in the case of the owner, by failing to keep its compliance and approvals up-to-date, and in the case of the shipper, by improperly certifying the suitability of the non-compliant cars, thus preventing the railroad

17

and others from knowing of the potential dangers—will substantially contribute to the release of those materials in the event of an emergency. Indeed, the primary risk associated with the transportation of hazardous materials *is* the release of those materials.

Likewise, OxyVinyls' inconsistent guidance regarding the risk of polymerization was a but-for cause of the release of hazardous materials. Mot. 16-17. Although OxyVinyls now claims that polymerization was *not* occurring—which Norfolk Southern disputes—to the extent this post hoc rationalization is correct, then the SDS and guidance were misleading, leading directly to the decision to conduct the vent and burn. But for OxyVinyls' failure to ensure its cars were properly certified and safe to transport hazardous materials, those cars would never have been used to transport vinyl chloride and there would not have been an elevated risk of polymerization and/or BLEVE. Third-Pty. Compl. ¶¶ 86-101. Thus, as alleged, "[t]he vent and burn and release of hazardous vinyl chloride was the direct result of the improper shipping containers and OxyVinyls' failure to follow federal regulations and its own SDS." *Id.* ¶ 213.

### 2. There were no intervening and superseding causes that absolve OxyVinyls of its liability

Likewise, the issue of intervening and superseding causes is factual and not something that should be decided at the motion to dismiss stage. *Leibreich v. A.J. Refrigeration, Inc.*, 617 N.E.2d 1068, 1072 (Ohio 1993) (recognizing "that the issue of intervening causation generally presents factual issues to be decided by the trier of fact").

No intervening or superseding causes relieved OxyVinyls of its liability. To qualify as a superseding event that breaks a chain of causation, an intervening act of negligence must be both "new" and "independent." *Leibreich*, 617 N.E.2d at 1071-1072. "Independent" in this context "means the *absence of any connection or relationship of cause and effect* between the original and subsequent act of negligence." *Id.* (emphasis added). "'New' means that the second act of

negligence could not reasonably have been foreseen." *Id.* (emphasis omitted). "Thus, the key determination whether an intervening act breaks the causal connection between negligence and injury depends upon whether that intervening cause was reasonably foreseeable by the one who was guilty of the negligence." *Id.* (alterations incorporated) (internal quotation marks omitted).

The need to vent and burn was entirely foreseeable. As the owner and shipper of cars used to ship hazardous materials on rail lines, OxyVinyls knew that if the cars were unsafe to transport hazardous materials and a derailment occurred, timely and accurate information about those materials to prevent a catastrophic explosion would be needed. OxyVinyls' inconsistent, guidance following the derailment was a direct, contributing factor leading to the vent and burn. The release of hazardous materials through the vent and burn had a clear "connection or relationship of cause and effect" with OxyVinyls' negligence. *Leibreich*, 617 N.E.2d at 1072.[4]

## III.    Contribution Is A Viable Cause Of Action In These Circumstances

Contribution, as asserted by Norfolk Southern in Counts 9 and 10, is a viable claim under Rule 14(a) of the Federal Rules of Civil Procedure and Ohio law. Contrary to OxyVinyls' argument, the claim is neither preempted nor premature.

### A.    The Contribution Claims Are Not Preempted By CERCLA

As detailed *supra* § II.A, Norfolk Southern's contribution claims do not seek the recovery of costs incurred by Norfolk Southern pursuant to CERCLA. Rather, they seek contribution for OxyVinyls' share of the potential liability under the other claims brought by the State of Ohio. The contribution claims are therefore not preempted by CERCLA.

