# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| THE STATE OF OHIO, ex rel. DAVE YOST, OHIO ATTORNEY GENERAL,<br><br>and<br><br>THE UNITED STATES OF AMERICA,<br><br>     *Plaintiffs*,<br><br>   v.<br><br>NORFOLK SOUTHERN CORPORATION and NORFOLK SOUTHERN RAILWAY COMPANY,<br><br>     *Defendants/Third-Party Plaintiffs*,<br><br>   v.<br><br>OXYVINYLS LP, GATX CORPORATION, GENERAL AMERICAN MARKS COMPANY, TRINITY INDUSTRIES LEASING COMPANY, SMBC RAIL SERVICES LLC, DOW CHEMICAL INCORPORATED, and UNION TANK CAR COMPANY,<br><br>     *Third-Party Defendants*. | Civil Action No. 4:23CV517<br><br>                 4:23CV675<br><br>Hon. John R. Adams |

**NORFOLK SOUTHERN RAILWAY COMPANY AND NORFOLK SOUTHERN CORPORATION'S OPPOSITION TO THIRD-PARTY DEFENDANTS GATX CORPORATION AND GENERAL AMERICAN MARKS COMPANY'S MOTION TO DISMISS THE THIRD-PARTY COMPLAINT**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................... iii

STATEMENT OF THE ISSUES AND SUMMARY OF THE ARGUMENT .......................... vi

INTRODUCTION .............................................................................................. 1

THE ALLEGATIONS OF THE THIRD-PARTY COMPLAINT .................................. 1

    A.    The February 3, 2023, Derailment Of Train 32N ..................... 1

    B.    GAMC Improperly Maintained Car 23 ........................................ 3

    C.    GATX Did Not Comply With Federal Regulations Regarding Car 29 ...................... 3

    D.    Derailment Response ....................................................................... 4

    E.    Norfolk Southern Incurred Significant Costs And Made Significant Commitments After The Derailment ................................................. 5

STANDARD OF REVIEW .................................................................................. 6

ARGUMENT ..................................................................................................... 6

    I.    GATX Is A Potentially Responsible Party Under CERCLA .......................... 6

    A.    GATX Is A CERCLA "Owner Or Operator" .......................................... 7

    B.    Car 29 Was A Facility At Which Hazardous Substances Were Released And Disposed ........................................................................... 11

    C.    Norfolk Southern May Proceed Under Both Sections 107(a) And 113(f) ................. 12

    II.    Norfolk Southern's Section 113(g) Declaratory Judgment Claim Is Proper Because It Has Stated A Claim Under Sections 107(a) And 113(f) ................................ 14

    III.    CERCLA Does Not Preempt Norfolk Southern's Claims For Joint And Several Liability And Equitable Contribution ............................................ 14

    IV.    Norfolk Southern's Negligence Claim Is Cognizable And Adequately Pled ............... 15

    A.    The Economic Loss Doctrine Does Not Bar Norfolk Southern's Tort-Based Claims .......................................................................... 15

    B.    Norfolk Southern's Allegation That GAMC Owns Car 23 Must Be Accepted As True ............................................................................. 17

CONCLUSION .................................................................................................. 19

# TABLE OF AUTHORITIES

Page(s)

## CASES

*425 Beecher, L.L.C. v. Unizan Bank N.A.*,
    927 N.E.2d 46 (Ohio Ct. App. 2010) ................................................................16

*Andrus v. Glover Construction Co.*,
    446 U.S. 608 (1980) ........................................................................................9

*APL Co. Pte. v. Kemira Water Solutions, Inc.*,
    890 F. Supp. 2d 360 (S.D.N.Y. 2012) ....................................................8, 10, 11

*Ashtabula River Corp. Group II v. Conrail, Inc.*,
    549 F. Supp. 2d 981 (N.D. Ohio 2008) ............................................................17

*Burlington Northern & Santa Fe Railway Co. v. United States*,
    556 U.S. 599 (2009) ....................................................................................7, 9

*Campbell v. Krupp*,
    961 N.E.2d 205 (Ohio Ct. App. 2011) ..............................................................16

*Commodigy OG Vegas Holdings LLC v. ADM Labs*,
    417 F. Supp. 3d 912 (N.D. Ohio 2019) ............................................................18

*Continental Casualty Co. v. Equity Industrial Maple Heights, LLC*,
    2016 WL 2927847 (N.D. Ohio May 19, 2016) ....................................................6

*Correnti v. City of Cleveland*,
    2022 WL 17176823 (N.D. Ohio Nov. 21, 2022) ..................................................6

*Corrigan v. U.S. Steel Corp.*,
    478 F.3d 718 (6th Cir. 2007) .........................................................................18

*Crawford v. Geiger*,
    996 F. Supp. 2d 603 (N.D. Ohio 2014) ............................................................18

*E-Tank Ltd. v. Deist Industries, Inc.*,
    2012 WL 1109986 (N.D. Ohio Mar. 31, 2012) ..................................................16

*Eysoldt v. ProScan Imaging*,
    957 N.E.2d 780 (Ohio Ct. App. 2011) ..............................................................16

*Ga.-Pac. Consumer Prods. LP v. NCR Corp.*,
    32 F.4th 534 (6th Cir. 2022) ...........................................................................6

*GenCorp, Inc. v. Olin Corp.*,
    390 F.3d 433 (6th Cir. 2004) .........................................................................14

*Hobart Corp. v. Waste Management of Ohio, Inc.*,
    758 F.3d 757 (6th Cir. 2014) ...................................................................13

*In re DeLorean Motor Co.*,
    991 F.2d 1236 (6th Cir. 1993) ...............................................................17

*In re Nat'l Prescription Opiate Litig.*,
    440 F. Supp. 3d 773 (N.D. Ohio 2020)...................................................16

*In re Robinson*,
    764 F.3d 554 (6th Cir. 2014) ...................................................................9

*Interstate Safety & Serv. Co. v. City of Cleveland*,
    2011 WL 5873108 (N.D. Ohio Nov. 18, 2011) .......................................17

