# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| THE STATE OF OHIO, ex rel. DAVE YOST, OHIO ATTORNEY GENERAL,<br><br>and<br><br>THE UNITED STATES OF AMERICA,<br><br>        Plaintiffs,<br> v.<br><br>NORFOLK SOUTHERN CORPORATION and NORFOLK SOUTHERN RAILWAY COMPANY,<br><br>        Defendants/<br>        Third-Party Plaintiffs,<br><br> v.<br><br>OXYVINYLS LP, GATX CORPORATION, GENERAL AMERICAN MARKS COMPANY, TRINITY INDUSTRIES LEASING COMPANY, SMBC RAIL SERVICES LLC, DOW CHEMICAL INCORPORATED, and UNION TANK CAR COMPANY,<br><br>        Third-Party Defendants. | Civil Action No. 4:23CV517<br><br>      4:23CV675<br><br>Hon. John R. Adams |

**NORFOLK SOUTHERN RAILWAY COMPANY AND NORFOLK SOUTHERN CORPORATION'S OPPOSITION TO THIRD-PARTY DEFENDANT UNION TANK CAR COMPANY'S MOTION TO DISMISS THE THIRD-PARTY COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................ ii

TABLE OF AUTHORITIES .................................................................................................... iii

STATEMENT OF THE ISSUES AND SUMMARY OF THE ARGUMENT ............................ v

INTRODUCTION ..................................................................................................................... 1

THE ALLEGATIONS OF THE THIRD-PARTY COMPLAINT ............................................. 2

    I.     The February 3, 2023 Derailment Of Train 32N And Initial Response ................ 2

    II.    Norfolk Southern Incurred Significant Costs And Made Significant Commitments After The Derailment ................................................................... 3

STANDARD OF REVIEW ....................................................................................................... 3

ARGUMENT ............................................................................................................................. 4

    I.     Norfolk Southern May Proceed Under Both Sections 107(a) And 113(f) ............. 4

    II.    Union Tank Is A CERLA "Owner or Operator" ................................................... 5

    III.   Norfolk Southern Has Plausibly Stated A Section 113 Claim For Declaratory Judgment ......................................................................................... 11

CONCLUSION ........................................................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

## CASES

*APL Co. Pte. Ltd. v. Kemira Water Solutions, Inc.*,
   890 F. Supp. 2d 360 (S.D.N.Y. 2012) ...................................................................7, 8, 9

*Burlington Northern & Santa Fe Railway Co. v. United States*,
   556 U.S. 599 (2009) ..............................................................................................6, 9

*Continental Casualty Co. v. Equity Industrial Maple Heights, LLC*,
   2016 WL 2927847 (N.D. Ohio May 19, 2016) ............................................................3

*Correnti v. City of Cleveland*,
   2022 WL 17176823 (N.D. Ohio Nov. 21, 2022) .........................................................4

*GenCorp, Inc. v. Olin Corp.*,
   390 F.3d 433 (6th Cir. 2004) .....................................................................................11

*Georgia-Pacific Consumer Products LP v. NCR Corp.*,
   32 F.4th 534 (6th Cir. 2022) .......................................................................................6

*Hobart Corp. v. Waste Management of Ohio, Inc.*,
   758 F.3d 757 (6th Cir. 2014) .......................................................................................5

*In re Robinson*,
   764 F.3d 554 (6th Cir. 2014) .......................................................................................8

*Parchman v. SLM Corp.*,
   896 F.3d 728 (6th Cir. 2018) .....................................................................................11

*Reading Co. v. City of Philadelphia*,
   155 B.R. 890 (E.D. Pa. 1993) .....................................................................................6

*TRW Inc. v. Andrews*,
   534 U.S. 19 (2001) ......................................................................................................8

*Uniroyal Chemical Co. v. Deltech Corp.*,
   160 F.3d 238 (5th Cir. 1998) .......................................................................................6

*United States v. Atlantic Research Corp.*,
   551 U.S. 128 (2007) ....................................................................................................4

*United States v. Bestfoods*,
   524 U.S. 51 (1998) ......................................................................................................9

