UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THE STATE OF OHIO, ex rel. DAVE YOST, OHIO ATTORNEY GENERAL ) ) ) | JUDGE JOHN R. ADAMS |
| and ) ) | CASE NO: 4:23-CV-00517 |
| THE UNITED STATES OF AMERICA, ) *Plaintiffs*, ) ) ) | |
| vs. ) ) | |
| NORFOLK SOUTHERN RAILWAY COMPANY, et al., ) ) | **ORDER AND DECISION** (Resolving Docs. 73, 76, 77, 79, 80, 85) |
| *Defendants/Third-Party Plaintiffs*, ) ) ) | |
| vs. ) ) | |
| OXY VINYLS LP, GATX CORP., GENERAL AMERICAN MARKS CO., TRINITY INDUSTRIES LEASING CO., SMBC RAIL SERVICES LLC, DOW CHEMICAL INC., UNION TANK CAR CO., ) ) ) ) ) ) ) | |
| *Third-Party Defendants* ) | |

Pending before this Court are Third-Party Defendants Dow Chemical (Doc. 73), Union Tank (Doc. 76), SMBC Rail Services (Doc. 79), Oxy Vinyls (Doc. 80), Trinity Industries (Doc. 77), and GATX and General American Marks Co.'s (Doc. 85) motions to dismiss Norfolk Southern's Third-Party Complaint pursuant to Fed.R.Civ.P. 12(b)(6). Norfolk Southern has filed its Opposition to these Motions (Docs. 94, 95, 96, 97, 98, 99), and the Third-Party Defendants have

1

replied (Docs. 101, 102, 103, 104, 105, 106, 107, 108, 109).

For the reasons set forth below, the Court GRANTS these motions and DISMISSES the Third-Party Complaint.

I. STATEMENT OF FACTS

On February 3, 2023, a Norfolk Southern freight train, Train 32N, was traveling on Norfolk Southern's Fort Wayne Line through East Palestine, Ohio, when a hot bearing detector ("HBD") issued a critical alarm regarding high temperatures. Doc. 31, ¶33, ¶44. Accordingly, the train decelerated. Doc. 31, ¶45. During the deceleration, the overheated bearing on Car 23 failed and the car derailed. Doc. 31, ¶45. This subsequently resulted in the derailing of 38 of the train's 149 rail cars. Doc. 31, ¶46. Five of the 38 derailed railcars carried vinyl chloride, a hazardous substance. Doc. 31, ¶53.

The derailment caused fires to spread and engulf the derailed cars. Doc. 31, ¶80, ¶84. The derailed cars were venting vinyl chloride. Doc. 31, ¶81. Due to the venting of the flammable gas along with the fires, critical portions of the rail cars were melting. Doc. 31, ¶82. The fires and the venting continued in the days following the derailment. Doc. ¶84. On-site responders assessed the damage to the cars to determine the next steps. Doc. 31, ¶85. Ultimately, after reviewing the options, it was determined that the safest course of action was to conduct a controlled vent and burn of the five railcars containing the vinyl chloride. Doc. 31, ¶102. The released vinyl chloride burned from approximately 5:00 pm on February 6, 2023 through the night. Doc. 31, ¶102, 103. "The vent and burn was executed effectively and resulted in no casualties." Doc. 31, ¶106.

On February 21, 2023, the U.S. Environmental Protection Agency determined the

derailment site "posed an imminent and substantial threat to human health and the environment and issued a Unilateral Administrative Order to Norfolk Southern" under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), Section 106(a), that required Norfolk Southern to take certain response and remediation efforts. Doc. 31, ¶ 155–56.

## II. THE THIRD-PARTY COMPLAINT

On March 14, 2023, the U.S. government and the State of Ohio filed the instant action against Norfolk Southern to recover response costs associated with the derailment, asserting claims under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), in addition to other federal and state environmental laws. Doc. 1.

On June 30, 2023, Norfolk Southern filed its Third-Party Complaint alleging claims under CERCLA as well as contribution and negligence claims against various alleged shippers and owners of the railcars that derailed on Norfolk Southern's train. Doc. 31. Norfolk Southern asserts CERCLA liability against the following Third-Party Defendants as railroad car owners: Dow Chemical, Union Tank, Trinity Industries, SMBC Rail Services, Oxy Vinyls, Gatx Corp, and General American Marks Co. ("Railcar Owners"). Additionally, Norfolk Southern asserts CERCLA liability against Oxy Vinyl as a Shipper.

