**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STATE OF OHIO, et al., , | ) | CASE NO. 4:23 CV 00517 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | <u>ORDER</u> |
| NORFOLK SOUTHERN CORP., et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on Robert Figley and Barbara Adams ("Intervenors") motion to intervene pursuant to Civ. R. 24(a) and (b). Doc. 273.  Plaintiff State of Ohio and Defendants United States of America and Norfolk Southern have each individually opposed Intervenors' motion (Docs. 285, 287, 288), and Intervenors have replied (Doc. 293).

**I.      Introduction**

On March 14, 2023, the U.S. government and the State of Ohio filed the instant action against Norfolk Southern to recover response costs associated with the derailment, asserting claims under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), in addition to other federal and state environmental laws. Doc. 1. On October 10, 2024 the United States filed a motion for entry of a consent decree. Doc. 162. On July 8, 2025, the Court held a status conference to discuss potential concerns about the proposed consent decree.  Doc. 219.

On November 17, 2025, Robert Figley and Barbara Adams filed their motion for leave to intervene in this matter.  Doc. 273.  Figley is a resident and business owner in East Palestine, Ohio who asserts he was and continues to be directly affected by the derailment and vent and burn. Doc.

1

273, p. 21. Figley contends that his business and residential property have been greatly affected by contamination of nearby waterways. Id. Adams is a resident of New Waterford, Ohio who also asserts that she was and continues to be directly affected by the derailment and vent and burn. Id. She contends that she has suffered significant health effects, including two kinds of cancer, due to exposure to contamination.  Id.

Intervenors raise concerns about the integrity of Norfolk's and EPA's soil sampling plan, and state that more recent data disputes the results.  Thus, they take issue with the proposed consent decree that relies on this potentially faulty data.  Intervenors contend that they "will be adversely affected by the disposition of this action against Norfolk Southern[.]" Doc. 273, p. 15.

## II.     Article III Standing

Before the Court can consider the Intervenors' motion, it must determine if the Intervenors have Article III Standing. *Town of Chester v. Laroe Estates*, 581 U.S. 433, 440 (2017). "[A]s a threshold matter, while a proposed intervenor generally 'need not have the same standing necessary to initiate a lawsuit,' *Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999), it must still 'meet the requirements of Article III if the intervenor wishes to pursue relief not requested by a plaintiff,' *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 435, 137 S. Ct. 1645, 198 L. Ed. 2d 64 (2017)." *Friends of George's, Inc. v. Mulroy*, No. 23-5611, 2023 U.S. App. LEXIS 24666, at *2-3 (6th Cir. Sep. 15, 2023).

> Here, Intervenors do not seek separate affirmative relief. They do not seek their own money judgment. They do not seek a separate injunction directing Norfolk Southern to remediate their specific properties. They do not assert independent causes of action under different legal theories. Instead, Intervenors seek precisely the same relief the United States seeks: a determination by this Court whether the proposed Consent Decree should be entered. The difference is that the United States urges approval while Intervenors urge rejection (or modification). But the relief sought from the Court is identical: judicial review and decision on the Consent Decree under the applicable 'fair, reasonable, adequate, and consistent with public interest'

2

standard.

Doc. 293, pp. 20-21. The Court concludes that Intervenors do not seek separate relief that requires meeting the requirements of Article III.  Even assuming Intervenors lacked standing, this Court concludes below that they should be granted permissive intervention pursuant to Fed.R.Civ.P 24(b).[1] See *Friends of George's, Inc.,* supra at *4.

### III.    Civil Rule 24(a): Intervention of Right

Federal Rule of Civil Procedure 24(a) allows a non-party to intervene in an action as of right in two ways: either that they were "given an unconditional right to intervene by a federal statute" (Rule 24(a)(1) OR by establishing the following four elements: (1) timeliness of the application to intervene; (2) the applicant's substantial legal interest in the case; (3) impairment of the applicant's ability to protect that interest in the absence of intervention; and (4) inadequate representation of that interest by parties already before the court (Rule 24(a)(2). *Providence Baptist Church v. Hillandale Committee, Ltd.*, 425 F.3d 309, 315 (6th Cir.2005). The absence of even one factor will compel the Court to deny a movant's request. *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir.2005) (quoting *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir.1989)).

#### A.    Timeliness

Under either theory of intervention of right, Intervenors must file a timely motion. Rule 24(a). The timeliness of an application for intervention must be evaluated in light of the purpose for which intervention is sought, the length of time that the intervenor has known about the interest in the litigation, whether any of the original parties to the litigation would be prejudiced, and the stage to which the lawsuit has progressed when intervention is sought. *Stotts v. Memphis Fire Dep't*, 679 F.2d 579, 584 (6th Cir.1982).