---

[4] Indeed, the FRA considers the vent and burn method to be a foreseeable consequence in the event of an emergency. *See Handbook for Vent and Burn Method of Field Product Removal*, U.S. Dep't of Transp. (May 1994), https://railroads.dot.gov/sites/fra.dot.gov/files/fra_net/16432/1994_HANDBOOK%20FOR%20VENT%20AND%20BURN%20METHOD%20OF%20FIELD%20PRODUCT.PDF. Notably, the FRA also explicitly emphasizes that "THERE IS NO SUBSTITUTE FOR THE GOOD JUDGMENT OF THOSE IN THE FIELD." *Id.* at vi.

**B.    The Contribution Claims Are Ripe**

"While Ohio law grants [the] substantive right to contribution, federal law governs the procedure of asserting a claim in federal court." *CSX Transp., Inc. v. Columbus Downtown Dev. Corp.*, 307 F. Supp. 3d 719, 734-736 (S.D. Ohio 2018). Norfolk Southern has properly followed that procedure here. Under Rule 14 of the Federal Rules of Civil Procedure, "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it," Fed. R. Civ. P. 14(a)—and this includes a claim for contribution. *CSX Transp., Inc.*, 307 F. Supp. 3d at 734.

Under Ohio law, a party may plead a contribution claim "even though a cause of action has not yet accrued, provided the claim is contingent upon the success of [the first-party] plaintiff's claim, and will accrue when defendant is found liable in the main action." *New Mkt. Acquisitions, Ltd. v. Powerhouse Gym*, 154 F. Supp. 2d 1213, 1228 n.14 (S.D. Ohio 2001) (citation omitted).[5]

**CONCLUSION**

OxyVinyls' motion to dismiss should be denied. If the Court grants the motion, it should grant Norfolk Southern leave to amend. *See Parchman v. SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018) ("[T]he case law in this Circuit manifests liberality in allowing amendments to a complaint." (internal quotation marks and citation omitted)).

---

[5] *See also MetroHealth Med. Ctr. v. Hoffmann-LaRoche, Inc.*, 685 N.E.2d 529, 532 (Ohio 1997) ("A contribution claim may go forward notwithstanding the lack of a judgment on the underlying claim against the contribution defendant, notwithstanding even the lack of an action on the underlying claim."); *Goodyear Tire & Rubber Co. v. Brocker Inc.*, 1999 WL 476078, at *3 (Ohio Ct. App. June 30, 1999) ("It has clearly been established that a contribution claim exists even though there is a lack of judgment or even a lack of a cause of action against the contribution defendant in any underlying claim. All that is required is a showing that the contribution defendant is 'liable in tort' for the injuries originally at issue." (citation omitted)).

Dated: November 14, 2023                       Respectfully submitted,

By: /s/ *Davina Pujari*
Davina Pujari (admitted *pro hac vice*)
Christopher A. Rheinheimer (admitted *pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Tel.: (628) 235-1136
Fax: (628) 235-1001
Davina.Pujari@wilmerhale.com
Chris.Rheinheimer@wilmerhale.com

Edward O'Callaghan (admitted *pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel.: (202) 663-6956
Fax: (202) 663-6363
Edward.O'Callaghan@wilmerhale.com

Claire Guehenno (admitted *pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 295-6524
Fax: (212) 230-8888
Claire.Guehenno@wilmerhale.com

Louis L. McMahon (0067378)
MCMAHON DEGULIS LLP
812 Huron Road, Suite 650
Cleveland, OH 44115
Tel.: (216) 367-1407
lmcmahon@mdllp.net

*Counsel for Defendants and Third-Party Plaintiffs*

21

## <u>CERTIFICATE OF LOCAL RULES 7.1 COMPLIANCE</u>

I certify that this Opposition adheres to the page limitations set forth in Local Rule 7.1(f)

for standard cases because it does not exceed 20 pages in length.

*/s/ Davina Pujari*
D<small>AVINA</small> P<small>UJARI</small>

23

**CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2023, I caused a copy of the foregoing to be filed with the Clerk of the Court using the Court's CM/ECF electronic filing system, which will provide electronic notice to all counsel of record.

*/s/ Davina Pujari*
DAVINA PUJARI