*Jones v. Ohio Nat'l Life Ins. Co.*,
    2022 WL 1128596 (S.D. Ohio Apr. 15, 2022) ........................................15

*MRP Properties, LLC v. United States*,
    308 F. Supp. 3d 916 (E.D. Mich. 2018)...................................................10

*Navistar, Inc. v. Dutchmaid Logistics, Inc.*,
    171 N.E.3d 851 (Ohio Ct. App. 2021).....................................................15

*Parchman v. SLM Corp.*,
    896 F.3d 728 (6th Cir. 2018) ...................................................................18

*Schiavone v. Pearce*,
    79 F.3d 248 (2d Cir. 1996).......................................................................10

*TRW Inc. v. Andrews*,
    534 U.S. 19 (2001)....................................................................................9

*Uniroyal Chemical Co. v. Deltech Corp.*,
    160 F.3d 238 (5th Cir. 1998) ...................................................................11

*United States v. Atlantic Research Corp.*,
    551 U.S. 128 (2007)...........................................................................9, 12, 13

*United States v. Bestfoods*,
    524 U.S. 51 (1998)....................................................................................10

*United States v. Lewis*,
    900 F.2d 877 (6th Cir. 1990) ...................................................................9

*United States v. M/V Santa Clara I*,
    887 F. Supp. 825 (D.S.C. 1995)................................................................8

*United States v. Township of Brighton*,
    153 F.3d 307 (6th Cir. 1998) ...........................................................................10

*Veolia Es Special Servs., Inc. v. Hiltop Invs., Inc.*,
    2010 WL 610094 (S.D.W. Va. Feb. 18, 2010) ................................................12

*Vine Street LLC v. Keeling*,
    361 F. Supp. 2d 600 (E.D. Tex. 2005) ........................................................9, 10

*Whittaker Corp. v. United States*,
    825 F.3d 1002 (9th Cir. 2016) .........................................................................14

## DOCKETED CASES

*D'Amico v. Consolidated Rail Corp.*,
    No. 87-831 (W.D. Pa. June 17, 1991) ..............................................................10

## STATUTES, RULES, AND REGULATIONS

49 C.F.R.
    § 179.3 ........................................................................................................4, 16
    § 179.6 ........................................................................................................4, 16
    § 180.501 .........................................................................................................3
    § 180.507 .........................................................................................................3
    § 180.517 .........................................................................................................3

42 U.S.C.
    § 9601 ....................................................................................................... passim
    § 9606 .............................................................................................................5
    § 9607 ..........................................................................................6, 7, 8, 12, 13
    § 9613 ...........................................................................................................12

Fed. R. Civ. P. 8(a)(2) ..........................................................................................6

## OTHER AUTHORITIES

Wright & Miller, 6 Fed. Prac. & Proc. § 1452 (3d ed. 2023) ......................................14

Black's Law Dictionary 353 (8th ed. 2004) .............................................................13

Timken, *Installing and Maintaining Timken AP and AP-2 Bearings, Diesel*
    *Locomotive, Passenger and Freight Car Applications* (2015) ............................3

## STATEMENT OF THE ISSUES AND SUMMARY OF THE ARGUMENT

**ISSUE ONE:**  Has Norfolk Southern adequately alleged that GATX Corporation ("GATX")—the owner of a railcar carrying a hazardous substance and that released hazardous substances—was the owner of a facility at which hazardous substances were disposed of sufficient for liability under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA")?

**SUMMARY OF THE ARGUMENT:**  CERCLA imposes liability on "the owner and operator of a vessel or a facility" or "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(1)-(2). The definition of "owner or operator" includes "in the case of an onshore facility or an offshore facility, any person owning or operating such facility." *Id.* § 9601(20)(A). GATX owns Car 29, which derailed while transporting a hazardous substance (vinyl chloride) and from which hazardous substances were released (disposed). GATX is the owner or operator of a "facility at which" a disposal occurred because CERCLA defines "facility" as "rolling stock." Thus, GATX is a potentially responsible party under CERCLA.

**ISSUE TWO:**  Has Norfolk Southern adequately pled a claim under Section 113(f) given that GATX is a potentially responsible party under Section 107(a) of CERCLA?

**SUMMARY OF THE ARGUMENT:**  Norfolk Southern has adequately pled a Section 113(f) claim against GATX, which is a potentially responsible party under CERCLA as the owner of Car 29.

**ISSUE THREE:**  May Norfolk Southern proceed under Sections 107(a) and 113(f) of CERCLA?

**SUMMARY OF THE ARGUMENT:**  Norfolk Southern may proceed under both Sections 107(a) and 113(f), because it seeks (1) contribution for its potential liability to the

United States and Ohio *and* (2) its own response costs, including those incurred before the U.S. Environmental Protection Agency's ("EPA") Unilateral Administrative Order ("UAO") was issued.

**ISSUE FOUR:**  Has Norfolk Southern adequately pled a declaratory judgment claim under Section 113(g) of CERCLA?

**SUMMARY OF THE ARGUMENT:**  Norfolk Southern's Section 113(g) declaratory judgment claim is proper because Norfolk Southern has adequately pled a Section 107(a) claim and a Section 113(f) claim.

**ISSUE FIVE:**  Does CERCLA preempt Norfolk Southern's joint and several liability and equitable contribution claims under Ohio law for damages that are not covered by CERCLA?

**SUMMARY OF THE ARGUMENT:**  CERCLA does not preempt Norfolk Southern's state-law claims for joint and several liability and equitable contribution, which seek damages other than those recoverable under CERCLA.

**ISSUE SIX:**  Does Ohio's economic loss doctrine bar Norfolk Southern's negligence claims when Norfolk Southern's claim is independent of any contract?

**SUMMARY OF THE ARGUMENT:**  Norfolk Southern's negligence claim is not barred by the economic loss doctrine, since it alleges a duty arising outside of any contract.

**ISSUE SEVEN:**  Can GATX and General American Marks Company ("GAMC") seek dismissal of Norfolk Southern's negligence claim on the basis of a factual dispute concerning the ownership of the railcar whose bearing failed due to improper maintenance and caused the derailment?