*United States v. M/V Santa Clara I,*
    887 F. Supp. 825 (D.S.C. 1995) ..................................................................................7

*Vine Street LLC v. Keeling*,
    361 F. Supp. 2d 600 (E.D. Tex. 2005) ........................................................................9

*Whittaker Corp. v. United States*,
    825 F.3d 1002 (9th Cir. 2016) ....................................................................................5

**STATUTES, RULES, AND REGULATIONS**

42 U.S.C.
    § 9601 ............................................................................................................6, 7, 8, 10
    § 9607 ......................................................................................................................4, 6
    § 9613 .........................................................................................................................4

Fed. R. Civ. P. 8 ................................................................................................................3

**OTHER AUTHORITIES**

Committee on Environment & Public Works, A Legislative History of the
    Comprehensive Environmental Response, Compensation, and Liability
    Act of 1980 (Superfund), Public Law 96-510, 1983 WL 506687 (Aug. 31,
    1983) .........................................................................................................................10

Wright & Miller, *Federal Practice and Procedure* § 1452 .............................................5

**STATEMENT OF THE ISSUES AND SUMMARY OF THE ARGUMENT**

<u>**ISSUE ONE:**</u> Is Norfolk Southern permitted to bring claims under both Sections 107 and 113 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA")?

<u>**SUMMARY OF THE ARGUMENT:**</u> Norfolk Southern may proceed under both Sections 107(a) and 113(f) because it seeks (1) contribution for its potential liability to the United States and the State of Ohio *and* (2) its own response costs, including those incurred before the EPA's Unilateral Administrative Order ("UAO") was issued.

<u>**ISSUE TWO:**</u> Is Union Tank Car Company ("Union Tank")—the owner of a railcar carrying a hazardous substance and that released a hazardous substance—an "owner or operator" and thus a potentially responsible party under Section 107(a) of CERCLA?

<u>**SUMMARY OF THE ARGUMENT:**</u> The definition of "owner or operator" includes "in the case of an onshore facility or an offshore facility, any person owning or operating such facility." 42 U.S.C. § 9601(20)(A). Union Tank owns Car 48, which derailed on February 3, 2023 while transporting a hazardous substance—butyl acrylates—and from which a hazardous substance was released. That Norfolk Southern was transporting Car 48 as a "common … carrier" does not exempt Union Tank from CERCLA liability because Union Tank was not a "shipper" and thus could not qualify for the conditional exemption for certain shippers. 42 U.S.C. § 9601(20)(A)-(B). Therefore, Union Tank, as the "owner or operator" of Car 48, is a potentially responsible party under CERCLA.

<u>**ISSUE THREE:**</u> Did Norfolk Southern adequately state a Section 113 declaratory judgment claim?

**SUMMARY OF THE ARGUMENT:** For the reasons described above, Norfolk Southern's CERCLA claims, including its Section 113 declaratory judgment claims, are adequately pled.

Thus, Union Tank's motion to dismiss should be denied because Union Tank has not satisfied its burden of showing that Norfolk Southern's Third-Party Complaint fails to state a claim upon which relief can be granted.

Defendants and Third-Party Plaintiffs Norfolk Southern Corporation and Norfolk Southern Railway Company (together, "Norfolk Southern") submit this Opposition to Third-Party Defendant Union Tank Car Company's Motion to Dismiss (Dkt. 76) ("Mot.") under Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

Norfolk Southern Train 32N derailed on the evening of February 3, 2023 in East Palestine, Ohio after a bearing on a hopper car failed. Multiple tank cars carrying hazardous substances derailed, including a tank car owned by Union Tank carrying butyl acrylates.

As a common carrier, Norfolk Southern is required by federal law to transport hazardous materials. It shares the responsibility for safe transport with multiple other parties, including the owners and lessees of the railcars and the manufacturers and shippers of the materials being transported, all of which are governed by a mix of federal statutes, regulations, and industry standards set out by the Association of American Railroads ("AAR"). Congress passed CERCLA to ensure that when environmental releases occur, the cost of cleanup is borne by all owners, operators, and responsible parties under a strict liability regime.