In essence, Norfolk Southern's Third-Party Complaint is an effort to establish liability on behalf of the Railcar Owners and Shippers so as to share and/or shift the cost of the environmental cleanup of East Palestine, Ohio. If successful, Norfolk Southern would no longer bear the sole responsibility for cleanup but would share the costs with the various shippers and owners.

3

Because this matter is of great public interest, the Court finds it imperative to reiterate that Norfolk Southern's Third-Party Complaint against these individual Railcar Owners and Shippers is Norfolk Southern's attempt to share the cost of cleanup. It does not change the overall cost allocated for cleanup. More importantly, the dismissal of these claims at this stage of the litigation will not impact the ultimate amount of cleanup that will occur, nor will it delay cleanup from moving forward expeditiously.

For the reasons set forth below, the Court concludes that Norfolk Southern fails to state a claim against the Third-Party Defendants. The Court notes that such arguments amongst potential co-defendants does not best serve the incredibly pressing nature of this case and does not change the bottom line of this litigation; that the contamination and damage caused by the derailment must be remediated. A contrary conclusion would result in likely duplicative discovery on causation issues that will not serve to move the needle on this case to a timely and successful resolution.

### III. LAW

The Third-Party Defendants move to dismiss the claims against them pursuant to Fed.R. 12(b)(6). The Sixth Circuit stated the standard for reviewing a motion to dismiss in *Assn. of Cleveland Fire Fighters v. Cleveland*, 502 F.3d 545 (6th Cir. 2007) as follows:

> The Supreme Court has recently clarified the law with respect to what a plaintiff must plead in order to survive a Rule 12(b)(6) motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (citations and quotation marks omitted). Additionally, the Court emphasized that even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (internal citation and quotation marks omitted). In so holding, the Court

> disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (recognizing "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), characterizing that rule as one "best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Twombly*, 550 U.S. at 563.

*Id.* at 548. Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (internal quotations omitted).

If an allegation is capable of more than one inference, this Court must construe it in the plaintiff's favor. *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) (citing *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993)). This Court may not grant a Rule 12(b)(6) motion merely because it may not believe the plaintiff's factual allegations. *Id.* Although this is a liberal standard of review, the plaintiff still must do more than merely assert bare legal conclusions. *Id.* Specifically, the complaint must contain "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quotations and emphasis omitted).

    **A.**    **CERCLA COST RECOVERY (SECTION 107)- COUNTS ONE AND TWO**

"CERCLA contains several provisions that distribute cleanup costs among the relevant parties [(potentially responsible parties ("PRP"))]." *Georgia-Pacific Consumer Prods. LP v. NCR Corp.*, 32 F.4th 534, 541 (6th Cir. 2022). Norfolk Southern asserts liability under two distinct CERCLA provisions, Section 107(a)(1), (2) and Section 113(f)(1), (f)(3)(B). *Stratus Redtail Ranch, LLC v. IBM*, 2022 U.S. Dist. LEXIS 107782, *4-5. Section 107 (42 USC §9607(a)) is a

claim for cost recovery, while Section 113 (42 U.S.C. §9613(f)) is a claim for contribution to the costs. "These two statutory rights under §§107 and 113(f) are mutually exclusive." *Georgia-Pacific Consumer Prods. LP v. NCR Corp.*, 32 F.4th 534, 541 (6th Cir. 2022).

> [T]he remedies available in §§ 107(a) and 113(f) complement each other by providing causes of action 'to persons in different procedural circumstances.' *Consolidated Edison*, 423 F.3d at 99; see also *E.I. DuPont de Nemours*, 460 F.3d at 548 (Sloviter, J., dissenting). Section 113(f)(1) authorizes a contribution action to PRPs with common liability stemming from an action instituted under § 106 or § 107(a). And § 107(a) permits cost recovery (as distinct from contribution) by a private party that has itself incurred cleanup costs. Hence, a PRP that pays money to satisfy a settlement agreement or a court judgment may pursue § 113(f) contribution. But by reimbursing response costs paid by other parties, the PRP has not incurred its own costs of response and therefore cannot recover under § 107(a). As a result, though eligible to seek contribution under § 113(f)(1), the PRP cannot simultaneously seek to recover the same expenses under § 107(a).