---

[1] "[T]he stringent requirements for standing to intervene as of right do not apply in cases of permissive

3

Generally, a party seeking to intervene in a matter should apply when it first becomes aware of the action.  See *Stotts* at 584 n. 3 However, "'timeliness is to be determined from all the circumstances' and 'the point to which [a] suit has progressed is ... not solely dispositive.'" *Cameron v. EMW Women's Surgical Center*, 595 U.S. 267, 279-80 (2022) (quoting *NAACP v. New York*, 413 U.S. 345 (1973)). The "most important circumstance relating to timeliness is that [the applicant] sought to intervene 'as soon as it became clear' that [their] interests 'would no longer be protected' by the parties in the case. *Id*. at 280 (quoting *United Airlines Inc. v. McDonald*, 432 U.S. 385, 394 (1977)).

The instant complaint was filed by the State of Ohio on March 14, 2023, with the amended complaint against Norfolk Southern filed on May 19, 2023. Doc. 1, 22. A third-party complaint was filed on June 30, 2023. Doc. 31. On March 6, 2024, the Court dismissed the third-party complaint. Doc. 113. A case management conference was held on April 11, 2024. Doc. 131. On October 10, 2024 the United States filed a motion for entry of a consent decree. Doc. 162. On March 21, 2025, the Court granted the parties joint motion to extend the previously set case management deadlines to complete expert depositions by July 31, 2025 and dispositive motions by September 20, 2025.

On July 8, 2025, the Court gave notice of a telephone conference to discuss the proposed consent decree. Doc. 213. Specifically, the Court noted:

> While that matter has remained pending, numerous entities have reported on circumstances that could conceivably impact the Court's consideration of the Decree and/or the views of objectors. For example, the Cleveland Plain Dealer reported on a $10 million research initiative that the National Institute of Health announced to study the long-term health issues resulting from the derailment. The New York Post and News Nation reported that FEMA officials were concerned over a possible cancer cluster and that dioxin testing was done using faulty equipment. These are, of course, not the universe of reporting on the topic because many articles have been written, and much information has brought to light subsequent to the lodging of the Consent Decree.

intervention. *Friends of George's, Inc. v. Mulroy*, 2023 U.S. App. LEXIS 24666, at *4.

Doc. 213. Due to the new information, the Court ordered counsel to "be prepared to discuss whether the comment period for the proposed Decree should be reopened, whether supplemental briefing is appropriate based on any of the newly-reported-on information[.]" Id.  At the hearing, the State of Ohio indicated that it was seeking *more* than the federal consent decree allowed.  Doc. 219, p. 4. "Specifically with regard to the expert discovery, Your Honor, we would be seeking more in terms of long-term healthcare and monitoring for the residents of East Palestine." Id. The United States indicated that it did not participate in discovery because it had reached a settlement with Norfolk Southern. Doc. 219, p. 5. The United States indicated that it had, however, reviewed copies of the expert reports and stated that "[t]here is nothing we have seen in either party's expert reports that changes our mind or makes us feel that there is anything in the consent decree that is lacking or needs to be changed." Doc. 219, p. 6.

The Court asked the parties specifically about media accounts and emails referencing particular health concerns for the residents of East Palestine. Doc. 219, p. 6.  The State of Ohio agreed that those accounts support the State of Ohio's request for additional relief above and beyond limits in the federal consent decree. Doc. 219, p. 6.  The United States explained "[h]aving reviewed those accounts, we see that there are really no issues being raised. We do understand that there are concerns about future health harms, however, those are not new concerns." Doc. 219, p 7. The United States further stated: "the fact of the matter is that all of the scientific data and the results of air, water, and soil sampling have concluded that there is no exposure as a result of the derailment that is known to lead to long-term health effects. That is the state of the data now." Doc. 219, p. 16.

From August to November 21, 2025, the State of Ohio and Norfolk Southern engaged in extensive motions practice, much of which is still pending before this Court.  Intervenors filed their motion on November 17, 2025. Doc. 273.

5

Intervenors contend that the need for intervention did not arise until at least the July 2025 status conference wherein the parties informed the Court that the new information pointed out by the Court would not affect the Consent Decree.  Doc. 273, p. 17. "This response made clear that the existing parties would not adequately represent Movants' interest, thereby triggering the need for intervention." Id.

Further, Intervenors note that documents released in July 2025 through Freedom of Information Act (FOIA) raised concerns about the integrity of Norfolk's and EPA's soil sampling plan. Doc. 273, p. 9. For example, the EPA approved the removal of 5 chemical compounds, several of which are known carcinogens, from its soil sample plan. Doc. 273. P. 9. The EPA also changed its baseline sample locations to be taken from areas potentially impacted by the toxic plumes, which, Intervenors argue, compromises the entire sampling plan. Id.