**SUMMARY OF THE ARGUMENT:**  The Court should reject GATX and GAMC's attempts to inject, and then unilaterally resolve, a factual dispute as to the owner of Car 23. Norfolk Southern's allegations, which assert that GAMC is the owner of Car 23, must be accepted as true in deciding this motion. And, in any event, GATX and GAMC have declined to provide Norfolk Southern any information or documentation supporting their contention that GATX is the owner of Car 23.

Thus, GATX and GAMC's motion to dismiss should be denied because GATX and GAMC have not satisfied their burden of showing that Norfolk Southern's Third-Party Complaint fails to state a claim upon which relief can be granted.

Defendants and Third-Party Plaintiffs Norfolk Southern Corporation and Norfolk Southern Railway Company (together, "Norfolk Southern") submit this Opposition to Third-Party Defendant GATX and GAMC's Motion to Dismiss (Dkt. 85) under Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

Norfolk Southern Train 32N derailed on the evening of February 3, 2023, in East Palestine, Ohio, because an improperly maintained bearing on a railcar owned by GAMC (Car 23) failed. After the derailment, Unified Command made the decision to "vent and burn" five derailed tank cars containing vinyl chloride because of the risk of violent polymerization and catastrophic explosions. GATX, the parent company of GAMC, owns one of those tank cars (Car 29), but the car was never approved for vinyl chloride service and had other unapproved tank car modifications that were incompatible with vinyl chloride service, all of which directly contributed to the decision by Unified Command to conduct the vent and burn. The third-party claims against GATX and GMAC are properly pled and the motion to dismiss should be denied.

## THE ALLEGATIONS OF THE THIRD-PARTY COMPLAINT

### A.      The February 3, 2023, Derailment Of Train 32N

On February 3, 2023, Train 32N, a Norfolk Southern general merchandise freight train comprised of 149 railcars and transporting hazardous materials, was traveling eastbound on the Fort Wayne Line through northeast Ohio. Third-Pty. Compl. (Dkt. 31) ¶¶ 33-34. One of Train 32N's cars (Car 23) was a hopper car owned by GAMC which was carrying polyethylene (plastic) pellets. *Id.* ¶ 36. Car 23 was equipped with roller bearings that allow for the transfer of weight from the car and its lading to the wheels, and allow the axle to rotate under the load, while minimizing the rotational friction. *Id.* ¶ 38. However, bearings are capable of overheating and can cause derailments. *Id.* In addition to conducting visual, on-the-ground inspections of

1

railcars pursuant to 49 C.F.R. Part 215, Norfolk Southern also has equipped its network, including the Fort Wayne Line, with hot bearing detectors ("HBDs") to assess the temperature conditions of bearings and provide audible, real-time warnings to train crews and Norfolk Southern's Advance Train Control Wayside Help Desk when certain bearing temperature thresholds are met. *Id.* ¶¶ 39-40.

On the evening of February 3, an HBD in East Palestine recorded a bearing on Car 23 at 253°F above ambient temperature, triggering a critical audible alarm and causing the train engineer to engage the brake application to stop the train, which was already in the process of slowing due to train traffic on the network. *See* Third-Pty. Compl. ¶¶ 42-44. Shortly thereafter, during deceleration, at approximately 8:54 p.m., the overheated bearing on Car 23 failed, and the car derailed along with 38 additional railcars, five of which were carrying vinyl chloride (also known as "vinyl chloride monomer" or "VCM"), a flammable gas that is transported in a pressurized liquid state, and that must be stabilized for safe transportation to prevent contact with reactive agents like oxygen. *Id.* ¶¶ 45-46, 61-62. Under prolonged exposure to fire or heat, liquefied vinyl chloride turns to vapor and expands, which can cause its container to violently rupture and explode—known as a boiling liquid expanding vapor explosion ("BLEVE"). *Id.* ¶ 64. Under exposure to heat or to catalytic metals, such as copper, aluminum, and their alloys, vinyl chloride can also polymerize, a chemical reaction that turns vinyl chloride into a solid-state polymer, which can increase the risk of a BLEVE by blocking the proper operation of the pressure relief devices ("PRDs"). *See id.* ¶¶ 66-72. A PRD is designed to automatically relieve pressure from the tank car when the tank's contents exceed a pressure threshold. *Id.* ¶ 57.

One of the five tank cars carrying vinyl chloride, Car 29, is owned by GATX. Third-Pty. Compl. ¶ 53. At the time of the derailment, Car 29 was equipped with an unapproved PRD. *Id.* ¶ 132(b).

### B.      GAMC Improperly Maintained Car 23

The bearing on Car 23 was manufactured by Timken Company, whose Bearing Install Manual states that "[c]ars, coaches, and locomotives equipped with roller bearings that remain stationary should be moved one car length *every six months* to distribute lubricant over the bearing surfaces." Third-Pty. Compl. ¶ 112 (emphasis added) (quoting Timken, *Installing and Maintaining Timken AP and AP-2 Bearings, Diesel Locomotive, Passenger and Freight Car Applications*, 25 (2015)). If rail cars are not moved at least once every six months, grease separation can occur, reducing the amount of lubrication around the bearings and potentially impairing functionality. *Id.* ¶ 113. Timken's guidance is consistent with industry practice. *Id.*

As the owner of Car 23, GAMC is responsible for maintaining the bearings and ensuring that Car 23 moves at least one car length every six months. Third-Pty. Compl. ¶¶ 111-112. However, the movement data for Car 23 reveals that it was stationary for periods longer than six months at least twice: first for 565 days ending in August 2018 and again for 206 days ending in May 2019. *Id.* ¶¶ 114-116. GAMC's failure to properly maintain the bearings resulted in the internal degradation and ultimate failure of Car 23's bearing. *Id.* ¶ 224.