Union Tank is an owner or operator under CERCLA and therefore a responsible party. It does not dispute that it owns Car 48, a tank car carrying butyl acrylates. Third-Pty. Compl. ¶ 14; Mot. 5-8. Nor does it dispute that during the derailment, Car 48 was punctured and released its entire load of butyl acrylates. Third-Pty. Compl. ¶ 48; Mot. 5-8. Instead, Union Tank tries to escape liability by arguing that it had little to do with the underlying cause of the derailment. Even if this were true, it is irrelevant. CERCLA imposes strict liability on all potentially responsible parties ("PRPs") to ensure the proper cleanup of the site, including "owners or operators" of the facility where the disposal occurred. Congress specifically defined "facility" to

include rolling stock, *i.e.,* railcars. As an owner or operator of Car 48, Union Tank is liable for its proportionate share of the cleanup costs. Union Tank's motion to dismiss should be denied.

## THE ALLEGATIONS OF THE THIRD-PARTY COMPLAINT

### I. The February 3, 2023 Derailment Of Train 32N And Initial Response

On February 3, 2023, Train 32N, a Norfolk Southern general merchandise freight train comprised of 149 railcars and transporting hazardous materials was traveling eastbound on the Fort Wayne Line through northeast Ohio when a roller bearing on a hopper car failed, leading to a derailment in East Palestine, Ohio. Third-Pty. Compl. ¶¶ 33-34, 45. Thirty-eight railcars derailed, including Car 48, a tank car owned by Union Tank and shipping butyl acrylates by shipper Arkema, Incorporated. *Id.* ¶¶ 46, 49. Butyl acrylates are a hazardous substance under CERCLA. *Id.* ¶ 164(*l*).

Immediately following the derailment, many of the derailed railcars were engulfed in fire. Third-Pty. Compl. ¶ 47. Car 48 was breached and released its load of roughly 30,000 gallons of butyl acrylates into the environment. *Id.* ¶ 48. Car 48 is a DOT-111 unpressurized tank car, which is a legacy, general-service tank car subject to a federal phase-out for transporting flammable liquids. *Id.* ¶¶ 49-51. Its anticipated replacement, model DOT-117J, features a thicker tank shell, thermal protection system, and additional safety designs. *Id.* ¶ 51. While none of the DOT-117J model tank cars on Train 32N breached upon the derailment, multiple DOT-111 cars suffered physical damage that caused chemical releases, including Car 48. *Id.* ¶¶ 48-49.

Shortly after the derailment, first responders arrived and began addressing pool fires, which occur when a pool of volatile liquid evaporates and burns. Third-Pty. Compl. ¶ 78. By midnight, a Unified Command was formed, made up of local first responders and personnel from the U.S. Environmental Protection Agency, Ohio Environmental Protection Agency, Ohio Emergency Management Agency, Pennsylvania Department of Environmental Protection,

Pennsylvania State Police, Beaver County (Pennsylvania) Hazmat Response Team, other Ohio and Pennsylvania state officials, and the Norfolk Southern Hazmat Team. *Id.* ¶ 79. Responders spent the next three days containing the pool fires surrounding the derailed railcars. Third-Pty. Compl. ¶¶ 80, 82, 87, 89.

II. **Norfolk Southern Incurred Significant Costs And Made Significant Commitments After The Derailment**

On February 21, 2023, the EPA issued a UAO to Norfolk Southern under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), requiring Norfolk Southern to implement—at its expense— measures related to air monitoring, sampling, identification and delineation of contamination, containment and remediation of contaminated areas, removal and disposal of hazardous substances, and additional actions needed to prevent alleged imminent and substantial endangerment to public health or the environment. Third-Pty. Compl. ¶¶ 155-156. The United States and the State of Ohio thereafter brought actions against Norfolk Southern under CERCLA seeking reimbursement for their response costs and for other damages. *Id.* ¶ 158.