*United States v. Atl. Research Corp.*, 551 U.S. 128, 139 (2007). The Sixth Circuit has explained that "if a party *may* bring a suit under §113(f), it *must* do so." *Georgia-Pacific Consumer Prods. LP v. NCR Corp.*, 32 F.4th 534, 541 (6th Cir. 2022). Thus, Norfolk Southern cannot proceed with both claims. See *Hobart Corp. v. Waste Mgmt. of Ohio*, 758 F.3d 757, 767 ("Therefore, it is sensible and consistent with the text to read § 113(f)'s enabling language to mean that if a party is able to bring a contribution action, it must do so under § 113(f), rather than § 107(a).").

There is no question here that Norfolk Southern may bring a suit under Section 113(f)(1) which states:

> Any person may seek contribution from any other person who is liable or potentially liable under section 107(a) [42 USCS § 9607(a)], during or following any civil action under section 106 [42 USCS § 9606] or under section 107(a) [42 USCS § 9607(a)]. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution

in the absence of a civil action under section 106 or section 107 [42 USCS § 9606 or 9607].

42 USCS § 9613. Norfolk Southern acknowledges that "[t]he United States and Ohio seek reimbursement of their response costs through their Section 107 claims against Norfolk Southern, so Norfolk Southern may properly seek reimbursement under Section 113 against other PRPs if it is found liable for those response costs." Doc. 98, p. 4. Because Norfolk Southern may not proceed under both Section 107 and 113, its claims pursuant to Section 107, Counts One and Two, are hereby DISMISSED.

### B. CERCLA CONTRIBUTION (SECTION 113)- COUNTS THREE AND FOUR

To state a viable CERCLA claim under Section 113(f), Norfolk Southern must allege: (1) the property is a "facility"; (2) there has been a "release" or "threatened release" of a hazardous substance; (3) the release has caused the plaintiff to incur "necessary and consistent" costs of response; and (4) the defendant is in one of four categories of PRPs. See *United States v. Consolidation Coal Co.*, 345 F.3d 409, 413 (6th Cir. 2003). CERCLA makes four classes of covered persons, aka PRPs, strictly liable for environmental contamination. 42 U.S.C. § 9607(a); *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 608, 129 S. Ct. 1870, 173 L. Ed. 2d 812 (2009).

Norfolk Southern asserts that the Third-Party Defendants are PRPs[1] based upon the

---

[1] Through the various motions to dismiss, the Third-Party Defendants note that the only PRP category that Norfolk Southern alleges applies is 42 U.S.C. §9607(a)(2)/Section 107(a)(2). See, e.g., Doc. 76-1, p. 6, Doc. 73-1, p. 4. Norfolk Southern asserts that it has sufficiently plead that Section 9607(a)(1)/Section 107(a)(1) also applies. However, upon review of the Third-Party Complaint, Norfolk Southern sets forth the following recitation of law:

following category:

> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of[.]

42 U.S.C. §9607(a)/Section 107(a)(2); Doc. 31, ¶¶161, 162, 164, 172.

Even presuming the facts alleged in the Third-Party Complaint as true, Norfolk Southern cannot establish that any of the Third-Party Defendants "**owned or operated** any facility at which such hazardous substances were disposed of[.]" Norfolk Southern asserts CERCLA liability against the following Third-Party Defendants as railroad car owners: Dow Chemical, Union Tank, Trinity Industries, SMBC Rail Services, Oxy Vinyls, Gatx Corp., and General American Marks Co ("Railcar Owners"). Additionally, Norfolk Southern asserts CERCLA liability against Oxy Vinyl as a shipper.

### 1. CERCLA OWNER AND SHIPPER LIABILITY

Norfolk Southern maintains that "at the time of disposal of any hazardous substance" the Railcar Owners and Shippers "owned or operated any facility at which such hazardous substances were disposed of" and are therefore liable under CERCLA. 42 U.S.C. §9607(a)(2); Doc. 31,

---

162. Potentially responsible parties include the present 'owner and operator' of the facility, along with 'any person who at the time of disposal of any hazardous substance owner or operated' the facility. 42 U.S.C. § 9607(a).

This is not, however, an allegation that any of the Third-Party Defendants are liable as PRP's under either section, but rather just a statement of law. The Third-Party Complaint then goes on to specifically allege, for example that "Railcar Owner Defendants are persons liable under Section 107(a)(2) of CERCLA, 42 U.S.C. §9607(a)(2)" and "Oxy Vinyls is a person liable under Section 107(a)(2) of CERCLA, 42 U.S.C. §9607(a)(2)." Doc. 31, ¶162, 172. Thus, Norfolk Southern made it clear that its claims were based on Section 9607(a)(2)/Section 107(a)(2).