Intervenors also explain that an independent environmental expert, Scott Smith conducted serial testing in East Palestine from February 2023 through August 2025. Id. In his October 12, 2025 affidavit, he opined that contamination persists and, in some locations, has gotten worse.  Doc. 273, p. 10, citing 273-3.  He notes that "soil samples from August 2025 continue to show dioxins, furans and PAHs that far exceed background (control) samples.  For example, one sample in the impact zone resulted in 3,973 total semi-volatile organic compounds as compared to the control sample with 136 total semi-volatile organic compounds." Doc. 27-3, ¶5. He notes that areas he has continued to test over time show increase contamination after April 18, 2023 when the EPA and/or Norfolk Southern dioxin testing ended." Doc. 273-3, ¶7. Dr. Smith concludes:

> These independent results demonstrate ongoing environmental contamination in East Palestine that has not been adequately remediated or fully characterized by government or Norfolk Southern testing. My findings are consistent with community concerns regarding long-term risks and the need for continued, transparent testing and remediation efforts.

Doc. 273-3, ¶11. Intervenors filed the instant motion one month after Dr. Smith's affidavit was prepared. They sum up their timeliness argument as follows:

> The motion is timely because the need for intervention only became apparent through three triggering events between May and August 2025: (1) May 2025 FOIA disclosures revealing EPA approved Norfolk Southern's request to exclude five carcinogenic compounds from testing and directed that baseline control samples be taken from contaminated areas; (2) the July 15, 2025 status conference at which the United States explicitly stated it would not modify the Consent Decree despite new evidence; and (3) August 2025 independent testing documenting catastrophic ongoing contamination at levels 2,821%-4,825% above controls. Intervenors filed within two months of receiving the August 2025 testing results, a timeframe courts consistently find prompt.

For the above reasons, the Court concludes that the instant motion is timely.

### B.      Rule 24(a)(2)

Intervenors contend that they meet both prongs of Rule 24(a) for intervention of right; that they have an unconditional right to intervene by federal statute and they have a unique property interest that is not adequately represented by the existing parties. The Court concludes that because the Intervenors have established a unique property interest that is not adequately represented by the existing parties, thus meeting the requirement of Rule 24(a)(2), it need not address whether they have an unconditional right to intervene under the Clean Water Act or CERCLA.

Under Rule 24(a)(2), Intervenors have a right to intervene if they:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Accordingly, Intervenors must establish the following elements: (1) timeliness of the application to intervene; (2) the applicant's substantial legal interest in the case; (3) impairment of the applicant's ability to protect that interest in the absence of intervention; and (4) inadequate representation of that interest by parties already before the court (Rule 24(a)(2). *Providence Baptist*

*Church*, 425 F.3d at 315.

### 1.      Timeliness

As discussed above, the Court concludes that the motion is timely.

### 2.      Substantial Legal Interest

Intervenors must show that that they have a substantial interest in the subject matter of this litigation. Rule 24(a)(2).  The Sixth Circuit has "repeatedly cited with approval decisions of other courts rejecting the notion that Rule 24(a)(2) requires a specific legal or equitable interest." (internal citations and quotations omitted) *Grutter v. Bollinger,* 188 F.3d 394, 398 (6th Cir. 1999).

Intervenors contend that they have a substantial legal interest in this suit as follows:

> Property owners whose land is contaminated by hazardous waste have substantial legal interests for intervention purposes. *LaBauve v. Olin Corp.*, 231 F.R.D. 632, 65123 (S.D. Ala. 2005); *Adinolfe v. United Technologies Corp.*, 768 F.3d 1161 (11th Cir. 2014). Figley owns contaminated business and residential property; Adams suffered Stage III-IV cancer from toxic exposure. (ECF Nos. 273-5, 273-6.) Both face ongoing exposure. These property and health interests plainly constitute substantial legal interests.

Doc. 293, p. 23; see also Doc. 273, p. 21. The State of Ohio and the United States contend that this interest is not enough to establish interest in the subject matter of THIS litigation.  Doc. 288, p. 14; Doc. 287, p. 4. Intervenors further state that

> Moreover, Intervenors' interests extend beyond individual property to ensuring environmental laws are enforced based on accurate data. The Consent Decree includes comprehensive provisions directly affecting Intervenors: a 20-year Community Health Program (ECF 138-1 ¶¶ 48-55), medical monitoring (¶ 50), supplemental environmental monitoring (¶¶ 43-47), and civil penalties reflecting violation severity. These provisions' adequacy depends entirely on accurate contamination data. If the factual premise is false, as August 2025 testing demonstrates, the relief is fundamentally inadequate. Intervenors have substantial interests in ensuring the 20-year program protecting their health rests on accurate science, not compromised protocols that excluded carcinogens and used contaminated controls.

Doc. 293. p. 23. The Court concludes that Intervenors have set forth a substantial legal interest in

8

this case and the proposed consent decree.