### C.      GATX Did Not Comply With Federal Regulations Regarding Car 29

GATX owns Car 29. Railcar owners are responsible for properly maintaining tank cars that carry hazardous materials including complying with federal regulations. Third-Pty. Compl. ¶ 128 (citing 49 C.F.R. §§ 180.501 (general applicability), 180.507 (qualification requirements), 180.509 (inspection requirements), 180.517 (reporting requirements)).

3

Pursuant to 49 C.F.R. § 179.3, the Association of American Railroads ("AAR") must approve the design, materials, construction, conversion, and modification of tank cars in accordance with AAR's Manual of Standards and Recommended Practices and the federal regulatory specifications. Third-Pty. Compl. ¶ 109. Any changes made to the tank car design or components after the fact must also be approved. *See* 49 C.F.R. § 179.6.

After the derailment, the Federal Railroad Administration ("FRA") identified at least three discrepancies between the approval documents for Car 29 and its actual characteristics, including that: (i) the car had *never* been approved for vinyl chloride transport; (ii) the original tank car valve had been replaced with a Midland 720 valve without approval; (iii) the car's original PRD, which had a 225 psi start, had been replaced with a PRD with a 247.5 psi start without approval. Third-Pty. Compl. ¶ 132(b).

Moreover, despite the known risk of polymerization upon an interaction between vinyl chloride and catalytic metals including aluminum (*supra* at 2), Car 29 was fitted with a protective housing cover made of aluminum. Third-Pty. Compl. ¶ 147(d). Aluminum was also found in the exterior debris of the protective housing and housing cover following the derailment, and the angle valves were covered in solidified melted aluminum. *Id.*

### D.    Derailment Response

Shortly after the derailment, first responders arrived and began addressing pool fires, which occur when a pool of volatile liquid evaporates and burns. Third-Pty. Compl. ¶ 78. By midnight, a Unified Command was formed, made up of local first responders and personnel from the EPA, Ohio Environmental Protection Agency, Ohio Emergency Management Agency, Pennsylvania Department of Environmental Protection, Pennsylvania State Police, Beaver County (Pennsylvania) Hazmat Response Team, other Ohio and Pennsylvania state officials, and the Norfolk Southern Hazmat Team. *Id.* ¶ 79.

4

Around midnight, the PRDs on the vinyl chloride tank cars began activating and releasing pressure in a cycle of thirty seconds of releasing and two minutes off. Third-Pty. Compl. ¶ 81. The flammable gas venting from the PRDs ignited, which began to melt the tank car liquid transfer valves and fittings. *Id.* ¶ 82. The PRDs continued to vent through the early morning hours of February 4, 2023. *Id.* ¶ 84.

After the PRDs stopped venting in the early afternoon of February 4, two teams of first responders began monitoring the pressure conditions of the vinyl chloride tank cars. Third-Pty. Compl. ¶¶ 87-88. During this time, the PRD on Car 28 (owned by Third-Party Defendant OxyVinyls LP) activated again and began continuously venting gas for approximately 70 minutes, frightening responders and causing concern that pressure and heat were building inside the tank. *Id.* ¶ 89. Responders also detected elevated temperatures on Car 53 (owned by OxyVinyls LP). *Id.* ¶ 90.

The sudden extended venting from Car 28 and elevated temperature on Car 53 caused responders to become concerned about the potential for catastrophic explosions. Third-Pty. Compl. ¶ 93. These factors also indicated to Unified Command that polymerization may have blocked the PRDs on Car 28 and the other vinyl chloride cars, including GATX-owned Car 29. *Id.* ¶ 95. As a result, on the morning of February 6, 2023, Unified Command met to discuss strategies to relieve the pressure in the five vinyl chloride tanks and avoid a catastrophic uncontrolled explosion, and ultimately decided to vent and burn the contents of all five vinyl chloride cars. *Id.* ¶ 101.

### E. Norfolk Southern Incurred Significant Costs And Made Significant Commitments After The Derailment

On February 21, 2023, the EPA issued a UAO to Norfolk Southern under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), requiring Norfolk Southern to implement, at its expense,

measures related to air monitoring, sampling, identification and delineation of contamination, containment and remediation of contaminated areas, removal and disposal of hazardous substances, and additional actions needed to prevent alleged imminent and substantial endangerment to public health or the environment. Third-Pty. Compl. ¶¶ 155-156. The United States and the State of Ohio thereafter brought these actions against Norfolk Southern under CERCLA seeking reimbursement for their response costs and other damages. *Id.* ¶ 158.

## STANDARD OF REVIEW

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the allegations of the complaint must be taken as true and construed liberally in favor of the plaintiff." *Cont'l Cas. Co. v. Equity Indus. Maple Heights, LLC*, 2016 WL 2927847, at *1 (N.D. Ohio May 19, 2016); *see also* Fed. R. Civ. P. 8(a)(2) (setting forth the liberal pleading standard, requiring merely "a short and plain statement of the claim showing that the pleader is entitled to relief"). "On a motion under Rule 12(b)(6), the Court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to or made part of the complaint may also be taken into account." *Correnti v. City of Cleveland*, 2022 WL 17176823, at *2 (N.D. Ohio Nov. 21, 2022).

## ARGUMENT

## I.    GATX Is A Potentially Responsible Party Under CERCLA

CERCLA imposes liability on "the owner and operator of a vessel or a facility" or "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(1)-(2); *see Ga.-Pac. Consumer Prods. LP v. NCR Corp.*, 32 F.4th 534, 540-541 (6th Cir. 2022). GATX does not dispute that it is the owner of Car 29, that railcars—like Car 29—are "rolling stock" (a defined type of "facility" under CERCLA), or that Car 29 released hazardous substances within the

definition of CERCLA. This is sufficient to establish GATX's liability as an owner under CERCLA, and thus a potentially responsible party.

### A.      GATX Is A CERCLA "Owner Or Operator"

Nevertheless, GATX claims that it is not an "owner or operator" under CERCLA, arguing that Norfolk Southern, acting as common carrier, was the *only* possible "owner or operator" of Car 29 after it accepted the car for transport. Mot. 8. This argument is inconsistent with the text of CERCLA and case law.