## STANDARD OF REVIEW

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the allegations of the complaint must be taken as true and construed liberally in favor of the plaintiff." *Cont'l Cas. Co. v. Equity Indus. Maple Heights, LLC*, 2016 WL 2927847, at *1 (N.D. Ohio May 19, 2016); *see also* Fed. R. Civ. P. 8(a)(2) (setting forth the liberal pleading standard, requiring merely "a short and plain statement of the claim showing that the pleader is entitled to relief"). "On a motion under Rule 12(b)(6), the Court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to or made part of the complaint may also be taken into account." *Correnti v. City of Cleveland*, 2022 WL 17176823, at *2 (N.D. Ohio Nov. 21, 2022).

# ARGUMENT

## I. Norfolk Southern May Proceed Under Both Sections 107(a) And 113(f)

"[T]he remedies available in §§ 107(a) and 113(f) complement each other by providing causes of action 'to persons in different procedural circumstances.'" *United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 139 (2007). The United States and Ohio have alleged that Norfolk Southern is liable as a PRP. Section 113(f) grants a PRP the right to contribution from other PRPs in the event it is found liable in a suit brought against it under Section 106 or Section 107(a). 42 U.S.C. § 9613(f)(1). This is a right of *contribution*, a statutory equivalent of a "'tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share.'" *Atl. Rsch.*, 551 U.S. at 138 (quoting Black's Law Dictionary 353 (8th ed. 2004)). Section 107(a), by comparison, does not concern contribution; rather, it permits a private party to recover "the costs it has 'incurred' in cleaning up a site," without needing those costs to be a liability to a third party. *Id.* at 139 (quoting 42 U.S.C. § 9607(a)(4)). Taken together, a PRP may recover costs it owes to others through Section 113(f) but may seek other incurred costs through Section 107(a).

Here, Norfolk Southern's claims under both provisions are appropriate. The United States and Ohio seek reimbursement of their response costs through their Section 107 claims against Norfolk Southern, so Norfolk Southern may properly seek reimbursement under Section 113 against other PRPs if it is found liable for those response costs. *See* First-Pty. Compl., Dkt. 1, 22. But Norfolk Southern has also incurred its own response costs beyond what it may owe to the United States and Ohio. For example, as pled in the Third-Party Complaint, Norfolk Southern has taken actions pursuant to the EPA's UAO issued on February 21, 2023, including air monitoring and sampling, removal and disposal of hazardous substances, and additional response actions. Third-Pty. Compl. ¶¶ 156-157. Norfolk Southern also incurred response costs *before* the

order was issued since it mobilized immediately after the derailment and the UAO was not issued until over two weeks later. *Id.* ¶¶ 79, 165-168. None of these pre-order or post-order response costs are part of the costs sought by the United States and Ohio in this action—they have been borne by Norfolk Southern alone. Thus, Norfolk Southern properly seeks reimbursement of its own response costs through Section 107.

Union Tank's cited precedent is inapposite. It principally relies on *Hobart Corp. v. Waste Management of Ohio, Inc.*, 758 F.3d 757, 766 (6th Cir. 2014). There, the question was whether a party who had a claim under Section 113(f) (the contribution provision) could instead assert *that same claim* under Section 107 (the cost recovery provision). The Court held it could not. *Id.* at 766-769. That is not at all the situation here. Norfolk Southern seeks contribution under Section 113(f) for any liability to the United States and Ohio, and seeks its own response costs under Section 107.[1] That is consistent with the statutory scheme and entirely appropriate. *See Whittaker Corp. v. United States*, 825 F.3d 1002, 1008-1010 (9th Cir. 2016) (recognizing that "a party's right to contribution [under Section 113(f)] for some of its expenses at a site does not necessarily mean that the party loses its right to bring a cost recovery action [under Section 107] for other expenses"). *Hobart* is not to the contrary because it does not address Norfolk Southern's right to proceed on different claims pursuant to both provisions.

## II. Union Tank Is A CERCLA "Owner Or Operator"

CERCLA imposes liability on "the owner and operator of a vessel or a facility" or "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(1)-(2); *see Georgia-*

---

[1] The Section 107 claim is properly before the Court under Federal Rule of Civil Procedure 18. *See* Wright & Miller, *Federal Practice and Procedure* § 1452.