8

¶¶161, 162, 164, 172.

Regarding the transport of hazardous substances, CERCLA specifically defines an owner or operator as follows:

> (B) In the case of a hazardous substance which has been accepted for transportation by a common or contract carrier and except as provided in section 9607(a)(3) or (4) of this title, (i) the term "owner or operator" shall mean such common carrier or other bona fide for hire carrier acting as an independent contractor during such transportation, (ii) the shipper of such hazardous substance shall not be considered to have caused or contributed to any release during such transportation which resulted solely from circumstances or conditions beyond his control.

42 U.S.C. §9601 (20)(B). In its Third-Party Complaint, Norfolk Southern expressly admits that it "is a common carrier, which means it is required by federal law to accept and transport innumerable materials, including chemicals that are used to make everyday products." Doc. 31, Introduction, p. 2. Section 9601(20)(B) "divests the actual title owners or shippers of hazardous substances their CERCLA liability ownership after the hazardous substances have been accepted by common carrier[,]" absent allegations that the release was caused by circumstances within control of the title owners or shipper. *United States v. M/V Santa Clara I*, 887 F. Supp. 825, 839-840 (S.C. 1995)[2]. Thus, under the specific definition of owners or operators transporting

---

[2] Quoting the legislative history of 42 U.S.C. §9601(20)(B) as follows:

> During the course of transporting hazardous and toxic materials, accidents occur when the circumstances were beyond the control of the owner of the substance involved. The most common example of such incidents is a railroad derailment resulting from tracks which are inadequate for the loads being shipped over them or through the negligence of railroad personnel. Since such circumstances are clearly beyond the control of the owner of the product, the owner should not be held liable.

hazardous substances, Norfolk Southern is the owner or operator responsible for any release that occurred from circumstances and conditions beyond the control of the Railcar Owners and Oxyvinyl as a Shipper. 42 U.S.C. §9601(20)(B).

In its Third-Party Complaint, Norfolk Southern does not allege that any of the Third-Party Defendants exercised control over the condition which resulted in the derailment that led to the release of the hazardous chemicals on February 3, 2023.

In fact, Norfolk Southern appears to concede that it did not make such allegations by stating that whether the Third-Party Defendants had anything to do with the underlying cause of the derailment is "irrelevant [because] CERCLA imposes strict liability on all potentially responsible parties ('PRPs') to ensure the proper cleanup of the site, including 'owners or operators' of the

---

> However, in those cases where the product owner does exercise control over the condition which resulted in the release, then liability should be imposed. It is intended that liability be imposed on the product owner only where there has been some culpability and reasonable action on the part of said product owner would have prevented the release . . . .
>
> The . . . amendment clarifies the intent with regard to liability for an accident during transportation of fertilizers or any other potentially harmful substance [Sec. 101(20)(B)]. This amendment makes it clear that if a manufacturer exercises good care, and if an accident is caused by events wholly outside the manufacturer's control, then the manufacturer would not be liable for damage caused by a spill. However, if a manufacturer fails to exercise due care (such as by failing to properly lable [sic] or properly package) and if that failure contributes to damage, then the manufacturer could be held liable.

Staff of Senate Comm. on Env't & Pub. Works, 96th Cong. 1st Sess., A Legislative History of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (Superfund), Pub. Law 96-510, (Comm. Print 1983), reprinted in 3 Arnold & Porter Legislative History: P.L. 96-510, at 66 (Appendix II) (available on Westlaw in CERCLA-LH database) (hereinafter "Arnold & Porter")

facility where the disposal occurred." Doc. 98, p. 1. This argument ignores the specific definition set forth §9601(20)(B), as set forth above.

In its description of the derailment, Norfolk Southern explained that "[o]n February 3, 2023, Train 32N included a railcar owned by General American Marks Company [Car 23]). A bearing on that railcar failed and the car derailed. In turn, several railcars on Train 32N derailed. Norfolk Southern did not manufacture or own the bearing; did not manufacture, own, or lease the derailed railcar; and did not manufacture, own, or load the contents of that railcar." Doc. 31, Intro, p. 3. Thus, at best, Norfolk Southern alleges that the derailment was caused by an overheated roller-bearing on Car 23, owned by General American Marks Co. Doc. 31, ¶36-45. Subsequently, 38 railcars derailed, relevant to the Third-Party Defendants as follows:

a. Car 26, TILX402025, carrying vinyl chloride. [Owned by **Trinity Industries Leasing Co** and shipped by **Oxy Vinyls**. Doc. 31, ¶53a]
b. Car 27, OCPX80235, carrying vinyl chloride. [Owned and shipped by **Oxy Vinyls**. Doc. 31, ¶53b]
c. Car 28, OCPX80179, carrying vinyl chloride. [Owned and shipped by **Oxy Vinyls**. Doc. 31, ¶53b]
d. Car 29, GATX95098, carrying vinyl chloride. [Owned by **GATX Corporation** and shipped by **Oxy Vinyls**. Doc. 31, ¶53c]
e. Car 34, SHPX211226, carrying ethylene glycol monobutyl ether. [Owned by **SMBC Rail Services LLC**. Doc. 31, ¶49a]
f. Car 36, DOWX73168, carrying 2-ethyl hexyl acrylate. [Owned by **Dow Chemical Inc.** and shipped by Union Carbide Corporation, a Dow Chemical Incorporated subsidiary. Doc. 31, ¶49b]
g. Car 48, UTLX205907, carrying butyl acrylates. [Owned by **Union Tank Car Company** and shipped by Arkema, Incorporated. Doc. 31, ¶49c]
h. Car 53, OCPX80370, carrying vinyl chloride. [Owned and shipped by **Oxy Vinyls.** Doc. 31, ¶8].

Thus, presuming the facts in the Third-Party Complaint as true, the derailment of the train was set off by an overheated, failed, rolling bearing on Car 23, which in turn caused the subsequent cars to derail and sustain damage. Notably, Norfolk Southern has not brought any CERCLA claims

against General American Mark Company. Instead, it brings its CERCLA claims against the Railcar Owners and Shippers of the subsequently derailed cars but fails to assert any "culpability or lack of due care, which contributed in any way to the release, or a failure of the shipper to exercise reasonable action which would have prevented the release." *United States v. M/V Santa Clara I*, 887 F. Supp. 825, 842. In fact, Norfolk Southern makes it clear that the subsequent Cars were damaged as a result of the derailment, rather than contributing to the derailment itself.

The Court notes that Norfolk Southern brings negligence claims against General American Marks Co., Oxy Vinyls GATX Corp. and Trinity Industries Leasing Co. However, this Court declines to incorporate any alleged negligence stated in those claims into causation allegations to potentially support Norfolk Southern's CERCLA claims. To do so does nothing to move the needle on this case to a timely and successful resolution. In fact, such a reading of the Third-Party Complaint would serve only to muddy the waters. It would require increased and likely duplicative discovery on causation issues that will not serve to change the bottom line of this litigation: that the contamination caused by the derailment of the Norfolk Southern train on February 3, 2023 must be cleaned up.

Accordingly, Norfolk Southern's CERCLA contribution claims (Counts Three and Four) are DISMISSED.

C.    **CERCLA DECLARATORY RELIEF- COUNT FIVE**

Norfolk Southern asserts that it is entitled to "declaratory judgment that Third-Party Defendants are liable for any further response costs Norfolk Southern incurs." Doc. 31, ¶188. This claim is not an independent cause of action, and "hinges on the viability of the substantive CERCLA claims." *Hobart Corp. v. Waste Mgmt. of Ohio*, 923 F. Supp. 2d 1086, 1097 (S.D.O.H

2013). This Court has dismissed Norfolk Southern's CERCLA claims, and therefore Count Five is hereby DISMISSED.

### D. VARIOUS STATE LAW CLAIMS- COUNTS SIX, SEVEN, EIGHT, NINE AND TEN

The Court has dismissed Norfolk Southern's CERCLA claims, and therefore declines to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3). Accordingly, Norfolk Southern's Counts Six, Seven, Eight, Nine and Ten are hereby DISMISSED.

### IV. CONCLUSION

For the reasons set forth above, Norfolk Southern's Third-Party Complaint is DISMISSED in its entirety. Accordingly, Third-Party Defendants Oxy Vinyls LP, GATX Corp., General American Marks Co., Trinity Industries Leasing Co., SMBC Rail Services LLC, Dow Chemical Inc., and Union Tank Car Co. are hereby DISMISSED.

**IT IS SO ORDERED.**

| | |
|---|---|
| **March 6, 2024** | */s/ John R. Adams* |
| **Date** | **John R. Adams** |
| | **U.S. District Judge** |