### 3.    **Impairment Without Interventions**

Intervenors must show "only that impairment of its substantial legal interest is possible if intervention is denied." *Grutter*, 188 F.3d at 399. Intervenors assert that "[i]f the Consent Decree is approved based on assertions that contamination is within acceptable levels, Intervenors may be precluded from later challenging that finding through doctrines of collateral estoppel or claim preclusion." Doc. 293, p. 23. Intervenors contest the proposed consent decree *in this case*.  They could not do so if not allowed to intervene. Accordingly, the Court concludes that Intervenors have shown impairment of their ability to protect their interest in the absence of intervention. *Providence Baptist Church*, 425 F.3d at 315.

### 4.    **Inadequate Representation**

Lastly, Intervenors must show that their interests are not adequately represented by the current parties. Rule 24(a)(2). "However, the proposed intervenors are 'not required to show that the representation will in fact be inadequate.'. Indeed, 'it may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments.'" *Grutter*, 188 F.3d at 400 (quoting *Mich. State v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997). Intervenors assert that:

> The divergence of interests between Movants and the existing parties is particularly acute in this case. The proposed Consent Decree accepts EPA's conclusory assertions that air, soil, and water contamination are within acceptable levels—assertions contradicted by independent scientific evidence. (Ex. A, Petty Aff.; Ex. C, Smith Aff.) The State of Ohio and EPA, as government entities, may have institutional interests in avoiding findings that their own sampling protocols were fundamentally flawed or that their public safety assurances were premature. Figley and Adams, by contrast, have no such institutional constraints and are motivated solely by ensuring their properties and health are protected from ongoing toxic exposure.
>
> The existing parties have shown no inclination to challenge the scientific validity of the sampling protocols or to demand comprehensive re-testing based on newly

available evidence. At the July 15, 2025 Status Conference, counsel for Plaintiffs stated they did not believe recent revelations about EPA's compromised testing protocols warranted reconsideration of the proposed settlement. This demonstrates a fundamental divergence: the existing parties are prepared to accept a settlement that Movants view as scientifically and legally inadequate to address ongoing contamination and health risks.

As noted above, neither the State of Ohio nor the United States felt that the concerns the Court raised regarding the long-term harm and length of the 20-year medical monitoring required reconsideration of the consent decree. Doc. 219, p. 8. Further, the parties have made no effort to amend the proposed consent decree based upon the independent testing set forth by the Intervenors. To the contrary, the parties adamantly oppose the requested intervention, and gloss over Intervenors assertions regarding testing done after the Court's July status conference. Thus, it is clear the parties do not intend to consider any further testing that could potentially challenge their agreed upon proposed consent decree. Accordingly, the Court concludes that the parties may not adequately represent the Intervenor's interests.

### C. Rule 24(b): Permissive Intervention

Even if the Court were to conclude that Intervenors did not have a right to intervene, the Court would, in the interest of justice, grant them permission to do so under Fed.R. 24 (b)(1). The Court may permit intervention on a timely motion to any who "has a claim or defense that shares with the main action a common question of law or fact." Rule 24(b). The Court has discretion but must "consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights." Rule 24(b)(3).

Intervenors contend that they "have an interest in the same waters that may be impaired by hazardous contamination and share the State and EPA's goal of addressing Defendants' CWA violations." Doc. 273, p. 27. The Court agrees.

As to undue delay or prejudice, the Court found above that the motion to intervene is timely.

10

Although the parties insist that the motion is untimely because it will set back briefing, etc., this Court rejects that argument.  What happened in East Palestine was catastrophic.  While it is important to continue to move this case forward, the Court will not do so blindly.  It is most important for the environment and people of East Palestine that the parties rely on the most reliable, accurate, and recent testing.  The intervenors raise issues with the EPA testing that the parties rely upon.  They contend that in the push for a speedy resolution in this case, major concerns are being missed.

As this Court has previously stated:

> And again, it should be no surprise to anyone who has been in this Court, this is not a rubber stamp court. You're not going to come in here and just expect me to rubber stamp a consent decree without there being a lot of information presented, parties who have an interest being given an opportunity to be heard. And so it's not a pro forma, oh, gee, I'm just going to rubber stamp it. That's not going to occur.

Doc. 219, p. 17. Accordingly, the motion to intervene is GRANTED.

## IV.     Conclusion

The motion to intervene is GRANTED. Accordingly, all motions currently pending before the Court are STAYED until after a status conference on the matter. Docs. 229, 230, 231, 232, 233, 234, 235, 255, 267.  In light of this stay, the Court's referral to the Magistrate Judge is also stayed pending further order of the Court.

**IT IS SO ORDERED.**

  **March 9, 2026**                                            *s/John R. Adams*
**Date**                                                                **John R. Adams**
                                                                             **U.S. District Judge**

11