Again, CERCLA imposes liability on "the owner and operator of a vessel or a facility" or "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(1)-(2). As GATX recognizes, the definition of "owner or operator" includes "in the case of an onshore facility or an offshore facility, any person owning or operating such facility." *Id.* § 9601(20)(A); Mot. 2. Norfolk Southern does not own Car 29—GATX does, as Norfolk Southern alleged. Third-Pty. Compl. ¶¶ 9, 53, 164. The goal of CERCLA, as GATX recognizes, is to hold potentially responsible parties—including *all* current or past owners and operators—strictly liable. 42 U.S.C. § 9607(a)(1)-(4); *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 608-609 (2009) (noting it is "undisputed" that two parties could be held responsible where they "owned the [property] leased by [a third-party] at the time of contamination"). GATX is one of the several potentially responsible parties under CERCLA because it is an owner and/or operator of Car 29.

GATX points to CERCLA's provision defining common carriers as owners and operators during the transportation of hazardous substances, § 9601(20)(B), to incorrectly claim that a common carrier is the *only* "owner or operator" during such transport under CERCLA. Mot. 9. This is wrong. Nothing in Section 9601(20), or anywhere else in CERCLA, prevents GATX

from being held liable as an owner or operator for hazardous substances released during transportation by rail. Several courts have recognized that there can be multiple owners or operators for purposes of Section 9601(20)(B), with one court specifically noting that a common carrier is "entitled to recover contribution from any other person who can be characterized as a potentially responsible party under 9607(a) including an owner that does not qualify for the shipper protection of 9601(20)(B)." *United States v. M/V Santa Clara I*, 887 F. Supp. 825, 842 (D.S.C. 1995); *cf. APL Co. Pte. Ltd. v. Kemira Water Sols., Inc.*, 890 F. Supp. 2d 360, 371 (S.D.N.Y. 2012) (holding that only the shipper may escape liability under Section 9601(20)(B)).

Section 9601(20)(B) conditionally carves out *shippers* from liability, but only under certain circumstances. It holds that, "[i]n the case of a hazardous substance which has been accepted for transportation by a common or contract carrier … the term 'owner or operator' shall mean such common carrier … [and] the shipper of such hazardous substance shall not be considered to have caused or contributed to any release during such transportation which resulted solely from circumstances or conditions beyond his control." 42 U.S.C. § 9601(20)(B). Thus, a shipper may be relieved of responsibility if the release of a hazardous material resulted "solely from circumstances beyond his control." But if this condition is not met, the shipper remains a potentially responsible owner or operator. GATX is not the shipper here, and thus could not be relieved from liability under this section. *See APL Co. Pte.*, 890 F. Supp. 2d at 371.

Moreover, Section 9601(20)(B) does not, as GATX would have it, say that a common carrier is the *only* owner or operator under CERCLA and there can be no others. The provision does not state or indicate that other parties, in addition to the common carrier, are no longer responsible parties under CERCLA. Section 9601(20)(B) merely clarifies that "owners or operators" include carriers, not that the term excludes all others. There is nothing restrictive

about the words "shall mean." Congress knows how to exclude parties when it means to do so; indeed, other provisions of CERCLA *do* exclude certain parties from liability. *See* 42 U.S.C. § 9601(20)(D) ("The term 'owner or operator' does not include a unit of State or local government."). That is not what Congress did (or meant to do) here with respect to rolling stock owners.

Further, that Section 9601(20)(B)(ii)'s conditional exemption applies only to shippers, and not to other potentially responsible parties, confirms that "owner or operator" continues to encompass other potentially responsible parties even when hazardous substances are in transit with a carrier. *See TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.") (quoting *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-617 (1980)); *In re Robinson*, 764 F.3d 554, 562 (6th Cir. 2014) ("if a statute specified exceptions to its general application, other exceptions not explicitly mentioned are excluded") (quoting *United States v. Lewis*, 900 F.2d 877, 881 (6th Cir. 1990)).

CERCLA "is a strict liability statute," and "even parties not responsible for contamination may fall within the broad definitions of [potentially responsible parties]." *United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 136 (2007). It "was designed to promote the 'timely cleanup of hazardous waste sites' and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination." *Burlington N. & Santa Fe Ry.*, 556 U.S. at 602 (citation omitted). For that reason, "the four classes [of potentially responsible parties] are not meant to circumscribe recovery, but rather to ensure that all who may have financially benefited from commercial activities involving hazardous wastes are forced to bear subsequent costs in remedying the environmental harms caused by that waste." *Vine St. LLC v. Keeling*, 361 F. Supp.

2d 600, 606 (E.D. Tex. 2005) (cleaned up). As such, "[e]ven if there were ambiguities, [a] Court

is to 'construe the statute liberally' in light of CERCLA's 'expansive, remedial purpose.'" *APL*

*Co. Pte.*, 890 F. Supp. 2d at 370 (quoting *Schiavone v. Pearce*, 79 F.3d 248, 253 (2d Cir. 1996)).

Read correctly, there is nothing in Section 9601(20)(B) that limits Norfolk Southern's

ability to hold *all* other potentially responsible parties—including GATX—responsible under

CERCLA.[1] And here, Norfolk Southern has alleged that GATX is responsible as the owner

and/or operator of Car 29. Third-Pty. Compl. ¶¶ 9, 53, 164. GATX does not dispute its

ownership of Car 29, and only disputes its status as "operator" on the basis that it did not have

"actual control" of the railcar "at the time" of the derailment. Mot. 11 n.6. But "actual control"

does not require control at the moment of the release—"actual control" exists when the party

"manage[d], direct[ed], or conduct[ed] operations specifically related to pollution … *or decisions*

*about compliance with environmental regulations*." *United States v. Bestfoods*, 524 U.S. 51, 66-

67 (1998) (emphasis added); *see also United States v. Twp. of Brighton*, 153 F.3d 307, 315 (6th

Cir. 1998) ("Once affirmative acts have been found to render someone an operator, it is no

defense to liability for that operator to say it was not the actor responsible for a particular

hazard."). While railroads like Norfolk Southern have their own regulatory responsibilities—

such as visual inspections and brake tests—these responsibilities do not supplant the

considerable control tank car owners exert over the transport of hazardous materials in their cars.