*Pac. Consumer Prods. LP v. NCR Corp.*, 32 F.4th 534, 540-541 (6th Cir. 2022).[2] Despite owning Car 48, Union Tank claims it is not an "owner or operator" under CERCLA, arguing that Norfolk Southern, acting as common carrier, was "the 'owner or operator' of Car 48" after it accepted the car for transport. Mot. 5. This argument disregards the text of CERCLA and case law.

As Union Tank recognizes, the definition of "owner or operator" includes "in the case of an onshore facility or an offshore facility, any person owning or operating such facility." Mot. 6 (quoting 42 U.S.C. § 9601(20)(A)). Union Tank does not dispute that it is the owner of Car 48 or that railcars—like Car 48—are "rolling stock" (a type of "facility" under CERCLA). Mot. 5-8; *see also Uniroyal Chem. Co. v. Deltech Corp.*, 160 F.3d 238, 245 (5th Cir. 1998) (noting that 42 U.S.C. § 9601 defines "facility … in the broadest possible terms" and "expressly includes … rolling stock"). Nor does Union Tank dispute that Car 48 was carrying butyl acrylates or that Car 48 released butyl acrylates during and following the derailment. Mot. 5-10.

The goal of CERCLA is to hold potentially responsible parties—including *all* current or past owners and operators—strictly liable. 42 U.S.C. § 9607(a)(1)-(4); *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 608-609 (2009) (noting it is "undisputed" that two parties could be held responsible where they "owned the [property] leased by [a third-party] at the time of the contamination"). In connection with the derailment, Union Tank is one of several potentially responsible parties under CERCLA because it is an owner or operator of Car 48.

Union Tank relies on Section 9601(20) to argue that when a hazardous substance is transported by a common carrier, only the common carrier can be the "owner or operator" under CERCLA. Mot. 5-10. That is wrong. While Section 9601(20) creates an exemption for

---

[2] The language "any facility at which substances were disposed of" includes "a facility that emitted hazardous substances," such as Car 48. *See Reading Co. v. City of Philadelphia*, 155 B.R. 890, 906-907 (E.D. Pa. 1993).

"shippers" where the circumstances giving rise to a hazardous substances release were beyond the shipper's control, it does not create an exemption for the actual owner of the facility (here, the railcar). Several courts have recognized that there can be multiple owners or operators for purposes of Section 9601(20)(B), with one court specifically noting that a common carrier is "entitled to recover contribution from any other person who can be characterized as a potentially responsible party under 9607(a) including an owner that does not qualify for the shipper protection of 9601(20)(B)." *United States v. M/V Santa Clara I,* 887 F. Supp. 825, 842 (D.S.C. 1995); *cf. APL Co. Pte. Ltd. v. Kemira Water Sols., Inc.*, 890 F. Supp. 2d 360, 371 (S.D.N.Y. 2012) (holding that only the shipper may escape liability under Section 9601(20)(B)).

Indeed, there would be no reason to exempt shippers from liability at all if only the common carrier could be the owner or operator. Section 9601(20)(B) states that, "[i]n the case of a hazardous substance which has been accepted for transportation by a common or contract carrier … the term 'owner or operator' shall mean such common carrier … [and] the shipper of such hazardous substance shall not be considered to have caused or contributed to any release during such transportation which resulted solely from circumstances or conditions beyond his control." 42 U.S.C. § 9601(20)(B). Thus, a "shipper" may be relieved of responsibility if the release of a hazardous substance resulted "solely from circumstances beyond his control." 42 U.S.C. § 9601(20)(B). But if this condition is not met, the shipper remains a potentially responsible owner or operator—along with the actual owner or operator of the car.