*See* Third-Pty. Compl. ¶¶ 120-138 (listing requirements). Norfolk Southern has adequately

alleged GATX's status as owner and/or operator at the pleading stage. *MRP Props., LLC v.*

*United States*, 308 F. Supp. 3d 916, 934 (E.D. Mich. 2018) (holding that allegations that a party

---

[1] GATX's citation to *D'Amico v. Consolidated Rail Corp.*, No. 87-831 (W.D. Pa. June 17, 1991), is only applicable to the extent it can demonstrate that it falls within Section 9601(20)(B)'s conditional exemption for shippers. GATX cannot make any such showing.

exercised specific control and operations having to do with leakage were sufficient to survive a motion to dismiss).

Even if GATX, which was not the shipper, could find some support in the conditional exemption provided to shippers under Section 9601(20)(B)(ii), the determination of responsibility under that section, including whether the release resulted from circumstances altogether beyond GATX's control, is a fact-dependent question that is not ripe on a motion to dismiss and must await discovery and further proceedings. *APL Co. Pte.*, 890 F. Supp. at 371-372 (denying motion to dismiss where "there is not enough evidence in the record to conclude that the release of ferrous chloride resulted 'solely from circumstances or conditions beyond [third-party defendant's] control'").

### B.    Car 29 Was A Facility At Which Hazardous Substances Were Released And Disposed

Next, GATX argues that it is not a potentially responsible party because it does not own or operate a facility "at which" a disposal occurred. Mot. 13-15. The Court should reject GATX's argument for the simple reason that 42 U.S.C. § 9601(9) defines a "facility" to include "rolling stock," such as Car 29. This provision *alternatively* provides that a facility includes "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located." The Fifth Circuit has held that "facility is defined in the broadest possible terms, encompassing far more than traditional waste sites. It expressly includes buildings, pipelines, motor vehicles, [and] rolling stock …. In addition, sites that do not otherwise satisfy the definition are swept within its purview by a catch-all phrase." *Uniroyal Chem. Co. v. Deltech Corp.*, 160 F.3d 238, 245 (5th Cir. 1998).

GATX's argument is based on a tortured reading of the statutory language, where it erroneously combines two *alternative* definitions of "facility" into one to assert that a facility

must be a "fixed location, such as a factory or a hazardous waste site—not a railcar" and that "no hazardous chemicals have 'come to be located' at a railcar in this case." Mot. 13-14. But under 42 U.S.C. § 9601(9) a "facility" can be *either* "(A) any building, structure, equipment … rolling stock … *or* (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located." 42 U.S.C. § 9601(9) (emphasis added). Car 29 qualifies as a facility under both definitions: it is rolling stock under (A) and, as a derailed car releasing hazardous substances at the derailment site, it is an "area where hazardous substances have … otherwise come to be located" under (B).

Courts have not hesitated to hold that railcars are facilities under CERCLA. For example, in *Reading Co. v. City of Philadelphia*, a district court in the Eastern District of Pennsylvania expressly held that "the statutory language ['any facility at which such hazardous substances were disposed of'] supports the conclusion that § 9607(a)(2) encompasses situations involving operation or ownership of a facility that emitted hazardous substances," including railcars owned or operated by the City of Philadelphia that leaked chemicals. 155 B.R. 890, 906-907 (E.D. Pa. 1993); *see also Veolia Es Special Servs., Inc. v. Hiltop Invs., Inc.*, 2010 WL 610094, at *2-3 (S.D. W.Va. Feb. 18, 2010) (assuming that a railcar was a CERCLA "facility" for purposes of assessing whether defendants were "owner[s] or operator[s]" of the facility at the time of an oil spill).

## C.     Norfolk Southern May Proceed Under Both Sections 107(a) And 113(f)

"[T]he remedies available in §§ 107(a) and 113(f) complement each other by providing causes of action 'to persons in different procedural circumstances.'" *Atl. Rsch. Corp.*, 551 U.S. at 139. Section 113(f) grants a potentially responsible party ("PRP") the right to contribution from the other PRPs in the event it is found liable in a suit brought against it under Section 106 or Section 107(a). 42 U.S.C. § 9613(f)(1). This right of contribution is a statutory equivalent of a

"'tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share.'" *Atl. Rsch. Corp.*, 551 U.S. at 138 (quoting Black's Law Dictionary 353 (8th ed. 2004)). Section 107(a), by comparison, does not concern contribution; rather, it permits a private party to recover "the costs it has 'incurred' in cleaning up a site," without needing those costs to be derivative of liability to a third party. *Id.* at 139 (quoting 42 U.S.C. § 9607(a)(4)). Taken together, a party may seek costs it owes to others through Section 113(f) and other incurred costs through Section 107(a).

Norfolk Southern's claims under both provisions are appropriate. The United States and Ohio seek reimbursement of their response costs through Section 107, so Norfolk Southern may properly seek reimbursement under Section 113 if it is found liable for those response costs. *See* First-Pty. Compl. (Dkt. 22) ¶¶ 206-214. But Norfolk Southern has also incurred its own response costs, beyond what it may owe if found liable in the underlying action. Norfolk Southern has taken actions pursuant to the EPA's UAO, including air monitoring, sampling, soil removal, and disposal of hazardous substances, and also incurred response costs before the UAO was issued. Third-Pty. Compl. ¶¶ 156-157. EPA issued the UAO on February 21, 2023 (more than two weeks after the derailment), but Norfolk Southern mobilized immediately after the derailment and began incurring response costs upon mobilization. *Id.* ¶¶ 79, 165-168. Norfolk Southern's response costs have been and will be borne by Norfolk Southern alone; they are not part of the United States and Ohio's alleged costs. Thus, Norfolk Southern properly seeks reimbursement of its own response costs through Section 107.