For example, in *APL Co. Pte. Ltd.*, a seller of hazardous material agreed to ship packages of the hazardous material to the buyer via APL, an international steamship company and common carrier. 890 F. Supp. 2d at 364. The hazardous material was released from the packaging in transit while under the care of the common carrier, causing extensive damage to its

ships, and the common carrier brought claims against the seller and consignee, including for CERCLA contribution. *Id.* The court denied the consignee's motion to dismiss on the basis of Section 9601(20), finding that "only [the selling party] could take advantage of Section 9601(20)(B)." *Id.* at 371. Union Tank does not contend it was the selling party, or the shipper, here—Arkema, Incorporated was the shipper. Third-Party Compl. ¶ 49; Mot. 2. As with the consignee in *APL Co. Pte. Ltd.*, Union Tank—the owner of Car 48—cannot be relieved from liability under this provision.

Moreover, nothing in Section 9601(20)(B) suggests, as Union Tank asserts, that a common carrier can be the *only* owner or operator under CERCLA. The provision does not state that other parties are no longer responsible parties under CERCLA. Section 9601(20)(B) merely clarifies that "owners or operators" include carriers, not that the term excludes all others. Congress knows how to exclude parties when it means to do so; indeed, other provisions of CERCLA *do* exclude certain parties from liability. *See* 42 U.S.C. § 9601(20)(D) ("The term 'owner or operator' does not include a unit of State or local government."). That is not what Congress did (or meant to do) here with respect to rolling stock owners.

Further, that Section 9601(20)(B)(ii)'s conditional exemption applies only to shippers, and not to railcar owners or other entities, confirms that "owner or operator" encompasses other potentially responsible parties even when hazardous substances are in transit with a carrier. *See TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent."); *In re Robinson*, 764 F.3d 554, 562 (6th Cir. 2014) ("if a statute specifies exceptions to its general application, other exceptions not explicitly mentioned are excluded").

Finally, Union Tank does not dispute its ownership of Car 48, and only disputes its status as "operator" on the basis that it "ha[d] no control" of the railcar "at the time" of the derailment. Mot. 5-8. But "control" is not so limited and does not require control at the moment of the release—"control" exists when the party "is simply someone who directs the workings of, manages, or conducts the affairs of a facility." *United States v. Bestfoods*, 524 U.S. 51, 66-67 (1998).

Adoption of Union Tank's narrow interpretation of owner or operator would subvert the broad remedial purposes of CERCLA. Union Tank financially benefited from the transport of a hazardous chemical in its railcar and therefore should bear a share of the costs in remedying the environmental harms caused by the release of that chemical. CERCLA "was designed to promote the 'timely cleanup of hazardous waste sites' and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination." *Burlington N. & Santa Fe Ry. Co.*, 556 U.S. at 602 (quoting *Consolidated Edison Co. of N.Y. v. UGI Util., Inc.*, 423 F.3d 90, 94 (2d Cir. 2005)). For that reason, the four classes of potentially responsible parties defined in the statute "are not meant to circumscribe recovery, but rather to ensure that all who may have financially benefited from commercial activities involving hazardous wastes are forced to bear subsequent costs in remedying the environmental harms caused by that waste." *Vine St. LLC v. Keeling*, 361 F. Supp. 2d 600, 606 (E.D. Tex. 2005). As such, "[e]ven if there were ambiguities, [a] Court is to 'construe the statute liberally' in light of CERCLA's 'expansive, remedial purpose.'" *APL Co. Pte. Ltd.*, 890 F. Supp. 2d at 370 (quoting *Schiavone v. Pearce*, 79 F.3d 248, 253 (2d Cir.1996)). Liberally interpreting CERCLA and resolving any ambiguities in light of CERCLA's expansive, remedial purpose means the Court should find that Union Tank is an owner or operator.