GATX's cited precedent is inapposite. It principally relies on *Hobart Corp. v. Waste Management of Ohio, Inc.*, 758 F.3d 757, 766 (6th Cir. 2014). There, the question was whether a party who had a claim under Section 113(f) could instead assert *that* claim under Section 107;

13

the Court held it could not. *Id.* at 766-769. Here, in contrast, Norfolk Southern is not attempting to skirt Section 113; rather, Norfolk Southern seeks contribution for its potential liability to the United States and Ohio, in addition to its own response costs.[2] *See Whittaker Corp. v. United States*, 825 F.3d 1002, 1008-09, 1010 (9th Cir. 2016) (recognizing that "a party's right to contribution [under Section 113(f)] for some of its expenses at a site does not necessarily mean that the party loses its right to bring a cost recovery action [under Section 107] for other expenses"). Accordingly, *Hobart* does not address this circumstance or alter Norfolk Southern's right to proceed under both provisions.

## II.    Norfolk Southern's Section 113(g) Declaratory Judgment Claim Is Proper Because It Has Stated A Claim Under Sections 107(a) And 113(f)

GATX argues that Norfolk Southern's declaratory judgment claim fails because Norfolk Southern's other CERCLA claims fail and because Norfolk Southern does not sufficiently allege future response costs. Mot. 17. GATX's premise is wrong. As explained above, Norfolk Southern has adequately pled viable CERCLA claims. Accordingly, Norfolk Southern has also stated a viable claim for declaratory judgment. *See GenCorp, Inc. v. Olin Corp.*, 390 F.3d 433, 451 (6th Cir. 2004) (recognizing the viability of "declaratory judgments concerning future response costs in § 107 and § 113(f) suits").[3]

## III.   CERCLA Does Not Preempt Norfolk Southern's Claims For Joint And Several Liability And Equitable Contribution

Norfolk Southern's state-law claims for joint and several liability and equitable contribution are not preempted by CERCLA because those claims seek damages other than the costs that are recoverable under CERCLA. Although GATX argues that Norfolk Southern "has

---

[2] The Section 107 claims are properly before the Court under Federal Rule of Civil Procedure 18. *See* Wright & Miller, 6 Fed. Prac. & Proc. § 1452 (3d ed. 2023).

[3] GATX argues that Norfolk Southern's Section 113(f) claim fails "[f]or all the reasons GATX is not a PRP under § 107(a) of CERCLA." Mot. 16. But, as explained, GATX is a PRP under CERCLA because it is an owner and/or operator of Car 29.

14

not pleaded that it seeks contribution for costs incurred outside of Ohio's CERCLA action,"
Mot. 18, that argument mischaracterizes Norfolk Southern's third-party claims, which in fact
seek to hold GATX liable for its "fair and equitable share of CERCLA response costs *and other
costs* Norfolk Southern incurred and will incur." Third-Pty. Compl. Prayer for Relief (emphasis
added). Norfolk Southern's state-law claims for joint and several liability and equitable
contribution do not seek the recovery of its CERCLA costs; rather, they seek contribution for
GATX's share of Norfolk Southern's potential liability under the other claims in Ohio's
complaint. *See, e.g.*, First-Pty. Compl. (Dkt. 1) ¶¶ 514-529 (negligence), 530-535 (public
nuisance).

## IV.    Norfolk Southern's Negligence Claim Is Cognizable And Adequately Pled

GATX and GAMC make two arguments for dismissing Norfolk Southern's negligence
claim: (1) Norfolk Southern's negligence claim is not cognizable under Ohio's economic loss
doctrine; and (2) Norfolk Southern's claim must be dismissed because of a supposed factual
issue regarding Car 23's owner. Mot. 19-20. The Court should reject both.

### A.    The Economic Loss Doctrine Does Not Bar Norfolk Southern's Tort-Based Claims

GATX and GAMC's argument that Norfolk Southern's negligence claim is barred by the
economic loss doctrine lacks merit, as Norfolk Southern's tort-based claim is not premised upon
GATX and GAMC's breach of a contractual duty. *See Navistar, Inc. v. Dutchmaid Logistics,
Inc.*, 171 N.E.3d 851, 861 (Ohio Ct. App. 2021) ("Where a tort claim alleges a duty was
breached independent of the contract, the economic loss rule does not apply."); *see also Jones v.
Ohio Nat'l Life Ins. Co.*, 2022 WL 1128596, at *9 (S.D. Ohio Apr. 15, 2022) (the economic loss
doctrine does not apply "where a tort claim alleges a duty was breached independent of [a]
contract" (quoting *Navistar*, 171 N.E.3d at 861)). Instead, Norfolk Southern's negligence claim

arises outside of any contractual obligation and is based on GATX and GAMC's failure to exercise reasonable care to ensure the "safety of individuals and entities whose persons or property were within reasonable proximity to the rail line, Norfolk Southern's employees and its property, and the environment," Third-Pty. Compl. ¶ 190, by failing to comply with all federal regulatory requirements for the certification of Car 29. *Id.* ¶¶ 107-110, 120-138; 49 C.F.R. §§ 179.3, 179.6. There are no contract claims at issue in this case. *See 425 Beecher, LLC v. Unizan Bank N.A.*, 927 N.E.2d 46, 59 (Ohio Ct. App. 2010).

Moreover, GATX and GAMC's argument that the economic loss doctrine should bar Norfolk Southern's negligence claim because it seeks to recover for purely economic losses rather than personal injury or property damage (Mot. 19) is contrary to the purpose of the doctrine. The economic loss doctrine "stems from the recognition of a balance between tort law, designed to redress losses suffered by breach of a duty imposed by law to protect societal interests, and contract law, which holds that 'parties to a commercial transaction should remain free to govern their own affairs.'" *E-Tank Ltd. v. Deist Indus., Inc.*, 2012 WL 1109986, at *3 (N.D. Ohio Mar. 31, 2012) (quoting *Eysoldt v. ProScan Imaging*, 957 N.E.2d 780, 785 (Ohio Ct. App. 2011)). As such, "the economic rule does not apply—and the plaintiff who suffered only economic damages can proceed in tort—where the defendant breached a duty that did not arise solely from a contract." *Id.* (quoting *Campbell v. Krupp*, 961 N.E.2d 205, 211 (Ohio Ct. App. 2011)); *see also In re Nat'l Prescription Opiate Litig.*, 440 F. Supp. 3d 773, 814 (N.D. Ohio 2020) (rejecting argument that the economic loss doctrine bars every tort claim that fails to allege non-economic injury because "that construction is at odds with the conclusion of this and other courts that the rule does not deny recovery for purely economic damages in tort, where claims are alleged to arise from a duty independent of a contract").