Union Tank's recitation of the legislative history regarding the shipper exemption is inapplicable here, as Union Tank was not the shipper of Car 48. Indeed, the legislative history only confirms that the provision is not relevant. Union Tank cites legislative history reflecting that Section 9601(20)(B) was added "in response to the concerns raised by parties who *ship* hazardous substances." Mot. 8 (emphasis added). The lawmakers *only* mentioned shippers and product owners, not railcar owners: Senator Stafford stated that in the case of a railroad derailment, "circumstances are clearly beyond the control of the owner of the product [and thus] the owner should not be liable." Committee on Environment & Public Works, A Legislative History of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (Superfund), Public Law 96-510, 1983 WL 506687, at *53 (Aug. 31, 1983) (CERCLA-LH 9-C). It follows, then, that Congress did exactly what it meant to do; it provided a conditional exemption for product shippers who have no control over a release, while leaving other parties' obligations intact. For the same reason, Union Tank's cited precedent is inapposite, because it concerns shippers, not railcar owners. Mot. 9. Norfolk Southern does not dispute that certain shippers can be conditionally exempt from CERCLA liability, but that exception does not apply to railcar owners like Union Tank.

Read correctly, there is nothing in Section 9601(20)(B) that limits Norfolk Southern's ability to hold *all* other potentially responsible parties—including Union Tank—responsible under CERCLA. And here, Norfolk Southern has alleged that Union Tank was responsible as the owner of Car 48. Third-Party Compl. ¶¶ 14, 164. Nothing more is needed to survive Union Tank's motion.

### III. Norfolk Southern Has Plausibly Stated A Section 113 Claim For Declaratory Judgment

Union Tank argues that Norfolk Southern's claim for a declaratory judgment under Section 113 "should also be dismissed because it cannot stand independent of Norfolk Southern's substantive CERCLA claims." Mot. 10. Union Tank's premise is wrong. As explained above, Norfolk Southern has adequately pled viable CERCLA claims. Accordingly, Norfolk Southern has also stated a viable claim for declaratory judgment under Section 113(g). *See GenCorp, Inc. v. Olin Corp.*, 390 F.3d 433, 451 (6th Cir. 2004) (recognizing the viability of "declaratory judgments concerning future response costs in § 107 and § 113(f) suits").

### CONCLUSION

Union Tank Car Company's motion to dismiss should be denied. To the extent the Court grants the motion, Norfolk Southern respectfully requests leave to amend its Third-Party Complaint.[3]

Dated: November 14, 2023

Respectfully submitted,

By: /s/ *Davina Pujari*
Davina Pujari (admitted *pro hac vice*)
Christopher A. Rheinheimer (admitted *pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Tel.: (628) 235-1136
Fax: (628) 235-1001
Davina.Pujari@wilmerhale.com
Chris.Rheinheimer@wilmerhale.com

---

[3] "[T]he case law in this Circuit manifests liberality in allowing amendments to a complaint." *Parchman v. SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018) (internal quotation marks omitted).

Edward O'Callaghan (admitted *pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel.: (202) 663-6956
Fax: (202) 663-6363
Edward.O'Callaghan@wilmerhale.com

Claire Guehenno (admitted *pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel.: (212) 295-6524
Fax: (212) 230-8888
Claire.Guehenno@wilmerhale.com

Louis L. McMahon (0067378)
MCMAHON DEGULIS LLP
812 Huron Road, Suite 650
Cleveland, OH 44115
Tel.: (216) 367-1407
lmcmahon@mdllp.net

*Counsel for Defendants and Third-Party Plaintiffs*

# CERTIFICATE OF LOCAL RULES 7.1 COMPLIANCE

I certify that this Opposition adheres to the page limitations set forth in Local Rule 7.1(f) for standard cases because it does not exceed 20 pages in length.

                     */s/ Davina Pujari*
                     Davina Pujari (admitted *pro hac vice*)
                     WILMER CUTLER PICKERING
                        HALE AND DORR LLP
                     One Front Street, Suite 3500
                     San Francisco, CA 94111
                     Tel.: (628) 235-1136
                     Fax: (628) 235-1001
                     Davina.Pujari@wilmerhale.com

                     *Counsel for Defendants and Third-Party Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2023, I caused a copy of the foregoing to be filed with the Clerk of the Court using the Court's CM/ECF electronic filing system, which will provide electronic notice to all counsel of record.

    /s/ Davina Pujari
Davina Pujari (admitted *pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Tel.: (628) 235-1136
Fax: (628) 235-1001
Davina.Pujari@wilmerhale.com

*Counsel for Defendants and Third-Party Plaintiffs*