16

GATX and GAMC's citation to *dicta* in *Ashtabula River Corp. Group II v. Conrail, Inc.* is not authoritative and is an outlier in this district. 549 F. Supp. 2d 981, 987 (N.D. Ohio 2008). There, plaintiff sought recovery from several defendants for costs it had paid and would continue to pay in connection with certain remediation and disposal activities. *Id.* at 983. The court dismissed the complaint based on the applicable statute of limitations. *Id.* at 985. Nonetheless, the court addressed defendants' remaining arguments, "[a]ssuming Counts II, III and IV [we]re not subject to dismissal on the statute of limitations basis," including defendants' argument that plaintiff's claims should be dismissed under the economic loss rule. *Id.* Concluding in *dicta* that plaintiff's claims were subject to dismissal under the economic loss rule, the court noted that in making its argument, plaintiff "fail[ed] to rely on Ohio cases." *Id.* at 987-88. Unlike in *Ashtabula*, Norfolk Southern has cited numerous Ohio cases holding that the economic loss doctrine does not apply to bar tort actions seeking economic losses where, as here, the tort claim is premised on a duty independent of a contract.

## B. Norfolk Southern's Allegation That GAMC Owns Car 23 Must Be Accepted As True

GATX and GAMC make the factual contention that the Third-Party Complaint incorrectly pleads ownership of Car 23 by GAMC, when Car 23 is in fact owned by GATX. Mot. 20. But it is well-settled that "[a] judge may not grant a Fed. R. Civ. P. 12(b)(6) motion to dismiss based on a disbelief of a complaint's factual allegations." *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993); *see also Interstate Safety & Serv. Co. v. City of Cleveland*, 2011 WL 5873108, at *1 (N.D. Ohio Nov. 18, 2011) ("factual disputes … cannot be resolved at the motion to dismiss stage."). Norfolk Southern's allegation as to ownership must be accepted

as true. It would be improper to rely on GATX and GAMC's allegation of a contrary fact as a basis for ruling on their motion.[4]

GATX and GAMC also argue that Count Eight (Negligence) against GATX should be dismissed because "Norfolk Southern has not alleged facts to support a veil-piercing claim under Ohio's stringent standard." Mot. 20. That is also incorrect. Norfolk Southern plainly alleged that "GATX Corporation exercises substantial direct control over the operations of its subsidiary General American Marks Company, including with respect to railcar maintenance." Third-Pty. Compl. ¶ 226. That allegation is sufficient for Rule 12(b)(6) purposes. *See Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 724 (6th Cir. 2007) (under Ohio law, a parent company that, among other things, exerts control over a subsidiary can be held liable for the acts of the subsidiary); *Commodigy OG Vegas Holdings LLC v. ADM Labs*, 417 F. Supp. 3d 912, 925-926 (N.D. Ohio 2019) (same). Moreover, GATX itself contends in its motion that *it* is the owner of Car 29 (Mot. 20), which (if true) would mean that it is properly subject to Norfolk Southern's negligence claim with respect to the maintenance of Car 23, such that Norfolk Southern should be granted leave to leave to amend. *See Parchman v. SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018) ("[T]he case law in this Circuit manifests liberality in allowing amendments to a complaint." (internal quotation marks omitted)).

---

[4] To the extent the Court is inclined to entertain this factual dispute at the motion to dismiss stage, Norfolk Southern requests that the Court grant limited discovery into the ownership of Car 23 and, if necessary, permit Norfolk Southern to amend its Third-Party Complaint. *Crawford v. Geiger*, 996 F. Supp. 2d 603, 610 (N.D. Ohio 2014) (recognizing "plaintiffs' right to conduct discovery and, if they develop facts [bearing on plaintiffs' claims], seek leave to amend their complaint").

## CONCLUSION

GATX and GAMC's motion to dismiss should be denied. If the Court grants the motion, it should grant Norfolk Southern leave to obtain discovery on the owner of Car 23 and leave to amend.

Date: November 14, 2023                    Respectfully submitted,


By: /s/ *Davina Pujari*
Davina Pujari (admitted *pro hac vice*)
Christopher A. Rheinheimer (admitted *pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Tel.: (628) 235-1136
Fax: (628) 235-1001
Davina.Pujari@wilmerhale.com
Chris.Rheinheimer@wilmerhale.com

Edward O'Callaghan (admitted *pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel.: (202) 663-6956
Fax: (202) 663-6363
Edward.O'Callaghan@wilmerhale.com

Claire Guehenno (admitted *pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 295-6524
Fax: (212) 230-8888
Claire.Guehenno@wilmerhale.com

19

Louis L. McMahon (0067378)
MCMAHON DEGULIS LLP
812 Huron Road, Suite 650
Cleveland, OH 44115
Tel.: (216) 367-1407
lmcmahon@mdllp.net

*Counsel for Defendants and Third-Party
Plaintiffs*

## CERTIFICATE OF LOCAL RULES 7.1 COMPLIANCE

I certify that this Opposition adheres to the page limitations set forth in Local Rule 7.1(f)

for standard cases because it does not exceed 20 pages in length.

*/s/ Davina Pujari*
DAVINA PUJARI

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2023, I caused a copy of the foregoing to be filed with the Clerk of the Court using the Court's CM/ECF electronic filing system, which will provide electronic notice to all counsel of record.

*/s/ Davina Pujari*
DAVINA PUJARI
